# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE

| | |
|---|---|
| IN RE: AMAZON.COM, INC., FULFILLMENT CENTER FAIR LABOR STANDARDS ACT (FLSA) and WAGE AND HOUR LITIGATION | Master File No. 14-MD-2504<br>MDL No. 2504<br>JUDGE HEYBURN |

**THIS DOCUMENT IS FILED BY DEFENDANTS' COUNSEL IN ALL CASES**

**JOINT MEMORANDUM OF LAW OF ALL DEFENDANTS IN OPPOSITION TO
PLAINTIFFS' MOTIONS FOR EQUITABLE TOLLING**

MORGAN, LEWIS & BOCKIUS LLP
Richard G. Rosenblatt
Joseph A. Nuccio
502 Carnegie Center
Princeton, NJ 08540

Rebecca D. Eisen
Alison B. Willard
Theresa Mak
One Market, Spear Street Tower
San Francisco, CA 94105

DINSMORE & SHOHL LLP
Kathryn A. Quesenberry
101 South 5th Street, Suite 2500
Louisville, KY 40202

Attorneys for Defendants
Amazon.com, Inc., Amazon.com, LLC,
Amazon.com.DEDC, LLC, Amazon.com.DEDC,
Inc., Amazon.com.KYDC, LLC,
Amazon.com.KYDC, Inc., Amazon.com.AZDC,
LLC, Zappos Fulfillment Centers, Inc.,
Zappos.com, Inc., and Golden State FC, LLC

SEYFARTH SHAW LLP
Gerald L. Maatman, Jr.
Rebecca P. Bromet
Ashley C. Workman
131 S. Dearborn Street, Suite 2400
Chicago, IL 60603

Attorneys for Defendant
Kelly Services, Inc.

LITTLER MENDELSON, P.C.
Neil M. Alexander
50 West Liberty St., Ste. 400
Reno, NV 89501
Rick D. Roskelley
Roger L. Grandgenett
Cory G. Walker
Peter D. Navarro
3960 Howard Hughes Parkway, Suite 300
Las Vegas, NV 89169

Attorneys for Defendant
Integrity Staffing Solutions, Inc.

JONES DAY
William F. Dolan
Brent D. Knight
Michael Zuckerman
Andrew G. Madsen
77 West Wacker
Chicago, IL 60601

Attorneys for Defendants
SMX, LLC, and Staff Management, LLC

Defendants Amazon.com, Inc., Amazon.com, LLC, Amazon.com.DEDC, LLC, Amazon.com.DEDC, Inc., Amazon.com.KYDC, LLC, Amazon.com.KYDC, Inc., Amazon.com.AZDC, LLC, Zappos Fulfillment Centers, Inc., Zappos.com, Inc., and Golden State FC, LLC (collectively, the "Amazon Defendants"), Integrity Staffing Solutions, Inc. ("Integrity"), SMX, LLC, and Staff Management, LLC (collectively, "SMX"), and Kelly Services, Inc. ("Kelly Services") hereby jointly respond in opposition to both Motions for Equitable Tolling filed in this case – the April 8, 2014 motion filed by the Plaintiffs in *Busk v. Integrity Staffing Solutions*, and the April 4, 2014 motion filed by Plaintiffs in all other consolidated cases.

## I.      INTRODUCTION

Rather than adhere to settled Sixth Circuit law and address tolling on a case-by-case basis – based on the particular circumstances and demonstrated diligence (or lack thereof) of each individual on whose behalf they seek tolling – Plaintiffs instead demand a blanket tolling order covering thousands of putative absent collective action members.  This proposed approach contravenes applicable precedent from within the Sixth Circuit that prohibits Plaintiffs from seeking equitable tolling on behalf of absent individuals whom they do not yet represent.  The Court can – and should – deny Plaintiffs' motions on this ground alone.

Furthermore, even if Plaintiffs did represent those persons for whom they seek tolling – which they do not – they have presented **no evidence to carry their burden** under either of the tests used in the Sixth Circuit to identify those rare and extraordinary circumstances where courts will consider equitable tolling.   Rather, Plaintiffs' argument for tolling is based on little more than an unyielding desire to expand the scope of potential claimants in this matter.  Plaintiffs do not meet their burden of proof under the five-factor test described in *Andrews v. Orr*, 851 F.2d

146 (6th Cir. 1988), because they and absent class members had actual and constructive notice of, but did not diligently pursue, their claims; tolling would unfairly prejudice Defendants; and it is not reasonable for absent class members to remain ignorant of their rights.  Nor have Plaintiffs shown the necessary diligence and "extraordinary circumstances" to carry their burden under the abbreviated two-factor test used in *Patterson v. Lafler*, 455 F. App'x 606 (6th Cir. 2012). Indeed, Plaintiffs themselves are largely to blame for the delays about which they now complain. They chose instead to wait and see how the Ninth Circuit, and later the Supreme Court, would resolve their (legally flawed) claims before further investing the resources in this case that would be necessary to present their motion for collective action certification.  Whatever the strategic merits of that "wait and see" approach, Plaintiffs should not now be rewarded with a blanket order of equitable tolling.

Finally, Plaintiffs' demand for tolling based on events in the *Busk* and *Allison* cases ignore the reality that many of the Defendants had no involvement in, nor were they ever proper parties to those cases – and certainly not as of the time years ago from which Plaintiffs seek tolling.  The Amazon Defendants were not added to *Busk* until August 2013, and under controlling Sixth Circuit precedent that amendment does not relate back to the 2010 *Busk* complaints.  And Defendants SMX and Kelly Services were never – even to this day – parties to *Busk* at all.  As to *Allison*, Defendant Kelly Service was again never party to that case, and Defendant Integrity was never a proper party thereto as the Western District of Washington dismissed the claims against it for lack of personal jurisdiction.  To impose retroactive tolling against parties based on events in lawsuits in which they were not even parties is the antithesis of equitable.

## II.      OMNIBUS LEGAL ARGUMENT (BY ALL DEFENDANTS)

### A.      Diligent Or Not, Plaintiffs Cannot Seek Equitable Tolling On Behalf Of Absent Putative Class Members Whom They Do Not Yet Represent.

Plaintiffs devote much argument to claiming that they were supposedly diligent in prosecuting their cases.  Plaintiffs' arguments regarding their diligence are exaggerated.  More importantly, however, those arguments are irrelevant because they ignore the applicable legal standards within the Sixth Circuit.

Specifically, as numerous courts within the Sixth Circuit have held, the named plaintiffs in an FLSA putative collective action only represent themselves.  In contrast to a Rule 23 opt-out class action, they do not even represent those similarly situated claimants who have consented to opt into the case as party-plaintiffs.  In fact, 29 U.S.C. § 216(b), the statutory vehicle for certifying a collective action appears under the heading "Representative Actions *Banned*." (Emphasis added.)  And, yet, the absent putative class members on whose behalf Plaintiffs now move here are even one step removed – they have not opted in to this case.  Plaintiffs thus lack the legal authority to request equitable relief on behalf of any uninvolved individuals who have not consented to be represented by them.  As explained in *Noble v. Serco, Inc.*, 2009 WL 3254143 (E.D. Ky. Oct. 7, 2009), under very similar circumstances (denying plaintiffs' request for tolling after litigation was stayed pending resolution of defendant's Rule 12 dismissal motion):

> The Sixth Circuit has set forth five factors relevant in determining whether equitable tolling is appropriate:  (1) plaintiffs' lack of actual notice of the filing requirement; (2) their lack of constructive knowledge of the filing requirement; (3) their diligence in pursuing their rights; (4) absence of prejudice to the defendant if equitable tolling is allowed; and (5) plaintiffs' reasonableness in remaining ignorant of the filing requirement.  *Hughes v. Region VII Area Agency on Aging,* 542 F.3d [169] at 187-88 [(6th Cir. 2008)] (citing *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988) …

> ***Because Noble seeks to have the limitations period tolled as to plaintiffs who have not yet joined the suit, the five-factor inquiry is not relevant here.*** It would be inappropriate to attempt to apply the factors at this stage in the litigation because the Court does not yet know who the opt-in plaintiffs will be … The five-factor test simply is not 'suitable for preemptive, one-size-fits-all application to a group of as-yet-unidentified potential plaintiffs.' *Mathews v. ALC Partner, Inc.*, No. 2:08-CV-10636, 2009 U.S. Dist. LEXIS 75097, at *21-22, 2009 WL 2591497 (E.D.Mich. Aug. 24, 2009) …

*Id.* at *2-*3 (emphasis supplied; some internal citations omitted).[1]

Numerous other Sixth Circuit courts concur with *Noble*. For example, in *Matthews v. ALC Partner, Inc.*, 2009 WL 2591497 (E.D. Mich. 2009), the plaintiffs bringing a nationwide FLSA collective action sought equitable tolling "from the date the original complaint was filed in this multi-lawsuit dispute … with respect to the claims of as-yet-absent class members," based on "defendants' [allegedly] dilatory litigation tactics." *Matthews*, 2009 WL 2591497, at *1, *8. Even though it had granted the plaintiffs' conditional certification motion in part (which has not even happened in this series of cases), the *Matthews* court still rejected the plaintiffs' "preemptive, one-size-fits-all application [of the equitable tolling factors] to a group of as-yet-unidentified potential plaintiffs." *Id.* at *8, *9. The court instead held that "[i]f and when potential plaintiffs whose claims would otherwise be time-barred choose to opt in to the class, they may apprise the Court of their circumstances and individually move for equitable tolling." *Id.* at *8. *See also Knispel v. Chrysler Group LLC*, 2012 WL 553722, at *6-*7 (E.D. Mich. Feb. 21, 2012) (citing and following *Matthews* and *Noble*).

---

[1]   *Noble* was decided before the Sixth Circuit's decisions in 2011 and 2012 suggesting that the five-factor test should be replaced with a two-factor test. *See infra*, Part II.C. The reasoning of *Noble*, however, applies equally to both tests, as one of the key factors in each – whether the party seeking tolling diligently pursued his or her claims – is "impossible to discern" when that party "has not yet appeared in the case." *Jesiek v. Fire Pros, Inc.*, No. 1:09-cv-123, 2011 WL 2457311, at *2 (W.D. Mich. June 16, 2011); *see also infra*, Part II.C.1.c.

Similarly, in *Jesiek v. Fire Pros, Inc.*, No. 1:09-cv-123, 2011 WL 2457311 (W.D. Mich. June 16, 2011), the court denied as premature a motion seeking equitable tolling "for all future opt-in plaintiffs, on the basis of the delay that occurred in this court in conditionally certifying the case and approving the form of notice." *Jesiek*, 2011 WL 2457311, at *1.  The *Jesiek* court observed that "[a] plaintiff bears the burden to demonstrate why he is entitled to equitable tolling" and that "resolution of [this] issue is fact-specific and is applied on a *case-by-case basis to prevent inequity*."  *Id.* (emphasis supplied) (citing *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010); *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004); *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)).  As "[t]he statute of limitations is an affirmative defense … which defendant has yet to assert with regard to the claims of any opt-in plaintiff," the court found "the entire question is hypothetical and is raised by plaintiffs who have no personal interest in the outcome," especially as "the original plaintiffs … do not represent absent parties" and "have 'no right' to represent potential opt-in parties."  *Id.* at *2 (citing *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989); *Cameron-Grant v. Maxim Healthcare Servs.*, 347 F.3d 1240, 1249 (11th Cir. 2003)).[2]  Concluding that "[i]t is impossible to discern how a party who has not yet appeared in the case can bear his burden to prove anything, or how the

---

[2]    *See also Smith v. T-Mobile USA, Inc.*, 570 F.3d 1119, 1122-23 (9th Cir. 2009) (an FLSA plaintiff "has no independent right to represent a class . . . ; his right to represent the class depends entirely on whether other plaintiffs have opted in"); *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 287 (5th Cir. 1975) ("[C]ourts have consistently recognized that, in FLSA actions, one employee may not represent another unless the represented employee has filed a written consent to become a party plaintiff in the court in which the action is brought."); *Ojeda-Sanchez v. Bland*, 2009 WL 3851623, at *4 (S.D. Ga. Nov. 16, 2009) (holding that equitable tolling is not designed to "preemptively toll the FLSA's statute of limitations such that all members of the proposed class are given a chance to opt in" before determining if their claims are untimely).  In effect, Plaintiffs' motion for tolling for persons they do not represent seeks an advisory opinion for unnamed and unidentified prospective plaintiffs. Such a request is impermissible.  *See North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them").

wholesale declaration that a group of absent parties have all been diligent is a careful exercise of equitable discretion," the *Jesiek* court adopted "[t]he far safer course . . . [of] allow[ing] each plaintiff to opt-in, assert his or her claims, and then address the statute of limitations defense (if and when raised) on the basis of the facts peculiar to that plaintiff." *Id.*

Rather than issue a blanket tolling order covering absent class members whose diligence in pursuing their claims cannot possibly be ascertained, the Court should instead adopt the "far safer course" extolled in *Jesiek* of addressing any requests for tolling on a case-by-case basis if and when individuals with time-barred claims seek to opt in. *See Jesiek*, 2011 WL 2457311, at *2.[3]  Importantly, in all of the now-consolidated cases, absent putative class members have *never* been precluded from filing opt-in consent forms, either before or after the stay.  Indeed, as reflected in this Court's docket, the case was stayed on March 13, 2014, but 27 new opt-ins have been filed since that date.  It is on precisely this ground that another court specifically distinguished *Stickle v. SCI Western Mkt. Support Ctr., L.P.*, 2008 WL 4446539 (D. Ariz. Sept. 29, 2008), on which Plaintiffs heavily rely.  Specifically, in rejecting a motion for tolling as to "unspecified potential plaintiffs," the court in *LaFleur v. Dollar Tree Stores, Inc.*, 2012 WL 4739534, at *6 (E.D. Va. Oct. 2, 2012), noted that in *Stickle* the defendants had obtained a stay of proceedings that "prevented the plaintiffs from incorporating additional parties in their case, thus warranting equitable tolling."  In contrast, the plaintiffs in *LaFleur* "were free to continue to seek out additional plaintiffs and encourage them to give their written consent to become a party plaintiff."  *Id.* at *7.  That is exactly what has happened here.

---

[3]     The *Jesiek* court further found that several of the decisions on which Plaintiffs rely – *Abadeer v. Tyson Foods, Inc.*, 2010 WL 5158873 (M.D.Tenn. Dec. 14, 2010), and *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822 (S.D.Ohio 2007) – were "wrongly decided," "not compelling authority in the present circumstances," and "exercises in expediency at best or judicial legislation at worst."  *Jesiek*, 2011 WL 2457311, at *2.

Plaintiffs are seeking relief that Sixth Circuit law disallows.  They demand this Court issue a blanket tolling order covering all putative class members – individuals whom Plaintiffs do not represent and who have not appeared before this Court.  To grant Plaintiffs' demand flies in the face of FLSA Section 216(b)'s admonition that "Representative Actions [are] Banned," contravenes existing precedent regarding equitable estoppel, and would rewrite the FLSA's limitations clause in the face of the Supreme Court's admonition that trial courts must maintain complete neutrality in making determinations regarding FLSA certification and notice. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 174 (1989) (the trial courts "must be scrupulous to respect judicial neutrality.")

> **B.**    **Plaintiffs Ignore The Foregoing Law From Within The Sixth Circuit And Instead Advance An Argument For Tolling That Contravenes The FLSA's Ban On Representative Actions And Relies Upon Irrelevant And Dispositively Distinguishable Cases.**

Plaintiffs make no effort to address or even acknowledge that it is not their role, responsibility or right to seek, let alone obtain, tolling on behalf of people that they do not represent and who have presented no evidence themselves to justify their delay in filing a lawsuit or opting into one of these lawsuits.  They instead demand tolling based on a perceived risk that the claims of persons who have not opted-into one of the pending lawsuits may become time-barred.  In doing so, however, Plaintiffs ignore that the opt-in procedure of the FLSA is intended to specifically "limit the parties who could bring suit under that statute." *Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240, 1248 (11th Cir. 2003) (citing *State of Nevada Employees' Ass'n v. Bryan*, 916 F.2d 1384, 1391 (9th Cir. 1990)) (affirming denial of named plaintiff's motion to notify potential opt-ins of collective action after settlement of plaintiff's own claims).  When Congress amended the FLSA to adopt an opt-in procedure, it was "clear that the purpose of the ban on representative actions was to prevent large group actions . . . from

being brought on behalf of employees who had no real involvement in, or knowledge of, the lawsuit." *Arrington v. National Broadcasting Co., Inc.*, 531 F. Supp. 498, 501 (D.C.D.C. 1982). "Congress knew when it enacted [the FLSA] that time would lapse between the filing of the collective action complaint by the named plaintiff and the filing of written consents by the opt-in plaintiffs, yet it chose not to provide for tolling of the limitations period." *MacGregor v. Farmers Ins. Exchange*, 2011 WL 2731227, at *1 (D.S.C. July 13, 2011) (quoting *Woodard v. FedEx Freight East, Inc.*, 2008 WL 471552, at *16 (M.D.Pa. Feb. 19, 2008)).

Taking sides in favor of persons who are not parties to this case – and who have shown no interest in joining this case – is tantamount to having this Court reject the judicial neutrality that the *Hoffman-LaRoche* Supreme Court required and, in doing so, subordinates the interests of named parties (the Defendants in this matter) to the interests of non-parties (who have no due process rights as they have not invoked any judicial process). *See, e.g.*, *Knott v. Dollar Tree Stores, Inc.*, 897 F. Supp. 1230, 1241 (N.D.Al. 2012) ("The efficiency gained by holding one trial as opposed to many cannot be obtained at the expense of [a defendant's] due process rights"); *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1136-37 (D. Nev. 1999) ("[T]he concerns which led the Supreme Court to suspend the statute of limitations in a Rule 23 class action do not apply to a § 216(b) action. . . .  Rather than certifying a collective action for purposes of the statute of limitations, certification in a § 216(b) action is thus an effective case management tool") (emphasis added).[4]

---

[4]   In addition, Plaintiffs' claims of irreparable harm (for others who they do not even represent) are based on a fundamentally misplaced assumption that this Court would rubber stamp collective action certification and grant notice to absent class members.  In so assuming, Plaintiffs ignore that the Court must instead be "mindful that while Plaintiff[s'] burden at this [initial certification] stage is not stringent, certification is by no means automatic." *Shipes v. Amurcon Corp.*, 2012 WL 995362, at *10 (E.D. Mich. Mar. 23, 2012).  Indeed, numerous courts within this circuit have denied FLSA conditional certification motions in similar

Nor does the caselaw Plaintiffs cite justify tolling here.  In fact, one of the decisions to which the *Busk* Plaintiffs cite, *Perez v. Comcast*, 2011 WL 5979769 (N.D. Ill. Nov. 29, 2011), held that the FLSA statute of limitations should *not* be tolled despite defendants having moved for dismissal and the court's having stayed the matter – circumstances similar to those Plaintiffs rely upon here.  *Id.* at *2.  The *Perez* court, after canvassing decisions both granting and denying equitable tolling of FLSA claims,[5] refused to impose tolling because plaintiffs had failed to establish either that they "ha[d] been pursuing [their] rights diligently" or that "some extraordinary circumstance stood in [their] way" – the same test used by the Sixth Circuit in *Patterson.  Id.* at *4 (citing *Lee v. Cook County*, 635 F.3d 969 (7th Cir. 2011)).  In so holding, the *Perez* court specifically observed that the "plaintiffs do not contend that putative plaintiffs were precluded from filing consents in this case because of the court's stay." *Id.*  The same reasoning applies here, as is plain from the 27 opt-in consent forms filed since the consolidated cases were stayed – with more consents filed almost daily.  Indeed, at Plaintiffs' request, this

---

circumstances.  *See, e.g.*, *Buttry v. Dollar General Corp.*, 2014 WL 1347178 (M.D.Tenn. Apr. 4, 2014) (denying conditional certification in meal break case) (per Campbell, J., who was the assigned judge in two of the consolidated cases here, *Gibson v. Amazon.com, et al* and *Davis v. Amazon.com, et al*); *Cason v. Vibra Healthcare*, 2011 WL 1659381 (E.D. Mich. May 3, 2011) (same); *Pacheco v. Boar's Head Provisions Co., Inc.* 671 F. Supp. 2d 957 (W.D. Mich. 2009) (denying conditional certification motion in donning and doffing case); *Wheeler v. City of Detroit*, 2012 WL 1119300 (E.D.Mich. 2012) (denying conditional certification in case alleging improper payment of shift premiums and denying request for equitable tolling as "contingent on the Court granting [plaintiff's] Motion for Conditional Certification"); *Bowman v. Crossmark, Inc.*, 2010 WL 2837519 (E.D. Tenn. July 19, 2010) (denying conditional certification motion in case alleging unpaid preliminary and postliminary work).

[5]   The *Busk* Plaintiffs list those cases cited in *Perez* that granted equitable tolling.  *See Busk* Mem. at 8.  They neglect to mention, however, that in canvassing the case law, *Perez* also listed numerous cases that denied tolling.  *See Perez*, 2011 WL 5979769, at *3 (citing *Hinterberger v. Catholic Health Sys.*, 2009 WL 3464134, at *15 (W.D.N.Y. Oct. 21, 2009); *Love v. Phillips Oil, Inc.*, 2008 WL 5157677, at *2 (N.D.Fla. Dec. 9, 2008); *Pendlebury v. Starbucks Coffee Co.*, 2008 WL 700174, at *5 (S.D.Fla. Mar. 13, 2008); *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1244 (S.D.Ala. 2008)).

Court's March 13, 2014 Order from Telephonic Status Conference expressly allows non-parties to opt-into this lawsuit during the pendency of the stay.  Nor did anything preclude Plaintiffs in any of these cases from filing opt-in consent forms before the MDL consolidation – even in those cases that were temporarily stayed.  In particular, the *Busk* Plaintiffs filed multiple opt-in consent forms on September 19, 2013; October 2, 2013; November 21, 2013; and February 19, 2014 – all after that court's order temporarily staying proceedings based on the Supreme Court certiorari petition.  *See Busk* Dkt. 50, 52, 54, 64, 65.  And since this case was stayed, they have filed 27 additional consents, as recently as April 25, 2014.

The facts of this case also contrast sharply with *Adams v. Tyson Foods, Inc.*, 2007 WL 1539325 (W.D. Ark. May 25, 2007), cited by the *Busk* Plaintiffs, where the court stayed proceedings and tolled the statute of limitations pending the MDL Panel's decision on a consolidation motion brought by the *defendant*.  *Adams*, 2007 WL 1539325, at *1.  Here, it is the Plaintiffs – not any defendant – who moved for consolidation before the MDL; nor did Plaintiffs seek tolling while their consolidation motion was pending – something they could have done. *See infra*, Part II.C.1.c.  And the *Allison* court, for its part, expressly refused to stay that case despite the pending MDL consolidation motion.  As discussed further below, were it not for the *Allison* Plaintiffs' repeatedly amending their Complaint, and thus restarting the clock on all pending motions, their conditional certification motion would have been fully briefed and ripe for decision before the matter was consolidated with the MDL.  *See id.  Adams* simply has no relevance here.

Most of the other cases Plaintiffs cite are irrelevant because the courts in those cases already had granted a motion for conditional certification – and, typically, where such motion had been pending for an overly extended duration.  As such, they were not operating on a

misplaced assumption – such as that at play here – that absent putative collective action members were being unduly deprived of notice.[6]  And in the remaining decisions, tolling was granted

---

[6] *See Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842, 844, 848-49 (S.D. Ohio 2013) (granting equitable tolling over a month after granting motion for conditional certification, which motion had been pending for almost eleven months, for period of time conditional certification motion was pending); *Engel v. Burlington Coat Factory Direct Corp.*, 2013 WL 5177184, at *1, *2 (S.D. Ohio Sept. 12, 2013) (granting equitable tolling over three months after granting motion for conditional certification, which motion had been pending for almost eight months, for period of time conditional certification motion was pending); *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 824, 829 (S.D. Ohio 2007) (granting equitable tolling more than a year after parties stipulated to conditional certification and nine months after notice was issued, for limited period of time during which parties discussed content of notice prior to its issuance); *Abadeer v. Tyson Foods, Inc.*, 2010 WL 5158873, at *1-*2, *4 (M.D.Tenn. Dec. 14, 2010) (granting equitable tolling more than a year after granting motion for conditional certification, which motion was granted over six months after it was originally filed and denied without prejudice, for the limited period of 120 days after court's approval of form of notice); *Thompson v. Direct General Consumer Prods., Inc.*, 2014 WL 884494, at *8-*10 (M.D. Tenn. Mar. 5, 2014) (granting conditional certification motion and tolling statute of limitations back to date by which motion was fully briefed, based on nearly fifteen-month delay in resolving motion due to intervening motion practice and the court's "stray[ing] from its usual practice of expeditiously ruling on a fully briefed motion"); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. Apr. 9, 2012) (tolling statute of limitations as part of order conditionally certifying class, based on court's delay in resolving conditional certification motion filed shortly after complaint was filed, for period of time conditional certification motion was pending); *Jackson v. Bloomberg, L.P.*, --- F.R.D. ----, 2014 WL 1088001, at *17-*18 (S.D.N.Y. Mar. 19, 2014) (same); *Yahraes v. Restaurant Assocs. Events Corp.*, 2011 WL 844963, at *2-*3 (E.D.N.Y. Mar. 8, 2011) (same); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2007 WL 707475, at *7-*8 (N.D. Cal. Mar. 6, 2007) (tolling statute of limitations as part of order conditionally certifying class, based on "vagaries of the process by which" a previous related action settled, including "competition which occurred between [the various plaintiffs'] attorneys during settlement mediation," for period of time encompassed by that settlement); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 198-200 (S.D.N.Y. 2006) (tolling statute of limitations as part of order conditionally certifying class, based on court's putting plaintiff's "motion for class certification … on hold" pending resolution of defendants' summary judgment motion, for period of time during which conditional certification motion was on hold and, once refiled, pending).  No such extraordinary circumstances are presented here – let alone ones caused by either a court or the Defendants.

either where significant delay – not caused by Plaintiffs – prevented their filing a motion for conditional certification, or where defendants egregiously violated court orders.[7]

Here, in contrast to the cases upon which they rely, Plaintiffs seek tolling without any undue delay caused by a Court (or Defendants), and without any evidence to justify tolling on behalf of persons Plaintiffs do not represent and whose diligence cannot be ascertained. The cases Plaintiffs cite are irrelevant and tolling should not be imposed.

---

[7] *See Bolletino v. Cellular Sales of Knoxville, Inc.*, 2012 WL 3263941, at *2-*3 (E.D. Tenn. Aug. 9, 2012) (granting defendants' motion to stay discovery and tolling statute of limitations where plaintiffs represented such stay would preclude their filing conditional certification motion); *Roslies-Perez v. Superior Forestry Service, Inc.*, 652 F. Supp. 2d 887, 890, 892, 898-99 (M.D. Tenn. 2009) (tolling statute of limitations where defendants violated court orders to intimidate workers from joining suit); *Stickle v. SCIWestern Market Support Center, L.P.*, 2008 WL 4446539, at *21-*22 (D. Ariz. Sept. 30, 2008) (tolling statute of limitations where plaintiffs moved for conditional certification the day after filing their complaint, which motion the court dismissed without prejudice pending resolution of defendants' motion to dismiss); *In re Bank of America Wage and Hour Employment Litig.*, 2010 WL 4180530, at *5, *6-*7 (D. Kan. Oct. 20, 2010) (MDL decision enforcing existing tolling order entered in one nationwide case prior to consolidation, finding *Andrews* factors weighed in favor of tolling because such order "led the FLSA putative class members to believe that their claims are preserved" and noting that this decision "does not mean that equitable tolling is appropriate through the notice phase in every FLSA putative collective action or even every one that becomes an MDL"); *Ruffin v. Entertainment of the Eastern Panhandle*, 2012 WL 28192, at *1-*2 (N.D.W.Va. Jan. 5, 2012) (tolling statute of limitations where court postponed resolution of fully briefed conditional certification motion pending determination on threshold setoff issues); *Helton v. Factor 5, Inc.*, 2011 WL 5925078, at *1-*2 (N.D. Cal. Nov. 28, 2011) (tolling statute of limitations where plaintiffs were prepared to file conditional certification motion but court ordered parties to pursue settlement negotiations first, and where failure to toll would obviate all potential FLSA claims because defendant had ceased operations three years prior); *Adedapoidle-Tyehimba v. Crunch, LLC*, 2013 WL 5594713, at *2 (N.D. Cal. Oct. 10, 2013) (tolling statute of limitations based on stay of nationwide discovery pending resolution of a state-specific settlement in a related matter); *Partlow v. Jewish Orphans' Home of Southern California, Inc.*, 645 F.2d 757, 760 (9th Cir. 1981), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) (tolling statute of limitations for group of opt-ins whose counsel filed invalid consents).

**C.     Even If The Five-Factor *Andrews* Test Or The Two-Factor *Patterson* Test Were Applicable Here – Which They Are Not – Plaintiffs Have Not Carried Their Burden Of Proof Under Either.**

Even if Plaintiffs were permitted to seek tolling on behalf of absent individuals they do not represent – which they are not – the Court still should deny their tolling request.  The Sixth Circuit has repeatedly admonished that its trial courts should grant equitable tolling sparingly and only where there are extraordinary circumstances present.  *See, e.g., Amini v. Oberlin College*, 259 F.3d 493, 500 (6th Cir. 2001) (citing *Dunlap v. U.S.*, 250 F.3d 1001, 1008-09 (6th Cir. 2001)).  Rather, equitable tolling is warranted only for a plaintiff who "despite all due diligence … is unable to obtain vital information bearing on the existence of his claim."  *Archer v. Sullivan Cty.*, 129 F.3d 1263, 1997 WL 720406, at *3 (6th Cir. 1997) (citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)).

In their briefs, Plaintiffs advance two different tests used in the Sixth Circuit to determine whether equitable tolling should be granted:  the five-factor test described in *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988), *see Allison* Mem. at 11-12; and the two-factor test used in *Patterson v. Lafler*, 455 F. App'x 606, 608-09 n.1 (6th Cir. 2012), *see Busk* Mem. at 7 n.6.  Regardless of which test applies to FLSA actions,[8] Plaintiffs here fail to meet either standard.

---

[8]    The two-factor test arose in a specific criminal law context – whether the limitations period for filing a habeas corpus petition should be tolled.  *See Holland v. Florida*, 560 U.S. 631, 632 (2010) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  The Sixth Circuit appellate decisions applying this test likewise involved habeas petitions.  *See Hall v. Warden, Lebanon Correctional Inst.*, 662 F.3d 745, 749-50 (6th Cir. 2011); *Patterson*, 455 F. App'x at 608-09 n.1.  In contrast, the five-factor test was developed in the employment law context.  *See Andrews*, 851 F.2d at 147, 151 (applying five-factor test as to Title VII discrimination claims).  Since *Patterson*, district courts in this circuit have disagreed as to which test applies in the FLSA context.  *See, e.g., Thompson*, 2014 WL 884494, at *7 (applying five-factor test with no mention of two-factor test); *Bassett v. Tennessee Valley Auth.*, 2013 WL 2902821, at *4 (W.D.Ky. June 13, 2013) (rejecting five-factor test and applying two-factor test instead).  Given this confusion, Defendants will address both tests here.

1.      **Plaintiffs Do Not Satisfy The Five-Factor *Andrews* Test.**

Under the *Andrews* test, five factors "may be useful" for determining whether a court should impose equitable tolling:  "(1) whether the plaintiffs lacked actual notice of their rights and obligations; (2) whether they lacked constructive notice; (3) the diligence with which they pursued their rights; (4) whether the defendant would be prejudiced if the statute were tolled; and (5) the reasonableness of the plaintiffs remaining ignorant of their rights."  *Hasken v. City of Louisville*, 234 F. Supp. 2d 688, (W.D.Ky. 2002) (citing *EEOC v. Kentucky State Police Dep't*, 80 F.3d 1086, 1094 (6th Cir. 1996) (citing *Andrews*, 851 F.2d at 151))).  "[T]he principle underlying our opinion in *Andrews*" is that "a complainant should not be punished for missing a filing deadline when he is affirmatively misled in a manner that causes the delay."  *Smith v. Solis*, 390 F. App'x 450, 454 (6th Cir. July 26, 2010).  All of the *Andrews* factors weigh against a finding of tolling.

a.      **Plaintiffs And Absent Class Members Have Actual Notice Of Their Claims.**

<u>First</u>, Plaintiffs and putative class members have actual notice of their rights because they "were aware that they would not be paid for [time passing through security] before the statute of limitations expired."  *Smith v. BNSF Ry. Co.*, 246 F.R.D. 652, 655 (D.Kan. 2007) (applying Sixth Circuit's five-factor test).  "Plaintiffs knew that they were not receiving any overtime pay – and that knowledge constituted knowledge of facts triggering the accrual of a cause of action."  *Archer v. Sullivan County, Tenn.*, 129 F.3d 1263, 1997 WL 720406, at *4 (6th Cir. 1997) (unpub.); *see also Claeys v. Gandalf, Ltd.*, 303 F. Supp. 2d 890, 896-97 (S.D.Ohio Jan. 23, 2004) (same); *Viciedo v. New Horizons Computer Learning Center of Columbus, Ltd.*, 246 F. Supp. 2d 886, 904 (S.D. Ohio 2003) (same); *Opre v. Milton Tp. Bd. of Trustees*, 2007 WL 4350709, at *4 (N.D.Ohio Dec. 7, 2007) (denying tolling request "[b]ecause Plaintiff had constructive notice of

her [FLSA] claim by means of her knowledge of the hours she worked and the pay she received, and because any degree of diligence on her part would have resulted in the realization of those claims").

### b. Plaintiffs And Absent Class Members Have Constructive Notice Of Their Claims.

Second, Plaintiffs had "constructive notice" of their claims by virtue of the FLSA itself, which gives plaintiffs constructive notice both of their rights thereunder and "of the deadline for filing suit." *Archer*, 129 F.3d 1263, 1997 WL 720406, at *3-*4. While Plaintiffs rely on some district courts' apparent departure from this holding in *Archer – see Engel*, 2013 WL 5177184, at *2; *Struck*, 931 F. Supp. 2d at 847; *Abadeer*, 2010 WL 5158873, at *3 – *Archer* has never been overturned or revisited by the Sixth Circuit and therefore remains the law of this Circuit. Furthermore, the decision on which the above-cited opinions rely – *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822 (S.D. Ohio 2007) – involved a unique circumstance where the defendant "induced Plaintiffs into reasonably believing that they could and should wait until they received [court-issued] notice of their eligibility before they inquired about and potentially pursued their legal FLSA rights." *Baden-Winterwood*, 484 F. Supp. 2d at 827. Furthermore, the *Baden-Winterwood* court did not actually contravene *Archer*, but rather recognized, consistent with *Archer,* "the fact that the mere existence of the FLSA placed Plaintiffs on constructive notice." *Id.* at 828. The court gave "little weight" to that fact only because the defendant had actively misled plaintiffs by "inform[ing] Plaintiffs of the FLSA lawsuit and potential wage violations but never advis[ing] them of the filing requirement." *Id.* at 829. Those countervailing considerations do not exist here. Plaintiffs' attempt to stretch the unique circumstances of *Baden-Winterwood* into a general rule – which, in so doing, implicitly would overrule the Sixth Circuit decision in *Archer* – must be rejected. As the Sixth Circuit has elsewhere explained,

"[i]gnorance of the law alone is not sufficient to warrant equitable tolling." *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991). Accordingly, both Plaintiffs and putative class members have and had constructive knowledge of their FLSA claims.

### c. Neither Plaintiffs Nor Absent Class Members Have Diligently Pursued Absent Class Members' Claims.

<u>Third</u>, neither the *Busk* nor *Allison* Plaintiffs diligently pursued conditional certification on behalf of absent class members. The *Busk* Plaintiffs have never sought conditional certification, despite multiple opportunities to do so:

- they could have moved for conditional certification shortly after filing their initial Complaint on October 22, 2010;

- they could have moved for conditional certification between filing their First Amended Complaint on December 15, 2010, and the district court's ruling on Integrity's Motion to Dismiss on July 19, 2011 – a period of over seven months; or

- they could have moved for conditional certification between June 2013, when the Ninth Circuit denied Integrity's petition for rehearing and issued its mandate overruling the district court's dismissal, and September 2013 when the case was stayed. It was not until over two months later that Integrity moved for a temporary stay of proceedings (on August 23, 2013), three months later that a stay was granted (on September 5, 2013), four months later that Integrity filed its petition for a writ of certiorari (on October 3, 2013), and not until *nine* months later that the Supreme Court granted that petition (on March 3, 2014.

At no time did the *Busk* Plaintiffs ever move for conditional certification, much less diligently seek resolution of such a motion or of their claims.[9]

---

[9] On the contrary, the *Busk* Plaintiffs delayed resolution of Integrity's certiorari petition, first by waiving their right to respond on November 4, 2013 (after which the Supreme Court ordered them to respond) and again by requesting an extension of time to respond until January 13, 2014. Had the *Busk* Plaintiffs responded to Integrity's petition per their original deadline, the petition would have been distributed to the Justices for conference in November 2013 instead of February 2014 and, most likely, the case could have been argued and decided by the Supreme Court by June 2014 – the close of the current term of the Supreme Court. Thus, any delay engendered by having to wait until the next Supreme Court term for argument and disposition of Integrity's Supreme Court appeal was caused by the *Busk* Plaintiffs – not Integrity or any other Defendant.

And while the *Allison* Plaintiffs initially moved for conditional certification, they do not meet their high burden of proving the type of aggressive diligence needed to tilt the litigation playing field in favor of one group of litigants by excusing compliance with a statutory limitations period.  The relevant timeline is as follows:

- On October 15, 2013, the *Allison* Plaintiffs first moved for conditional certification – on the same day they filed a request to amend their Complaint.  *Allison* Dkt. 45.  The "noting date" by which such motion would be fully-briefed was set for November 8, 2013.

- On November 1, 2013, Plaintiffs voluntarily withdrew their conditional certification motion as moot after their request to amend (and name SMX) was granted and they filed their First Amended Complaint.  *Allison* Dkt. 70.

- On November 5, 2013, Plaintiffs moved again for conditional certification.  *Allison* Dkt. 75.

- On December 20, 2013, Plaintiffs once again withdrew their motion for conditional certification – this time apparently in response to pending motions to dismiss – and filed a new one, based on their having filed a Second Amended Complaint.  *Allison* Dkt. 114.  The motion's "noting date" was set for February 14, 2014.

- On January 3, 2014, the *Allison* court denied Defendants' motion for relief from deadlines on Plaintiffs' conditional certification motion pending the MDL panel's consolidation decision.  *Allison* Dkt. 119.  As such, the date for the completion of briefing on the conditional certification motion in *Allison* would have been February 14, 2014.

- On January 21, 2014, the *Allison* court granted Integrity's Rule 12 motion and dismissed Integrity from the case for lack of personal jurisdiction.  *Allison* Dkt. 141.

- Two days later, on January 23, 2014, Plaintiffs consented to transfer the case to the Middle District of Tennessee – where jurisdiction existed over Integrity – and, in doing so, voluntarily agreed to moot their pending conditional certification motion.  *Allison* Dkt. 149.  It bears noting that this was nearly four months after the Amazon Defendants first had moved for such a transfer – in their September 26, 2013 Motion to Dismiss, Stay, or Transfer Venue – which, up until Integrity's dismissal, Plaintiffs had vigorously contested.  *Allison* Dkt. 36, 47.  Had the *Allison* Plaintiffs acknowledged that they lacked personal jurisdiction over Integrity when it was brought to their attention, they could have transferred the case to Tennessee months earlier and, presumably, filed a motion for certification there.  They did not do so and that was a product of their own strategy – not anything any Court or Defendant brought upon them.

Plaintiffs cannot now request equitable tolling to "cure" a delay they themselves created. Nothing prevented the *Busk* Plaintiffs from filing a motion for conditional certification – they simply chose not to do so.  And while the *Allison* Plaintiffs filed a conditional certification motion, they repeatedly withdrew it for what they no doubt perceived as some greater strategic advantage, such as adding parties or obtaining jurisdiction over out-of-state defendants – even after the Court denied Amazon's and SMX's Motions to Stay the conditional certification motion.  Finally, there is "nothing in the record" to suggest that *absent* class members have "diligently pursued their rights."  *See Smith*, 246 F.R.D. at 655.  This is not a question of the quantum of evidence; there is a complete lack of any such evidence.  For these reasons, neither Plaintiffs nor absent class members have shown the diligence required to impose equitable tolling.

### d.      Defendants Would Be Prejudiced By Tolling.

Fourth, defendants would be prejudiced by a toll of the statute of limitations for the simple and undeniable reason that "[tolling] would expose them to claims that accrued" up to seven years ago (based on the *Busk* Plaintiffs' request for tolling as of November 2010).  *See Smith*, 246 F.R.D. at 655.

### e.      It Is Not Reasonable For Absent Class Members To Remain Ignorant Of Their Alleged Rights, Especially Given Plaintiffs' Publicity And Advertising Blitz To Solicit Their Involvement.

Finally, given the circumstances of this case, Plaintiffs cannot meaningfully contend that it is reasonable for absent class members to remain ignorant of their alleged rights.  This is true for at least two independent reasons.

First, the *Busk* Plaintiffs believed that they had a claim and filed their lawsuit.  If they knew enough to do that, why is it reasonable for the purposes of equitable tolling that others did not?  The persons on whose behalf Plaintiffs seek tolling knew – like the original Plaintiffs in

18

*Busk* – that they were not paid for passing through security.  *See Johnson v. Academy Mortgage Co.*, 2012 WL 3886098, at *2-*3 (D.Utah Sept. 6, 2012) (denying tolling request because absent putative class members were "on actual notice of their [FLSA] claims against Defendant at the end of each pay cycle" and thus did not "remain[] ignorant of their rights merely because court approved notice was not provided," yet "have not sought to join this suit to vindicate their rights").

Second, these lawsuits have been accompanied by a tremendous publicity barrage and advertising campaign by *Plaintiffs'* counsel, including personalized solicitation letters sent to individual employees, all in an effort to drum up large numbers of opt-ins.  As the below solicitation letter dated September 11, 2013 (with recipient name redacted) shows, at least one group of Plaintiffs' counsel – and likely others – have taken such steps as "searching resumes on Monster.com" to obtain the names and contact information of current and former hourly workers at Amazon facilities and directly soliciting their assistance and/or participation in these lawsuits:

ADVERTISING MATERIAL

## BARRETT JOHNSTON, LLC
LAW OFFICES

GEORGE E. BARRETT
DOUGLAS S. JOHNSTON, JR.
JERRY E. MARTIN
TIMOTHY L. MILES
DAVID W. GARRISON
SCOTT P. TIFT

217 SECOND AVENUE NORTH
NASHVILLE, TENNESSEE 37201
TELEPHONE: 615-244-2202
FAX NUMBER: 615-252-3798

September 11, 2013

**VIA U.S. and Electronic Mail**



Re:     Pay Practices at the Amazon.com Fulfillment Center in Murfreesboro

Dear ▮▮▮▮▮▮▮:

IF YOU HAVE ALREADY HIRED OR RETAINED A LAWYER IN THIS MATTER, PLEASE DISREGARD THIS MESSAGE.

We received your name and contact information by searching resumes on Monster.com for people who have recently worked as hourly-paid workers at the Amazon.com Fulfillment Center in Murfreesboro, Tennessee. Our law firm represents two individuals who worked as hourly employees at the Murfreesboro Amazon.com Fulfillment Center. We are representing these individuals in a lawsuit seeking pay for unpaid time they spent proceeding through a lengthy security screening operation after each shift and during their unpaid meal breaks. These individuals' lawsuit, titled *Suggars, et al. v. Amazon.com, et al.*, is pending in the United States District Court for the Middle District of Tennessee (Case Number 3:13-cv-906).

We would like to speak with you concerning your experience at the Murfreesboro Amazon.com Fulfillment Center. We believe your experience will help us better represent our clients in litigation and may help us assist other current and former employees, including yourself, in recovering unpaid wages for your time working at the Fulfillment Center.

You are under no obligation to contact us, but we hope you will call us to discuss your experience at an Amazon.com Fulfillment Center in Tennessee. If you would like to speak with us, please call (615) 244-2202 and ask for Scott or Dave, or email me at stift@barrettjohnston.com.

Sincerely,

Scott P. Tift

ADVERTISING MATERIAL

See Nuccio Decl. Ex. C.[10]  Counsel for Plaintiffs have issued press releases and devote sections

of their websites to telling people about the suits and encouraging employees to "contact" them.

See Nuccio Decl. Exs. C through N.  They have also published direct advertisements, such as:

---

[10]   Separately, the fact that many individual putative class members have apparently received such notices is directly germane to whether they have diligently pursued their rights. An individual who received such notice and chose not to act upon it cannot see his or her statute of limitations tolled. *See Thompson*, 2014 WL 884494, at *10 (refusing to toll limitations period for potential opt-in plaintiffs who received precertification communications from plaintiffs' counsel). Naturally, this evaluation cannot be conducted without identification by

**ATTENTION:**
**AMAZON WAREHOUSE WORKERS**

A Class Action Lawsuit Has Been Filed Alleging
That Many Current and Former

**EMPLOYEES ARE ENTITLED TO BACK PAY**

Under the Federal Fair Labor Standards Act.

You may be owed wages for the time that you worked.

TIME MAY BE SHORT.

Call today: 866-481-8667

Email: amazonclaims@maherlawfirm.com
Steven R. Maher, Esq., The Maher Law Firm

www.maherlawfirm.com

This advertisement has been paid for by the following law firms: The Maher Law Firm 631 W. Morse Blvd., Suite 200, Winter Park, FL 32789; Johnson Becker, 33 S. 6th St. Suite 4530, Minneapolis, MN 55402; and Sommers Schwartz, One Towne Square, Suite 1700, Southfield, MI 48076. These three firms, as well as the firm of Schroeter Goldmark Bender, 810 Third Avenue, Suite 500, Seattle, WA 98104, are co-counsel in the class action lawsuit referred to above. Besides sharing in the legal work involved in the case, the four firms will also share in any attorney's fees.

Nuccio Decl. Ex. H.  Plaintiffs' litigation efforts have also received significant and widespread

press coverage in which lead counsel for the various groups of Plaintiffs have been widely

quoted.  See Nuccio Decl. Exs. B, O through RR.[11]  Indeed, the Supreme Court's grant of

certiorari in *Busk* has given these cases even more publicity.[12]

---

Plaintiffs' counsel of the universe of individuals to whom they have sent such solicitation
notices – information that they, unsurprisingly, have not divulged.

[11]  That this number is lower than the entirety of a potential nationwide class does not, as
Plaintiffs argue (*see Busk* Mem. at 13 n.9), suggest a lack of public knowledge about these
cases.  The absence of additional opt-ins is just as likely to be the product of the fact that
such putative class members are well aware that Plaintiffs' allegations – to wit, 15- to 25-
minute wait times when passing through security – are completely baseless.

[12]  For example, when typing "Amazon overtime lawsuit" into Google, the third and fourth hits
are articles about the Supreme Court's grant of certiorari in *Busk* – both of which articles
identify Mark Thierman as counsel for the *Busk* Plaintiffs, and one of which quotes him as
saying "If you want to take the pencil to paper we're talking hundreds of millions of dollars."

In short, the pendency of these proceedings and the identity of the various Plaintiffs' counsel are no secret.  There is ample reason to conclude that absent class members have not been diligent in pursuing their claims given (i) how many other individuals have already figured out how to do so and chosen to opt into these cases, (ii) how easy it is to find Plaintiffs' lawyers with a simple Google search, (iii) counsel's overt and widespread one-on-one solicitations, and (iv) the widespread publicity associated with these suits.  Quite to the contrary, an equally if not more plausible conclusion is that they know of these potential claims and recognize what Defendants already know – that the claims of long waiting times that are at the core of these cases are entirely baseless and not worth the time or effort to pursue.  Plaintiffs' claim that the statute of limitations must be tolled to protect such persons – who have shown no interest in joining this lawsuit despite the months-long solicitation and publicity barrage – is grossly overstated and does not meet Plaintiffs' burden to establish any need for equitable tolling.

## 2.    <u>Plaintiffs Do Not Satisfy The Two-Factor *Patterson* Test.</u>

Plaintiffs fare no better under the two-factor *Patterson* test, which requires a plaintiff to establish two elements:  that he "has been pursuing his rights diligently" and that "some extraordinary circumstances stood in his way."  *Patterson*, 455 F. App'x at 608-09 n.1 (citing *Pace*, 544 U.S. at 418).  The lack of the first element – diligence in pursuing absent class members' rights – has already been addressed at length *supra*.  Under Sixth Circuit law it is, in any event, an individualized inquiry as to which Plaintiffs' counsel have made no showing.

---

*See* http://www.fordyceletter.com/2014/03/04/supreme-court-to-decide-temp-workers-overtime-claims/; http://www.nasdaq.com/article/supreme-court-to-consider-worker-pay-for-security-screenings--update-20140303-01187 (Nuccio Decl. Exs. QQ and RR).  These are just a couple of the myriad articles that have run in the mainstream press, especially in newspapers local to where Amazon maintains its Fulfillment Centers.

The second element – some "extraordinary circumstance" preventing absent class members from pursuing their rights – is also absent here.  Such circumstances are "quite narrow," limited to such situations as "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period" or "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."  *Bassett*, 2013 WL 2902821, at *5 (citing *Chao v. Virginia Dep't Transp.*, 291 F.3d 276, 283 (4th Cir. 2002) (quoting *Irwin v. Dep't of Veterans*, 498 U.S. 89, 96 (1990)).

Litigation delays themselves do *not* typically constitute "extraordinary circumstances." *Bassett*, 2013 WL 2902821, at *5 (citing *Putnam v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 276 (S.D.Iowa 2011); *Noble*, 2009 WL 3254143, at *4 (stay of litigation pending resolution of Rule 12 motion was "nothing extraordinary" and did not warrant tolling).[13]  Here, even if the *Patterson* test was applicable and they could meet the first prong of it, Plaintiffs cannot meet the high burden of establishing the type of extraordinary circumstances necessary to meet the second prong of the *Patterson* test

Put simply, there is nothing "equitable" about the tolling Plaintiffs now demand.  Every one of the law firms that is suing Amazon and its vendors had the freedom to file suit years ago. And while counsel in *Busk* filed an initial lawsuit, they have never even attempted to certify a

---

[13]  Numerous other courts have agreed that litigation delays in FLSA collective action cases are not "extraordinary circumstances" that warrant tolling of the statute of limitations.  *See, e.g., Hinterberger v. Catholic Health Sys.*, No. 08-CV-380S, 2009 WL 3464134, at *15 (W.D.N.Y. Oct. 21, 2009) (finding that "the time for consideration of the conditional certification and related motions is reflective of an increasing caseload in this District and does not constitute an extraordinary circumstance for [statute of limitations] tolling purposes"); *Cranney v. Carriage Servs., Inc.*, No. 2:07-cv-01587, 2008 WL 820140, at *2 (D. Nev. Mar. 20, 2008) (rejecting plaintiff's demand for tolling based on a 45-day extension of time for defendant to respond to conditional certification motion); *Muhammad v. GBJ, Inc.*, 2011 WL 863785, at *1 (S.D. Tex. Mar. 9, 2011) (refusing to equitably toll statute of limitations when discovery delay prior to conditional certification "[did] not qualify as a rare and exceptional circumstance") (internal citations omitted).

collective action.  Despite cloaking themselves now in their supposedly deep desire to protect absent claimants (a sentiment that *Noble* forecloses as a legal matter – *see* Part II.A), not a single one of these firms stepped forward to represent any absent putative members when *Busk* was first filed and dismissed – which may in itself speak volumes as to the legitimacy of the underlying claims.  Rather, it was only when the Ninth Circuit issued its aberrational decision that these firms grasped hold of the *Busk* coattails, filed a raft of cookie cutter complaints, embarked on wide-ranging campaigns of solicitation, and waited almost another year to now argue that tolling should not only be entered, but it should be entered retroactively!  Quite to the contrary, what these Motions are about is law firms seizing upon an opportunity created by an appellate decision (which is now under review by the Supreme Court) to bring claims that they never thought previously to bring and to seek this Court's imprimatur in the form of tolling. That is not the purpose of tolling, let alone that based on principles of equity.

In fact, as the Court will recall, these same law firms generally assented to a stay when the Court raised that prospect.  Why is that?  It is clearly because they did not want to make the investment in working on these matters given the uncertain future of *Busk* – just as they were husbanding their resources when *Busk* was pending appeal before the Ninth Circuit.  Indeed, the *Busk* plaintiffs' counsel said as much during the March 4, 2014 conference before the Court:

> THE COURT:  It would also seem, however, that in the interim [while the certiorari petition is pending] … we could work toward either an agreed statement of what the facts are or some determination of what the facts are.  Does that sound reasonable?
>
> MR. THIERMAN:  This is Mark Thierman.  I really don't think so, Your Honor.
>
> THE COURT:  You don't think what?
>
> MR. THIERMAN:  That we ought to go forward with anything in terms of factual.  It's a drain of resources if it's for naught.  If it's for naught, we are spending time and effort.  Not that I am predicting that we're going to

lose, but there is a possibility.  I don't know what – I just don't think going forward would be a useful thing.

March 4, 2014 Tr. at 6:10-24 (attached as Exhibit A to the Declaration of Joseph A. Nuccio submitted herewith).  What Plaintiffs really are asking is to hedge their bets: (a) if the Supreme Court overturns *Busk*, they have not expended resources and (b) if the Supreme Court affirms *Busk*, they have a larger pool of claims.  This "Heads I win, Tails you lose" strategy has no footing in equity.

This Court already has entered the appropriate equitable solution by way of its scheduling order dated March 13, 2014.  Under that Order, individual claimants who think that these claims are legitimate are free to intervene and preserve their supposed rights.  Hundreds have already done so, both before and after these cases were consolidated, and Plaintiffs' firms continue to submit new opt-in consent forms almost every day.  Should any of these opt-ins have claims that are time-barred in whole or in part, they are free to petition this Court for equitable tolling based on their own circumstances and diligence.  In short, the proper solution here is to let employees make responsible decisions and decide for themselves whether they want to be part of these proceedings – which is exactly what the Court already has done by entering a stay but allowing for opt-ins to participate despite the stay.

## III.   SUPPLEMENTAL ARGUMENTS SPECIFIC TO PARTICULAR DEFENDANTS

### A.   Tolling Back To 2010 Or 2011 – When *Busk* Was The Only Pending Lawsuit – Cannot Apply To Parties Not Then Named As *Busk* Defendants:  Kelly Services, SMX, And The Amazon Defendants.

Both sets of Plaintiffs' counsel seek tolling back to 2010 or 2011, when the only pending litigation was *Busk*, and was then pending only against defendant Integrity.  The Amazon Defendants were not then named as defendants in *Busk*, and defendants SMX and Kelly Services have never been so named.  Accordingly, any attempt to toll the statute of limitations against

these parties based on events in the *Busk* case must be rejected.  *See, e.g.*, *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 567-68 (6th Cir. 2005) (analogous tolling of class action claims under *American Pipe* doctrine[14] cannot be enforced against defendants not named in the class action) (collecting cases).  Plaintiffs offer no authority to the contrary – *i.e.*, decisions reaching the radical conclusion that retroactive tolling can be granted against a defendant based on the filing date of a *separate* lawsuit, to which they were never party.[15]

While the *Busk* Plaintiffs' Second Amended Complaint – filed August 28, 2013 – names Amazon.com, Inc., as a defendant, that amendment does not relate back to their original or First Amended Complaints and thus cannot render the Amazon Defendants vulnerable to tolling back to 2010 or 2011.  Rule 15(c)(1)(C) allows for relation back only if, *inter alia*, "within 120 days of the filing of the original pleading, the [Amazon] Defendants knew or should have known that the action would have been brought against them but for Plaintiffs' mistake concerning the identity of the proper party." *Bradford v. Bracken Cty.*, 767 F. Supp. 2d 740, (E.D.Ky. 2011) (citing *Black-Hosang v. Ohio Dep't of Pub. Safety*, 96 F. App'x 372, 374-75 (6th Cir. 2004)). "Even if the parties had notice that plaintiffs might sue them, adding them relates back only if they know that it was due to a mistake that they were not sued." *Burdine v. Kaiser*, 2010 WL 2606257, at *3 (N.D. Ohio June 25, 2010).  In particular, "[s]ubstituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties." *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996).  "[A] plaintiff's lack of knowledge pertaining to

---

[14]   The Sixth Circuit views *American Pipe* tolling as a form of equitable tolling.  *See Youngblood v. Dalzell*, 925 F.2d 954, 959 n.3 (6th Cir. 1991) (noting plaintiff's failure to discuss whether limitations period at issue was subject to "equitable tolling under precedent such as *American Pipe*").

[15]   Indeed, such a rule would give plaintiffs a perverse incentive to sit on their hands and *not* act timely to preserve their claims, as they would have no reason to file suit promptly when they could wait, do nothing, and get the benefit of a first-filed suit.  Or, in other words, "why toil now when we can simply toll later?"

an intended defendant's identity does not constitute a 'mistake concerning the party's identity' within the meaning of Rule 15(c)." *Moore v. Tenn.*, 267 F. App'x 450, 455 (6th Cir. 2008) (citing *Cox*, 75 F.3d at 240).

Here, Plaintiffs offer nothing to support their contention that Amazon "knew or should have known that*, but for a mistake as to its identity*, the suit would have been brought against it." *Busk* Mem. at 3 (emphasis supplied). Rather, review of the various *Busk* complaints indicates that Amazon.com, Inc. was not added as a defendant until *additional Plaintiffs* joined the case – Sierra Williams and Monica Williams – who were *directly employed* by Amazon or its subsidiaries. *See Busk* Second Am. Compl. (Dkt. 47) at ¶¶ 10-11. Those Plaintiffs did not join the lawsuit until the August 2013 amendments, and the Plaintiffs named in the original and First Amended Complaints – Jesse Busk and Laurie Castro – were employees of Integrity only and never worked for Amazon. *See id.* at ¶¶ 8-9. Plaintiffs' and Integrity's joint stipulation allowing for this amendment, *Busk* Dkt. 42, drives home this point when it describes the Second Amended Complaint as "considerably expand[ing] the scope of the litigation" and the purpose thereof was, *inter alia*, to "add[] three additional plaintiffs … and one additional defendant (Amazon.com)." *Id.* at 1-2.

Furthermore, the *Busk* Plaintiffs clearly knew – as they themselves alleged – that Amazon operates the facilities at issue in their original and First Amended Complaints. *See Busk* Compl. at ¶¶ 6, 13; *Busk* First Am. Compl. at ¶¶ 5, 9-13. In fact, the *Busk* Plaintiffs' counsel had filed a prior nationwide FLSA action against Amazon, on behalf of a plaintiff working at the same Nevada facility at which Plaintiff Busk worked. *See Austin v. Amazon.com, Inc.*, Dkt. No. 2:09-cv-01679-JLR (W.D.Wash.), filed November 25, 2009. Amazon's operation of the facilities at issue was no secret and was clearly known to the *Busk* Plaintiffs' counsel. Their failure to sue

27

Amazon was no "mistake concerning the proper party's identity," but rather either a calculated strategic decision or the product of the fact that they had not yet been retained by any employee of Amazon.  This was no "mistake," and any suggestion that it was is disingenuous at best.

The simple fact is that no Plaintiff brought any claims against Amazon.com, Inc., or any of its subsidiaries, until August 2013, when the *Busk* Second Amended Complaint was filed and when the first of what the *Busk* Plaintiffs call "copycat actions" (*see Busk* Mem. at 4), *Vance*, was filed in this court.  For the statute of limitations to be tolled against the Amazon Defendants, SMX, and Kelly Services for up to three years before they were *ever sued* is patently absurd.

### B. Tolling Based On The *Allison* Lawsuit Cannot Apply To Parties Over Whom That Court Had No Jurisdiction:  Integrity And Kelly Services.

Similarly, tolling arguments based on the *Allison* lawsuit – to which only Amazon.com, Inc., and SMX were parties – cannot be maintained against the other defendants:  Integrity and Kelly Services.  As with *Busk*, Kelly Services has *never* been a defendant in *Allison*.  They have only ever been named as a defendant in the *Vance* action in this Court.  Indeed, Kelly Services employees are not included in the *Allison* definition for class certification – "[a]ll current and former hourly warehouse employees who worked for Amazon.com, Integrity Staffing Solutions, Inc., AF Operations, LLC, and/or SMX, LLC in the United States at any time during the past three years."  (*Allison* Dkt. No. 114 at 1.)  Therefore, Plaintiffs should not benefit from the Plaintiffs in *Allison* trying to pursue their claims (although not diligently as explained in detail above).  Therefore, tolling based on events in cases to which Kelly Services was never a party and in which it had no involvement cannot possibly be held against them.[16]

---

[16]  Indeed, it was *Plaintiffs themselves* who obtained a stay of proceedings in *Vance*.  As Your Honor may recall, on October 8, 2013, the *Vance* Plaintiffs moved Your Honor to extend indefinitely the response deadline of their own conditional certification motion, pending resolution of the MDL petition process.  *Vance* Dkt. 73.  The *Vance* Plaintiffs argued that "conducting further discovery or briefing at this time related to Plaintiffs' [conditional

As to Integrity:  while Integrity was originally named as a defendant in *Allison*, it vigorously contested personal jurisdiction over it in the state of Washington – a position with which the *Allison* court ultimately agreed, dismissing Integrity from the case.  *Allison* Dkt. 50, 74, 118, 141.  Plaintiffs cannot suggest that Integrity's motion practice in Washington caused them any undue delay in resolving their conditional certification motion.  On the contrary, it was the *Allison* Plaintiffs' own insistence that jurisdiction lay over Integrity in Washington – a position that proved erroneous – that engendered months of protracted motion practice in Washington ultimately rendered moot when Plaintiffs finally agreed to transfer the case to another court with jurisdiction over Integrity.  *See supra*, Part II.C.1.c.  As Integrity did nothing in *Allison* but insist, properly, that it was not a proper party to the case, it cannot and should not be subject to tolling based on a conditional certification motion to which it was never in fact subject.

**C.**     **Retroactive Tolling Is Not Justified With Regard To Integrity.**

Despite Integrity having been named as a Defendant from the inception of *Busk*, tolling the relevant statute of limitations back to 2010 or 2011 cannot be justified.  As previously discussed, tolling is an equitable remedy to be exercised only when an individual plaintiff demonstrates that "some extraordinary circumstance stood in [his or her] way" of timely pursuing claims under the FLSA.  *Perez*. at *4.   Trial courts have been cautioned that equitable

---

certification] Motion would be at best premature and at worst unnecessary." *Id.* at 1-2. Indeed, the *Vance* Plaintiffs filed this motion on the eve of their depositions in what was a transparent effort to avoid the creation of record evidence that likely would have demonstrated just how **dissimilar** are their claims to the class that they seek to represent. Not only do these events undermine Plaintiffs' claims of diligence, they contradict their now-professed confidence that their claims would certainly have been certified and that notice would have gone out.  In any event, as the only conditional certification motion that has any relation to Kelly Services (the *Vance* motion) was delayed by Plaintiffs' own actions, Kelly Services should not pay for Plaintiffs' strategic maneuvering by being subject to tolling based on cases in which it has zero involvement.

tolling should be resorted to sparingly.  *See Amini*, 259 F.3d at 500.  Thus, the law assumes that

the equities preserved by the legislation under which a claim is alleged, and those of the system

in which the claim is brought, are balanced and typically require no ad hoc revision.  The

equitable tolling inquiry must look beyond the normal course of justice into extraordinary

circumstances that would cause an individual "despite all due diligence" to be "unable to obtain

vital information bearing on the existence of his claim."  *Archer*, 1997 WL 720406, at *3.

Plaintiffs allege no extraordinary circumstance here.  They alleged no act or omission of

Integrity to interfere with the rights of the *Busk* Plaintiffs', or any other individual's, ability to

bring and pursue claims.  Nor were the *Busk* Plaintiffs prohibited from seeking certification of

their alleged collective action during the pendency of *Busk*.  Though the *Busk* Plaintiffs had

several months in which to request conditional certification of their collective action claims

against Integrity, they simply never did.  The failure cannot be attributed to necessity, to any

unusual action taken by the Court, or to any obstructive action on the part of Integrity.  The *Busk*

Plaintiffs had ample opportunity to pursue their collective action claims from the inception of the

*Busk* litigation, but chose not to do so.  Equitable tolling is not intended to make up for a choice,

or even a mistake, which a plaintiff had the opportunity to avoid.

Just as no extraordinary circumstance conspired to inhibit the *Busk* Plaintiffs from

pursuing their representative claims, neither did any circumstance hinder any individual from

pursuing his or her own claims during the pendency of *Busk*.  Those who have desired to opt into

*Busk* have been able to do so while the action has been before the trial court.  Indeed, even

during the stays that have been in place during the action, the *Busk* plaintiffs have been able to

file, and in fact have filed, opt-in consent forms.  *See Busk* Dkt. 50, 52, 54, 64, 65.  Additionally,

those who believe they have claims against Integrity, but who have not desired to opt into *Busk*

have been free to assert those claims in separate litigation – and they have done so.  *See* Complaints filed against Integrity in *Allison v. Amazon.com, Inc.*, *et al.*; *Davis v. Amazon.com, Inc., et al.*; *Heimbach v. Amazon, Inc., et al.*; *Hernandez v. Amazon, Inc., et al.*. Accordingly, those with perceived claims against Integrity have, at all times, had the opportunity to assert their alleged claims and to preserve those claims against the passing of the applicable limitations period.  At no time has Integrity taken any action to keep any individual from either discovering the existence of an alleged claim or their ability to seek redress by either filing or joining litigation.

Though Integrity has been a named party since the inception of *Busk*, the circumstances of that action nevertheless do not permit the extraordinary measure of equitable tolling.

## IV.    CONCLUSION

Plaintiffs' motions are legally and factually misguided.  Sixth Circuit precedent precludes them from seeking equitable tolling on behalf of absent individuals whom they do not represent – yet that is exactly what they seek to do.  Nor have Plaintiffs presented any evidence whatsoever that those absent individuals diligently pursued their rights – of which they had actual and constructive knowledge – despite ample opportunity and a massive solicitation, publicity and advertising blitz to convince them to do exactly that.  And Plaintiffs have also not diligently sought conditional certification on absent individuals' behalves.  They instead chose to sit on their hands and take a "wait and see" approach, in order to save the time and expense of pressing forward with this uncertain litigation.  Finally, Plaintiffs' attempt to yoke Defendants with retroactive tolling based on events in lawsuits to which many of the Defendants were not involved and were not proper parties (or parties at all) has absolutely no footing in law or in

equity.  Accordingly, Defendants respectfully request that Plaintiffs' Motions for Equitable

Tolling be denied in their entirety.


      Respectfully submitted,

s/ Joseph A. Nuccio
MORGAN, LEWIS & BOCKIUS LLP
Richard G. Rosenblatt
Joseph A. Nuccio
502 Carnegie Center
Princeton, NJ 08540

Rebecca D. Eisen
Alison B. Willard
Theresa Mak
One Market, Spear Street Tower
San Francisco, CA 94105

DINSMORE & SHOHL LLP
Kathryn A. Quesenberry
101 South 5th Street, Suite 2500
Louisville, KY  40202

Attorneys for Defendants
Amazon.com, Inc., Amazon.com, LLC,
Amazon.com.DEDC, LLC, Amazon.com.DEDC,
Inc., Amazon.com.KYDC, LLC,
Amazon.com.KYDC, Inc., Amazon.com.AZDC,
LLC, Zappos Fulfillment Centers, Inc.,
Zappos.com, Inc., and Golden State FC, LLC


s/ Gerald L. Maatman, Jr.
(*with permission*)
SEYFARTH SHAW LLP
Gerald L. Maatman, Jr.
Rebecca P. Bromet
Ashley C. Workman
131 S. Dearborn Street, Suite 2400
Chicago, IL 60603

Attorneys for Defendant
Kelly Services, Inc.


s/ Rick D. Roskelley
(*with permission*)
LITTLER MENDELSON, P.C.
Neil M. Alexander
50 West Liberty St., Ste. 400
Reno, NV 89501

Rick D. Roskelley
Roger L. Grandgenett
Cory G. Walker
Peter D. Navarro
3960 Howard Hughes Parkway, Suite 300
Las Vegas, NV 89169

Attorneys for Defendant
Integrity Staffing Solutions, Inc.

s/ William F. Dolan
(*with permission*)
JONES DAY
William F. Dolan
Brent D. Knight
Michael Zuckerman
Andrew G. Madsen
77 West Wacker
Chicago, IL 60601

Attorneys for Defendants
SMX, LLC, and Staff Management, LLC

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed this 29th day of April, 2014, and served on the parties via the Court's ECF system.

s:\ Joseph A. Nuccio
*Counsel for the Amazon Defendants*