1    Mark R. Thierman, Esq. (SBN 72913)
     **THIERMAN LAW FIRM**
2    7287 Lakeside Drive
     Reno, NV 89511
3    Tel: (775)284-1500 / Fax: (775)703-5027

4    David R. Markham, Esq. (SBN 71814)
     **THE MARKHAM LAW FIRM**
5    750 B Street, Suite 1950
     San Diego, CA 92101
6    Tel: (619) 399-3995 / Fax: (619)615-2067

7    Attorneys for Plaintiffs DAVID C. SALDANA, LADAISJA BREWSTER,
     MONICA CARLIN and KHADIJAH ROBERTSON on behalf of themselves and all others similarly
8    situated.  *[ADDITIONAL PLAINTIFF COUNSEL LISTED ON NEXT PAGE]*

9         **UNITED STATES DISTRICT COURT – WESTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| 10  DAVID C. SALDANA, LADAISJA BREWSTER, MONICA CARLIN and KHADIJAH ROBERTSON on behalf of themselves and all others similarly situated, | ) **Master File MDL No. 14-MD-2504** ) **The Hon. John G. Heyburn II** |

10    DAVID C. SALDANA, LADAISJA
      BREWSTER, MONICA CARLIN and
11    KHADIJAH ROBERTSON on behalf of
      themselves and all others similarly situated,
12

13

14                    Plaintiffs,

15

16

17            v.

18    AMAZON.COM, LLC, a Delaware Limited
      Liability Corporation;  SMX, LLC, an Illinois
19    Limited Liability Company;  STAFF
      MANAGEMENT, LLC, an Illinois Limited
20    Liability Company, GOLDEN STATE, FC,
      LLC, a Washington Limited Liability
21    Company and, DOES 1 through 10, inclusive,

22                    Defendants.

23

24

25

26

27

28

)  **Master File MDL No. 14-MD-2504**
)  **The Hon. John G. Heyburn II**
)
)
)  **SECOND AMENDED CLASS ACTION**
)  **COMPLAINT**
)     1)  **Failure to pay Hourly Wages (Lab.**
)         **Code, §200-204,  1194; IWC Order**
)         **2-2001);**
)     2)  **Failure to Pay Overtime Wages**
)         **(Lab. Code, §200-204,  1194; IWC**
)         **Order 2-2001);**
)     3)  **Failure to Provide Meal Periods or**
)         **Compensation in Lieu Thereof (Lab.**
)         **Code  § 226.7; IWC Order 5; Cal.**
)         **Code Regs., Title 8 § 11050);**
)     4)  **Failure to Provide Rest Periods or**
)         **Compensation in Lieu Thereof (Lab.**
)         **Code  §§ 226.7, 512; IWC Order 5;**
)         **Cal. Code Regs., Title 8 § 11050);**
)     5)  **Failure to Timely Pay Wages of**
)         **Terminated or Resigned Employees**
)         **(Lab. Code,  §§ 201-203)**
)     6)  **Knowing and Intentional Failure to**
)         **Comply With Itemized Employee**
)         **Wage Statement Provisions (Lab.**
)         **Code, § 226 (a),(b))**
)     7)  **Violations of the Unfair**
)         **Competition Law (Bus. & Prof.**
)         **Code,  §§ 17200-17208)**
)     8)  **Violations of the Private Attorneys**
)         **General Act of 2004 ("PAGA")**
)         **(Lab. Code §2698, *et seq.*)**
)
)  **DEMAND FOR JURY TRIAL**
)

---

1

Michael D. Singer, Esq. (SBN 115301)
J. Jason Hill, Esq. (SBN 179630)

2

**COHELAN KHOURY & SINGER**
605 C Street, Suite 200

3

San Diego, CA 92101
Tel: (619) 595-3001 / Fax: (619) 595-3000

4

5

Christopher J. Hamner, Esq. (SBN 197117)
**HAMNER LAW OFFICES, APC**
555 W. Fifth Street, 31st Floor

6

Los Angeles, CA 90013
Tel: (213) 533-4160/ Facsimile: (213)533-4167

7

8

Walter L. Haines, Esq. (SBN 71075)
**UNITED EMPLOYEES LAW GROUP, P.C.**

9

5500 Bolsa Avenue, Suite 201
Huntington Beach, CA 92649
Tel: (310) 234-5678 / Fax: (310) 652-2242

10

11

Attorneys for Plaintiffs DAVID C. SALDANA, LADAISJA BREWSTER,
MONICA CARLIN and KHADIJAH ROBERTSON on behalf of themselves
and all others similarly situated

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Second Amended Class Action Complaint                                   Master File No. 14-MD-2504

Plaintiffs DAVID C. SALDANA, LADAISJA BREWSTER, MONICA CARLIN and KHADIJAH ROBERTSON ("Plaintiffs"), by and through their attorneys of record, bring this action on behalf of themselves and all other persons currently or formerly employed-jointly by AMAZON.COM, LLC, SMX, LLC, STAFF MANAGEMENT, LLC, GOLDEN STATE, FC, LLC, and DOES 1 through 10, inclusive (hereinafter collectively referred to as "Defendants" or "Joint Employers"). Plaintiffs hereby allege, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## I.

## __INTRODUCTION__

1.     This case arises from Defendants' collective failure to pay employees all compensable wages for time worked and/or subject to employer control and the failure to pay the requisite amount of straight time, alternatively minimum wage, overtime and double time wages for all time worked. The case also arises from Defendants' engagement of warehouse employees in a Joint Employment relationship, and a collective failure of the Joint Employers to provide its shared employees with uninterrupted and duty free meal and rest periods in violation of California law, and for violations of the Private Attorney General Act (PAGA). The violations alleged herein stem from one overarching, systemic and uniform company practice that requires employees to be subject to individual security searches on Defendants' premises after the employees clock out for meal periods and at the end of the day when employees clock out for the end of their shifts.  The individualized security search is done on Defendants' premises, and results in up to 20-30 minutes, or more, of additional compensable work each day because the employees remain under the direct control of the Defendants as Joint Employer of the Plaintiffs and those similarly situated. The searches are easily feasible to be performed BEFORE the employees clock out for lunch or BEFORE they clock out for the end of their shifts, but in order to not pay wages, the individual on-premises security searches, done to protect the Defendants and their property, are systemically done AFTER the employee clocks out and interferes with the employees' ability to take full uninterrupted 30-minute lunches, full uninterrupted rest breaks and delays the employees ability to depart from the facility due to lines and volume of

1    employees who are ending shifts. By systematically placing the security check after the clock out

2    area, Defendants are able to cut short employees of all compensable time they are subject to employer

3    control.  The result is a daily underpayment for all time worked, daily interruptions in employee meal

4    and rest periods, a failure to provide correctly itemized and accurate wage statements showing all

5    hours actually caused or suffered to work, and a failure to pay all wages owed at separation to

6    separated employees. Indeed, some employees are hired and fired on such short notice that the

7    company regularly and systematically fails to pay all wages owed in the manner and in the time-

8    frame required by California Labor Code Section 203.

9        2.    This case is brought on behalf of certain California employees currently employed by, or

10   formerly employed by AMAZON.COM, LLC, a Delaware Limited Liability Corporation; SMX, LLC

11   an Illinois Limited Liability Company; STAFF MANAGEMENT, LLC, an Illinois Limited Liability

12   Company; GOLDEN STATE, FC, LLC, a Washington Limited Liability Company; and DOES 1

13   through 10, inclusive, all acting as Joint Employers of the warehouse fulfillment employees in

14   California. The proposed Plaintiff Class consists of all non-exempt hourly employees that are either

15   "Pickers" or "Packers" at AMAZON.COM's Fulfillment Center Warehouses in California and others

16   similarly situated, employed in California by Defendants, who, during the period four years prior to

17   filing the complaint through the time of trial, did not receive all straight time or alternatively

18   minimum wages, overtime and double time owed.  Due to the systematic security screening required

19   jointly by all employer Defendants, employees still subject to employer control were no paid properly

20   calculated straight time, overtime and double time wages, were not provided with compliant meal or

21   rest periods due to the burdensome individual on-premises security searches, were not provided with

22   accurate wage statements, and were not paid all wages due at termination. Plaintiffs also allege that

23   based on violations of the wage and hour statutes identified herein, a claim is also brought pursuant to

24   California Business & Professions Code Section 17200, *et seq.*, challenging the Joint Employers'

25   actions regarding security practices. The practice, based on information and belief, is ongoing and

26   continuous, and therefore continues to result in lost wages and damages to employees, and at the

27   appropriate time, pursuant to Business and Professions Code Section 17204, Plaintiffs may seek

28   declaratory and/or injunctive relief as primary means to prevent employee loss of wages through

- 2 -

Defendants' collective conduct.

3.      On December 19, 2013, Plaintiffs SALDANA, BREWSTER and CARLIN sent notice to the California Labor and Workforce Development Agency (LWDA) and to the agent for service of process of AMAZON.COM, LLC, a Delaware Limited Liability Corporation; SMX, LLC, an Illinois Limited Liability Company; STAFF MANAGEMENT, LLC, an Illinois Limited Liability Company; and DOES 1 through 10, inclusive, to the extent such addresses are available by the California Secretary of State. The notice has been sent pursuant to the Private Attorney General Act of 2004 ("PAGA"). A true and correct copy of that notice (courtesy copy of complaint omitted) is attached hereto as **Exhibit "A**" and is incorporated herein by this reference. The PAGA provides: "Notwithstanding any other provisions of law, a Plaintiff may as a matter of right amend an existing complaint to add a cause of action arising under this part within 60 days of the time periods specified in this part." By service of the notice before one year from any date of separation from the Joint Employers, all Plaintiffs' claims under PAGA are timely and within the applicable statute of limitations period.  No notice of cure by Defendants was provided and no notice of investigation was received from the LWDA in the statutorily proscribed 33-day period since the mailing of the notice of the action. Accordingly, Plaintiffs file this action as a "Representative Action" as  provided by California Code of Civil Procedure as specifically permitted and authorized by Labor Code §2699.3(a)(2)(C) as against Defendants.

4.      March 27, 2014, Plaintiff ROBERTSON sent notice to the California Labor and Workforce Development Agency (LWDA) and to the agent for service of process of AMAZON.COM, LLC, a Delaware Limited Liability Corporation; SMX, LLC, an Illinois Limited Liability Company; GOLDEN STATE FC, LLC, a Washington Limited Liability Company; and DOES 1 through 10, inclusive, to the extent such addresses are available by the California Secretary of State. The notice has been sent pursuant to the Private Attorney General Act of 2004 ("PAGA"). A true and correct copy of that notice (courtesy copy of complaint omitted) is attached hereto as **Exhibit "B"** and is incorporated herein by this reference. The PAGA provides: "Upon receipt of [the] notice or if no notice is provided within 33 calendar days of the postmark date of the notice given pursuant to paragraph (1), the aggrieved employee may commence a civil action pursuant to section

2699." By service of the notice before one year from any date of separation from the Joint Employers Plaintiff ROBERTSON's claim under PAGA is timely and within the applicable statute of limitations period.

5.      On April 22, 2014, the LWDA sent a response to Plaintiff ROBERTSON's notice stating that the agency "does not intend to investigate [Plaintiff's] allegations." A true and correct copy of the LWDA's response is attached hereto as **Exhibit "C"** and is incorporated herein by this reference. Accordingly, Plaintiff ROBERTSON files this action as a "Representative Action" as provided by California Code of Civil Procedure as specifically permitted and authorized by Labor Code §2699.3(a)(2)(C). Based on the LWDA's response, ROBERTSON brings this as a Representative action on behalf of the State of California to recover penalties on behalf of the LWDA and/or the Labor Commissioner of the State of California against all Defendants, including GOLDEN STATE, FC, LLC, an entity who was not listed or served in the previous PAGA Notice (Exhibit "A") by Plaintiffs SALDANA, BREWSTER and CARLIN.

**II.**

**JURISDICTION AND VENUE**

6.      Venue as to each Defendant is proper in this judicial district, pursuant to Code of Civil Procedure, section 395. AMAZON.COM, LLC, a Delaware Limited Liability Corporation; SMX, LLC, an Illinois Limited Liability Company; STAFF MANAGEMENT, LLC, an Illinois Limited Liability Company; GOLDEN STATE, FC, LLC, a Washington Limited Liability Company; and DOES 1 through 10, inclusive, all conduct business and commit Labor Code violations in Los Angeles County, as well as Concord, California and each Defendant is within the jurisdiction of this Court for service of process purposes. The unlawful acts alleged have a direct effect on Plaintiffs and those similarly situated within the State of California and Los Angeles County and to employees in warehouse fulfillment centers located in San Bernardino, Patterson City, Stockton, and Tracy, California, as perhaps other locations within the state of California. AMAZON, SMX, STAFF MANAGEMENT, GOLDEN STATE, FC, and DOES 1 through 10, inclusive each jointly employs numerous Class Members in Los Angeles County and surrounding counties. There is no federal question at issue, as the issues herein are based solely on California statutes and law, including the

- 4 -

Labor Code, IWC Wage Orders, Code of Civil Procedure, Civil Code, and Business and Professions Code.

7.    Further, Business and Professions Code, section 17203 provides that any person who engages in unfair competition may be enjoined in any court of competent jurisdiction.  Business and Professions Code, section 17204 provides that any person acting on his or her own behalf may bring an action in a court of competent jurisdiction.  Thus, the above entitled court maintains appropriate jurisdiction to hear this matter.

8.    Based on information and belief, Plaintiffs allege that this entire action arises solely under state law of the State of California and applicable regulations of the health, safety and wages of the employees residing in the State of California.  Plaintiffs allege, on information and belief, that no federal question is raised and that the Class Action Fairness Act ("CAFA"), 28 U.S.C. Section 1332(d), does not apply, or in the alternative, that exceptions for local case or controversy under CAFA do apply and prohibits removal of the action the federal court.

### III.

### THE PARTIES

**A.    The Plaintiffs**

9.    Plaintiff DAVID C. SALDANA is a resident of the State of California.  At all relevant times herein, Plaintiff SALDANA was jointly employed by AMAZON.COM, SMX, STAFF MANAGEMENT, and DOES 1 through 10, inclusive as a shared employee subject to common and joint control. He was called a "warehouse associate" and during the course of his employment was regularly subjected to the Joint Employers' mandatory security searches, not permitted to leave the Joint Employers' facilities for breaks and was not paid premium wages for non-compliant breaks, and was not paid for all work time wherein he was subject to the Joint Employer's control by security search. The time involved is not *de minimis*, but required airport style inspections of person and belongings, and Plaintiff SALDANA estimates that meals and breaks were never provided in the amount of time required by law and regulations.  He estimates that lunches were commonly cut short by 10 minutes or more, and that post-clock-out time for leaving at the end of shifts could run anywhere from 10-20 minutes and sometimes longer if other employees presented issues (metal,

- 5 -

1  shoes off, etc.). Because SALDANA clocked out for lunches and at the end of shift before the

2  mandatory security search, he was still "caused and suffered to work" under the direct control of the

3  Joint Employers, but was not paid for that time at the requisite rate of pay, nor was he provided

4  premium pay at his regular rate of pay for shorted meal periods and rest periods as required by Labor

5  Code Section 226.7 and Industrial Welfare Commission (IWC) Wage Order 4-2004, Sections 11-12.

6  SALDANA remained an hourly non-exempt employee of Defendants until January 8, 2013 and was

7  not timely paid all wages due at the time of his separation, and his wage statements failed to itemize

8  the additional compensable work time related to the Joint Employers' security requirements and

9  procedures that shorted his meal times, rest periods, and end of shift searches. SALDANA's losses

10  and wages, premiums, overtime pay (when the delays placed his hours into overtime or he was

11  already working an overtime shift exceeding 8 hours in length), interest and penalties will be

12  calculated in manner according to proof.  SALDANA's hourly rate of pay was approximately $12-

13  $13 per hour.

14      10.     Plaintiff LADAISJA BREWSTER is a resident of the State of California.  At all relevant

15  times herein, Plaintiff BREWSTER was jointly employed by AMAZON.COM, SMX, STAFF

16  MANAGEMENT, and DOES 1 through 10, inclusive as a shared employee subject to common and

17  joint control throughout her employment.  She was called a "outbound Packer" and during the course

18  of her employment was regularly subjected to the Joint Employers' mandatory security searches, not

19  permitted to leave the Joint Employers' facilities for breaks and was not paid premium wages for

20  non-compliant breaks, and was not paid for all work time wherein she was subject to the Joint

21  Employer's control by security search. The time involved is not *de minimis*, but required airport style

22  inspections of person and belongings, and Plaintiff BREWSTER estimates that meals and breaks

23  were never provided in the amount of time required by law and regulations. She estimates that

24  lunches were commonly cut short by 10 minutes or more, and that post-clock-out time for leaving at

25  the end of shifts could run anywhere from 10-20 minutes and sometimes longer if other employees

26  presented issues (metal, shoes off, etc.).  Because BREWSTER clocked out for lunches and at the end

27  of shift before the mandatory security search, she was still "caused and suffered to work" under the

28  direct control of the Joint Employers, but was not paid for that time at the requisite rate of pay, nor

- 6 -

was she provided premium pay for at her regular rate of pay for shorted meal periods and rest periods as required by Labor Code Section 226.7 and Industrial Welfare Commission (IWC) Wage Order 4-2004, Sections 11-12. BREWSTER remained an hourly non-exempt employee of Defendants until December 2, 2013, and was not timely paid all wages due at the time of her separation, and her wage statements failed to itemize the additional compensable work time related to the Joint Employers' security requirements and procedures that shorted her meal times, rest periods, and end of shift searches. BREWSTER's losses and wages, premiums, overtime pay (when the delays placed her hours into overtime or she was already working an overtime shift exceeding 8 hours in length), interest and penalties will be calculated in manner according to proof. BREWSTER's hourly rate of pay was approximately $10-$12 per hour.  As of at least December 6, 2013, BREWSTER had not received her final pay from Defendants.

11.     Plaintiff MONICA CARLIN is a resident of the State of California.   At all relevant times herein, Plaintiff CARLIN was jointly employed by AMAZON.COM, SMX, STAFF MANAGEMENT, and DOES 1 through 10, inclusive as a shared employee subject to common and joint control throughout her employment. She was called a "inbound Picker" and during the course of her employment was regularly subjected to the Joint Employers' mandatory security searches, not permitted to leave the Joint Employers' facilities for breaks and was not paid premium wages for non-compliant breaks, and was not paid for all work time wherein she was subject to the Joint Employer's control by security search. The time involved is not *de minimis*, but required airport style inspections of person and belongings, and Plaintiff CARLIN estimates that meals and breaks were never provided in the amount of time required by law and regulations. She estimates that lunches were commonly cut short by 10 minutes or more, and that post-clock-out time for leaving at the end of shifts could run anywhere from 10-20 minutes and sometimes longer if other employees presented issues (metal, shoes off, etc.). Because CARLIN clocked out for lunches and at the end of shift before the mandatory security search, she was still "caused and suffered to work" under the direct control of the Joint Employers, but was not paid for that time at the requisite rate of pay, nor was she provided premium pay for at her regular rate of pay for shorted meal periods and rest periods as required by Labor Code Section 226.7 and Industrial Welfare Commission (IWC) Wage Order 4-2004, Sections

- 7 -

11-12. CARLIN remained an hourly non-exempt employee of Defendants until November 23, 2013 and was not timely paid all wages due at the time of her separation, and her wage statements failed to itemize the additional compensable work time related to the Joint Employers' security requirements and procedures that shorted her meal times, rest periods, and end of shift searches. CARLIN's losses and wages, premiums, overtime pay (when the delays placed her hours into overtime or she was already working an overtime shift exceeding 8 hours in length), interest and penalties will be calculated in manner according to proof. CARLIN's hourly rate of pay was approximately $10-$12 per hour.

12.     Plaintiff KHADIJAH ROBERTSON is a resident of Moreno Valley, California.  At all relevant times herein, Plaintiff ROBERTSON was jointly employed by AMAZON.COM, SMX, GOLDEN STATE FC, LLC, and DOES 1 through 10, inclusive as a shared employee subject to common and joint control. She was called a "warehouse associate" and during the course of her employment was regularly subjected to the Joint Employers' mandatory security searches, not permitted to leave the Joint Employers' facilities for breaks and was not paid premium wages for non-compliant breaks, and was not paid for all work time wherein she was subject to the Joint Employers' control by security search. The time involved is not *de minimis*, but required airport-style inspections of person and belongings, and Plaintiff ROBERTSON estimates that meals and breaks were never provided in the amount of time required by law and regulations. She estimates that lunches were commonly cut short by 10 minutes or more, and that post-clock-out time for leaving at the end of shifts could run anywhere from 10-20 minutes and sometimes longer if other employees presented issues (metal, shoes off, etc.).  Because ROBERTSON clocked out for lunches and at the end of shift before the mandatory security search, she was still "caused and suffered to work" under the direct control of the Joint Employers, but was not paid for that time at the requisite rate of pay, nor was she provided premium pay at her regular rate of pay for shorted meal periods and rest periods as required by Labor Code Section 226.7 and Industrial Welfare Commission (IWC) Wage Order 4-2004, Sections 11-12. ROBERTSON remained an hourly non-exempt employee of Defendants until December 2013 and was not timely paid all wages due at the time of her separation, and her wage statements failed to itemize the additional compensable work time related to the Joint Employers'

- 8 -

security requirements and procedures that shorted her meal times, rest periods, and end of shift searches. ROBERTSON's losses and wages, premiums, overtime pay (when the delays placed her hours into overtime or she was already working an overtime shift exceeding 8 hours in length), interest and penalties will be calculated in manner according to proof. ROBERTSON's hourly rate of pay was approximately $12-$13 per hour.

13.     All Plaintiffs were systematically required to go through on-premises individual search procedures after clocking out for meals, for attempting off premises rest periods, and at the end of the day or shift. Each day, this resulted in interrupted and shortened meal periods, interrupted or shortened rest periods (or no rest period due to the hassle) and extended time at work under Joint Employers' collective and shared control to get through the often 20-25 minute line to exit the premises, all after being clocked out and unpaid. Plaintiffs did not receive premium pay at their regular hourly rate (approximately $12.50) for any non-compliant meal or rest period, nor did Plaintiffs receive their proper amount of pay for the extra 15-25 minutes after they clocked out in order to be subject to individualized on-premises search before leaving for their transportation. All observed all similar employees were subject to the identical policy and refusal to submit to individual on premises search constituted grounds for termination. Further, Plaintiffs' managers provided no reason why the security could not be conducted before clocking out for lunches or clocking out for end of shifts. Had such search requirement been conducted and then employees allowed to clock out for breaks and end of shifts, Plaintiffs would have been compensated for required work duties and employer controls without having meal and rest breaks cut short and waiting another 15-25 minutes to leave the work premises after clocking out for a shift. Due to the hassle of security checks, many employees simply did not take break periods as after the search, so few minutes were left that the employee would be reprimanded and assigned a negative point (after too many, a termination would follow) for late returns from break periods.

14.     Plaintiffs observed that due to the hassle of security checks, many employees simply did not take break periods as after the search, so few minutes were left that the employee would be reprimanded and assigned a negative point (after too many, a termination would follow) for late returns from break periods. If employees clocked back in late, they would earn a negative mark and

- 9 -

1    be subject to termination.

2    **B.    The Defendants**

3    15.    Defendant, AMAZON.COM, LLC, is a Delaware Liability Corporation headquartered at

4    410 Terry Avenue, North, in Seattle, Washington, 98109, and is engaged in business in Los Angeles

5    County and throughout California. AMAZON operates one of the most well-known online

6    marketplaces in the country. Amazon.Com owns and operates over 50 warehouse distribution centers

7    across the United States, including, but not limited to, the States of Arizona, California, Delaware,

8    Indiana, Kansas, Kentucky, New Hampshire, New Jersey, and Nevada.

9    16.    SMX, LLC is an Illinois Limited Liability Company.  STAFF MANAGEMENT, LLC is

10   an Illinois Limited Liability Company. Both do business in the state of California. Both are

11   headquartered in the State of Illinois, and hold active status in California, but did not provide an

12   address in the public records maintained by the state of California for an agent for service of process.

13   17.    GOLDEN STATE, FC, LLC is a Washington state based Limited Liability Company

14   whose corporate headquarters are listed as the same address as AMAZON.COM, LLC, at 410 Terry

15   Avenue, North, in Seattle, Washington, 98109, and is engaged in business in Los Angeles County and

16   throughout California. AMAZON operates one of the most well-known online marketplaces in the

17   country. Amazon.Com owns and operates over 50 warehouse distribution centers across the United

18   States, including, but not limited to, the States of Arizona, California, Delaware, Indiana, Kansas,

19   Kentucky, New Hampshire, New Jersey, and Nevada. Plaintiffs are informed and believe that

20   GOLDEN STATE, FC, LLC is an entity primarily owned and controlled by AMAZON.COM LLC.

21   18.    AMAZON obtains services of temporary employee agencies that also perform identical

22   tasks as AMAZON employee in the Fulfillment Center Warehouses. These entities are SMX, STAFF

23   MANAGEMENT, GOLDEN STATE, FC, and other DOE entities who offer AMAZON jointly hired,

24   shared and controlled employees as part of a common enterprise. Some staffing services who provide

25   "Packers," "Pickers," and "Warehouse Associates" may also jointly employ the employees but at this

26   time, their true names are unknown and are named at this point as DOES 1-10.

27   19.    At all times relevant herein, Defendants, and each of them, maintained joint control and

28   were in law and in fact "Joint Employers" of said Plaintiffs and the proposed class and subclasses

- 10 -

they seek to represent. At all times relevant herein, AMAZON retained and exercised the right to control the manner and means by which SMX, STAFF MANAGEMENT, GOLDEN STATE, FC, and DOES 1-10 employees accomplished the work at Amazon.com locations. AMAZON's supervisors directed and controlled the work of DOE Defendant employees. Amazon.com exercises direct control over the hours and other working conditions of all Plaintiffs and all similarly-situated hourly shift employees who are paid on the payroll of DOES working at all Amazon.Com's warehouse locations in California. Upon information and belief, employment data such as hours worked, hourly rates of pay, punch/clock systems and other benefit information is recorded in identical method for AMAZON employees like Plaintiffs, and other staffing employees assigned identical positions by DOE entities or by SMX, STAFF MANAGEMENT, and GOLDEN STATE, FC.

20.     As set forth below, persons employed by Amazon.Com were all subjected to the same illegal policies and practices as those employed by DOE Defendants.  Each employee of Defendants (both AMAZON and all DOE Defendants) was subject to an individualized personal security search on the premises so that AMAZON could curtail any shrinkage of inventory of products through worker theft.   All workers, regardless of suspicion or no suspicion at all, were required clear security when seeking to leave the premises for any reason, including meal breaks, rest breaks and end of shift.   The process was not *de minimis* and required at minimum a 5-7 minute, or more, delay after clocking out for meals or end of shift. Although rest breaks were not clocked, if the employee sought to leave the employers secured area, another search would take place, thus limiting rest breaks to little more that 3-5 minutes, rather than 10 continuous minutes as required by law and applicable orders of the Industrial Welfare Commission (IWC).

21.     The Joint Employers' search policy was required and not optional. The purpose of the on-premises individual personal search was to prevent employee theft and was an essential part of the job of the warehouse employees, and was done solely for the benefit of the employer to reduce loss and ordained as a job duty of all employees to report or assist in loss preventions as a primary job duty. The search is similar to an airport screening and subject to multiple people going through a bottleneck in order to exit secured premises. However, the search is a required aspect of the job,

1    subject to termination for non-compliance, as the public has a right to avoid airports and take other

2    transportation if they wish. Plaintiffs and all other similar employees were required to remove all

3    personal belongings from their person such as wallets, keys, and belts, and pass through metal

4    detectors before being released from work and allowed to leave the facility. Defendants' policies and

5    practices required warehouse employees to leave their personal belongings such as cell phones in

6    their vehicles. Thus, warehouse employees were unable to engage in any personal activities during

7    the time spent waiting. Due to security, employees could not leave the premises for lunch and

8    remained essentially locked down for rest breaks as no one would have time to go out of the secure

9    area and return for a 10-minute rest period.

10       22.    Defendants, and each of them, required such individual security screenings after the

11   employees clocked out of their shift and before leaving the secured area for breaks. Defendants'

12   policy did not pay any employee for any time related to the required security submission yet all time

13   was still under the direct control of the employer. Plaintiffs allege that on a typical day, including

14   interfered with meal periods, shortened or interrupted rest periods and clocking out for end of shift

15   took as much as 30-40 minutes of time depending on the number of employees seeking to be screened

16   at the same time.  Each screening by definition was done by employer directive and the employee was

17   subject to the employer's control, but Plaintiffs, and other similar employees, were not paid at their

18   regular rate of pay, at the minimum wage rate or at the appropriate overtime rate when shifts

19   exceeded 8 hours per day. Further, meal and rest periods that were interrupted or cut short by the

20   security clearance search never resulted in payment of a premium wage as required by law. Further,

21   there was no logistical obstacle that prevented the punch clocks from being stationed after the

22   security checkpoints and screenings were completed, such that break periods could be fully realized

23   without being cut short or interrupted by the search, and such that end of shift screenings could have

24   been performed while on the clock by leaving the clock out devices just beyond the security clearance

25   areas.

26       23.    Plaintiffs are unaware of the true names, capacities, relationships, and extent of

27   participation in the conduct alleged herein, of the Defendants sued as DOES 1 through 100, but are

28   informed and believe, and based thereon allege, that said Defendants are legally responsible for the

- 12 -

wrongful conduct alleged herein, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint when their true names and capabilities are ascertained.

24.     Plaintiffs are informed and believe and, based thereon allege, that each Defendant, directly or indirectly, or through agents or other persons, employed Plaintiffs and other members of the class, and exercised control over their wages, hours, and working conditions. Plaintiffs are informed and believe, and based thereon allege, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant is legally attributable to the other Defendants.  The Defendants, and each of them, jointly managed, operated and controlled all aspects of the manner and means of employee work and were a joint employer under California law and liable for illicit wage and hour practices alleged herein.

25.     By this Complaint, Plaintiffs bring this case as a representative action seeking penalties for the State of California in a representative capacity, as provided by the Private Attorney General Act ("PAGA") to the extent permitted by law, as aggrieved employees who held the position identified and did not receive all compensable wages for time worked.  True and correct copies of the Notice correspondence showing compliance with Labor Code §2699.3 are attached as Exhibits "A" and "B" and demonstrate that Plaintiffs are aggrieved employees and have standing to bring a representative action on behalf of the State of California Labor and Workforce Development Agency (LWDA) and as a private attorney general.  No notice of cure by Defendants was provided in the statutorily proscribed 33-day period since the mailing of either of the notices of the action. and the LWDA declined to investigate the claims asserted herein (see Exhibit "C").  Accordingly, Plaintiffs file this action as a "Representative Action" as  provided by the California Code of Civil Procedure and as specifically permitted and authorized by Labor Code §2699.3(a)(2)(C).

**IV.**

**GENERAL ALLEGATIONS**

26.     During all, or a portion, of the Class Period, Plaintiffs and each member of the Plaintiff Class were employed by Defendants, in the State of California. Plaintiffs suffered damages, wage loss and legally cognizable harm due to Defendants' policies and practices, and have standing to bring this

- 13 -

1   case individually and as representatives for other similarly impacted employees.

2        27.    Defendants hire hourly employees in their warehouses throughout California and each

3   uniformly and systematically requires as a condition for employment that the employee submit to

4   daily security search on the premises to protect property and prevent loss of merchandise through

5   theft. Employees are not free to avoid the security clearance policy without being subject to

6   immediate termination or reprimand.

7        28.    The common impact of the policy to Plaintiffs and all other employees during the

8   proposed Class Period (defined as 4 years from the date of commencement of this suit until

9   commencement of trial in this matter) was as follows: (1) Employees would clock out for meal

10   periods, but then be held up anywhere from 5-15 minutes each day to go through security, leaving

11   only 15-25 minutes to have a meal break; (2)  Employees seeking a rest break off premises would

12   also have to submit to search again, interrupting and diminishing the possibility of have a full 10-

13   minute duty-free rest period for every four hours worked;  and (3)  Employees at the end of the shift

14   were required to clock out first, then go through individualized security inspection along with all

15   other employees whose shifts ended, which resulted in anywhere from 15-30 minutes, or more, of

16   time waiting before employees would leave the employers' premises and seek their car or other

17   transportation away from the warehouse. At all times prior to leaving the building to enter the parking

18   or transportation area, Plaintiffs and all employees remained under Employer control and were

19   subject to further direction, further search or other questions for any issue that might arise from

20   personal items that the company might suspect to be merchandise from the warehouse, yet all of this

21   time, as a matter of practice and corporate policy, was uncompensated.  All of these policies were

22   required by the Joint Employers, collectively, in their exercise of dominion and control over the

23   Plaintiffs and other similar employees. The policies were systematic and continuous, only the

24   amounts of actual unpaid or uncompensated time varied among class members, in an amount that is

25   subject to aggregation and manageable class wide proof.

26        29.    The process described herein was systematic and continuous, and led many employees

27   to forego required meal and rest breaks simply because it became futile to try to take a break.  Even

28   with perfect planning, Plaintiffs stated that there was no way to get through security and on to a break

period without losing a minimum of 5 minutes of break time for any employee who left a secure area. For Outbound Pickers, the problem was compounded because break areas (cafeteria) were beyond a secured area, and as a result, at least 5-10 minutes or more (depending on how many employees were trying to take a lunch concurrently) of time eroded away from a 30-minute meal period, leaving very little time to obtain any food in the cafeteria and clock back in without 30 minutes. On many occasions, just the line to clock in threatened discipline for being late, irrespective of wait times from the initial security clearance.  For Inbound Packers, the problem of the security checkpoint was only a problem if the employee wanted to leave the premises, which again, would require a clock out first, then the security search process. Packers had access to the cafeteria without having to go through security; Pickers did not. Packers, however, would have to go through security after clock out if they wanted to exit company premises and go to their vehicle or off-site location, with the same result and common impact as to Pickers, but perhaps with less frequency.

30.     The security policy resulted in a failure to pay all wages due for compensable work or work time wherein Plaintiffs remained subject to employer control but were required to clock out before the security process was complete. This policy and practice therefore violated California Labor Code Section 200-202, Labor Code Section 1194 and IWC Wage Order 4-2001, Section 2.

31.     As a result of the use of the security clearance process, during the proposed California Class Period, the Defendants, by virtue of centralized and uniform pay policies, failed to provide accurate, itemized wage statements to Plaintiffs and similarly situated employees as required by Labor Code section 226. In fact, each day, the time clock did not account for additional work duties required by submitting to a lengthy security line on the premises, nor did it account for lunches that were usually only 15 minutes or less in length after going through security. Defendants had actual knowledge that its security check process led to interrupted and shortened breaks and had actual knowledge that end of shift searches after clock out left employees, many of whom were into overtime hours, with anywhere from 20-40 minutes uncompensated at the agreed rate of pay, whether straight time, overtime or double time. By placing time clocks before the security checkpoint, Defendants know that employees were still subject to control but not being remunerated for that time as a result of Defendants' policies and practices.

32.     During the class period, Defendants failed to pay all wages owed Plaintiffs and similarly situated terminated employees as required by Labor Code section 203. This claim results not only from failure to pay premium wages for missed, late, interrupted or short break periods under Labor Code Section 226.7 and corresponding IWC Wage Order 4-2001 Sections 11 and 12, but also for failing to pay for additional work time during clocked-out meals and post-clock-out duties to submit to on premises personal search.

33.     Business and Professions Code, section 17203 provides that any person who engages in unfair competition may be enjoined in any court of competent jurisdiction. Business and Professions Code, section 17204 provides that any person who has suffered actual injury and has lost money or property as a result of the unfair competition may bring an action in a court of competent jurisdiction. The claims for which restitution are owed relate to unpaid wages for late and interrupted meal periods and for work periods at the end of each shift after clock out, but before employer required duties to submit to search were completed.

## V.

## CLASS ACTION ALLEGATIONS

34.     Plaintiffs bring this action on behalf of themselves and all other similarly situated persons as a class action pursuant to California Code of Civil Procedure section 382. Plaintiffs seek to represent a Class composed of and defined as follows:

**Plaintiff Class:**

> All current and former hourly (non-exempt) warehouse employees employed by the Joint Employer Defendants in the State of California at any time beginning four years prior to the filing of this Complaint to the commencement of trial in this action who were subject to Defendants' security search policies.

35.     Further, Plaintiffs bring this action on behalf of themselves and all other similarly situated persons in Subclasses of the Plaintiff Class, defined as:

A.     **Unpaid Straight Time Subclass:** All members of the  proposed Plaintiff Class who were subject to Defendants' policy and/or practice of requiring said employees to submit to individualized on-premises searches after having clocked out in a given workday and who were not compensated by Defendants at their regular rate of pay for the amount of time it took to complete the

security screening process;

B. **Unpaid Overtime Subclass:** All members of the proposed Plaintiff Class who were subject to Defendants' policy and/or practice of requiring said employees to submit to individualized on-premises searches after having clocked out in a given workday and who were not compensated for the amount of time it took to complete the security screening at appropriate overtime rate of pay for hours worked in excess of eight (8) hours in a day or forty (40) hours in a workweek, or appropriate double time rate of pay for hours worked in excess of twelve (12) hours in a day;

C. **First Meal Period Subclass:** All members of the proposed Plaintiff Class who were subject to Defendants' policy and/or practice of requiring said employees to submit to individualized on-premises searches after having clocked out for their first meal period, and who, as a result of the delay by the security clearance process, were not provided with full  30 minutes of uninterrupted, off-duty meal period time and who were not provided with compensation of one hour's pay at the employee's regular rate of pay;

D. **Second Meal Period Subclass:** All members of the proposed Plaintiff Class who were subject to Defendants' policy and/or practice of requiring said employees to submit to individualized on-premises searches after having clocked out for their second meal period (for shifts exceeding 10 hours in length) and who, as a result of the delay by Defendants' security clearance process, were not provided with full  30 minutes of uninterrupted, off-duty meal period time and who were not provided with compensation of one hour's pay at the employee's regular rate of pay;

E. **Rest Period Subclass:** All members of the proposed Plaintiff Class who worked periods of four hours or major fraction thereof who, as a result of Defendants' policy and/or practice of requiring said employees to submit to individualized on-premises searches, were not permitted to take an uninterrupted rest period of at least 10 minutes in length, and who were not paid compensation of one hour's pay at the employee's regular rate of pay for each such day that a full 10-minute, uninterrupted rest period was not provided;

F. **Waiting Time Subclass:** All members of the proposed Plaintiff Class who, within three years of the filing of the Complaint, were not paid all wages due at the time of their respective separation/termination from the company based on the Defendants' failure to pay all wages

- 17 -

earned as a result of Defendants' individualized on-premises search policy requirement;

        G.    **Wage Statement Subclass:**  All members of the proposed Plaintiff Class who, within one year of the filing of the Complaint, were subject to a company practice of failing to accurately itemize wage statements as a result of Defendants' individualized on-premises search policy requirement; and

        H.    **UCL Subclass:**  All members of the proposed Plaintiff Class who are entitled to the restitution of unpaid wages that occurred as a result of the employee being subject to Defendants' individualized on-premises search policy requirements.

36.    Plaintiffs reserve the right under Rule 3.765(b), California Rules of Court, to amend or modify the Class description with greater specificity or further division into subclasses or limitation to particular issues.

37.    This action has been brought and may be properly maintained as a class action under the provisions of California Code of Civil Procedure section 382 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

**A.    Numerosity**

34.    The members of the Class are so numerous that individual joinder of all of them as Plaintiffs is impracticable. While the exact number of the Class members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe, and based thereon allege, that there are more than 100 Class members, who, at all relevant times, were employed in the State of California.

**B.    Commonality**

35.    There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

        a.    Whether the Joint Employer Defendants are joint employers of the class members under California law;

        b.    Whether the Joint Employer Defendants violated California law by failing to impose uniform policies in all their California facilities, which would have allowed class members to record and be paid for all time during which they were

- 18 -

under the Joint Employers' control;

c.    Whether Defendants violated Labor Code section 204 by failing to pay all wages and overtime for periods of time employees were required to submit to individualized on-premises security searches;

d.    Whether Defendants violated Labor Code sections 510 or 1194 by improperly failing to pay the applicable overtime rate of pay when an employee worked more than eight (8) hours in a workday, but who were not compensated for time required to exit facilities due to Defendants' requirement that all such employees submit to individualized on-premises search before being allowed to leave the employer's premises;

e.    Whether Defendants violated Labor Code sections 226.7 and 512  and IWC Wage Order 4-2001, Section 11 & 12 by failing to provide full 30-minute, off-duty meal periods without interruption caused by Defendants' requirement that all such employees submit to individualized on-premises search after clocking out but before allowing employee to engage in a meal period;

f.    Whether Defendants violated Labor Code sections 226.7 and 512 and IWC Wage Order 4-2001, Section 11 & 12 by failing to authorize full 10-minute, off-duty rest periods without interruption caused by Defendants' requirement that all such employees submit to individualized on-premises search before allowing employee to engage in a rest period;

g.    Whether Defendants violates Labor Code section 226 by knowingly and intentionally failing to provide accurate itemized wage statements showing all hours worked at the appropriate and requisite rates of pay;

h.    Whether Defendants violates Labor Code sections 201 and/or 202 by not paying Class Members who are no longer employed by Defendants all earned wages, including straight time wages, overtime wages, and wages due under Labor Code sections 510 and 1194, upon their termination of employment. If so, whether such violations were "willful" within the meaning of Labor Code section 203;

- 19 -

i.    Whether Defendants violated the Unfair Competition Law, Business & Professions Code, section 17200, *et seq.*, by engaging in the conduct alleged in this complaint;

j.    The effects and the extent of any injuries sustained by the Plaintiff Class and Plaintiff Subclass members and appropriate type and/or measure of damages;

k.    The amount of restitution owed by Defendants attributable to violation of the Unfair Competition Law by failure to pay overtime compensation to the class members, and other wage violations;

l.    Appropriateness and nature of relief to each Plaintiff Class and Subclass member;

m.    The extent of liability of each Defendant, including DOE defendants, to each Plaintiff Class and Subclass member; and

n.    Whether injunctive relief is appropriate to ensure Defendants' compliance with the requirements of the Labor Code with respect to members of the Class who are still currently employed by Defendants.

### C.    Typicality

36.    The claims of the named Plaintiffs are typical of the claims of the Class. Plaintiffs and all members of the Class and subclasses sustained injuries and damages arising out of and caused by the Defendants' common course of conduct in violation of laws, regulations that have the force and effect of law, and statutes as alleged.

### D.    Adequacy of Representation

37.    Plaintiffs have each agreed to serve as representatives of all similarly situated employees to raise common claims. Each understands that they owe a fiduciary obligation to obtain competent counsel and take actions to promote, advance and prevail on the claims being made, not just individually, but for the collective group of employees as a whole. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have agreed to represent the proposed class and act as fiduciaries for their interests in addition to their own. Plaintiffs are aggrieved in a similar manner as the proposed classes and subclasses, with the only variation being the amount of loss and damage suffered by individual employees as a result of

Defendants' common, uniform and systematic practice. Counsel who represent Plaintiffs are competent and experienced in litigating large employment class actions.

**E.      Superiority of Class Action**

38.      A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery by reason of Defendants' illegal policy and/or practice of failing to pay straight, minimum, overtime and double time wages, and provide meal and rest periods. A Class action will allow those similarly situated to litigate their claims in the most efficient and economical manner for the parties and the judicial system. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**VI.**

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Failure to Pay Hourly Wages, alternatively Minimum Wages**

**(On Behalf of All Plaintiffs, individually, and the Unpaid Straight Time Subclass as against All Defendants)**

39.      Plaintiffs re-allege and incorporate by this reference each of the foregoing paragraphs as if fully set forth herein.

40.      By failure to pay straight time wages, as alleged above, Defendants willfully violated the provisions of Labor Code section 204. By failing to pay for all compensable work time, including delays that were caused by Defendants' requirement for post-clock-out individual on-premises searches at the end of each shift and for any break periods where employees sought to be free from employer control and premises.  Defendants willfully violated the provisions of Labor Code sections 204 and 1194.

41.      California law requires employers, such as Defendants, to pay compensation to all non-exempt employees for all hours actually caused or suffered to work, including waiting time for activities required by the employer.

42.      Named Plaintiffs and the proposed class at all times were non-exempt hourly employees

- 21 -

entitled to be paid compensation for all hours worked and all hours subject to the Defendants' requirements and controls on their premises, including time engaged in loss prevention security searches.

43.   Defendants at no time paid compensation for time expended by employees related to delays caused by the employers' required compliance with individualized searches when exiting the warehouse, whether at straight time, overtime or double time rates as appropriate and as will be shown by Defendants' payroll and punch clock data.

44.   As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Named Plaintiffs and Unpaid Straight Time Subclass members have sustained damages, including loss of compensation for straight time worked on behalf of Defendants in an amount to be established at trial, prejudgment interest, and costs and attorney's fees, pursuant to statute and other applicable law.

### SECOND CAUSE OF ACTION

**Failure to Pay Overtime Wages**
**(On Behalf of All Plaintiffs, individually, and the Unpaid Overtime Subclass as against All Defendants)**

45.   Plaintiffs re-allege and incorporate by this reference each of the foregoing paragraphs as if set forth herein.

46.   By failing to compensate for security clearance time and failing to allow for full 30-minute meal periods, Plaintiffs and the proposed class were engaged by the employer without pay so as to comply with Defendants' mandated search policy. Employees had no choice but to submit to the process and there were insufficient personnel to permit a *de minimis* delay.  In fact for meal periods, employees often were left with as little as 15 minutes after the search to eat and then clock back in without negative reprimand. When shifts exceeded 8 hours or 12 hours in a workday, employees subject to the security policy had wages at overtime and double time rates not paid for time still subject to Defendants' direct supervision and control.  Defendants likely saved hundreds of thousands of dollars by requiring the security search to be conducted after the employee clock out, even though the security check could have been performed first and employees allowed to clock out as soon as the process was completed. This procedure, by nature, appears designed to have minimized wages for

- 22 -

workers and maximize profits for the employer.  As a consequence, Defendants illegally failed to pay overtime wages, and in so doing, Defendants willfully violated the provisions of Labor Code sections 510 and 1194, IWC Wage Order 16-2001 and California Code of regulations, Title 8, section 11160(3).

47.     California law requires employers, such as Defendants, to pay overtime compensation to all non-exempt employees for all hours worked over eight in a day or forty per week for overtime and over twelve in a day for double time.

48.      As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Named Plaintiffs and the Overtime Subclass members have sustained damages, including loss of compensation for overtime worked on behalf of Defendants in an amount to be established at trial, prejudgment interest, and costs and attorney's fees, pursuant to statute and other applicable law.

### THIRD CAUSE OF ACTION

**Failure to Provide Meal Periods or Compensation in Lieu Thereof**
**(On Behalf All Plaintiffs, individually, and the First Meal Period Subclass and the Second Meal Period Subclass as against All Defendants)**

49.     Plaintiffs re-allege and incorporate by this reference each of the foregoing paragraphs as if set forth herein.

50.     By failing to authorize and permit statutory meal periods, and by failing to provide compensation for these meal periods, as alleged above, Defendants willfully violated the provisions of Labor Code sections 226.7 and 512, IWC Wage Order No. 16-2001 and California Code of Regulations, section 11160(11). The use of Defendants' security policy was to shift the process of security onto the hourly employees' purportedly off-duty time, but in fact, this was a required duty of employees to submit to search. As a consequence, virtually all meal periods during the class period were non-compliant in that they were cut short and interrupted by the search protocol.

51.     As a result of the unlawful acts of Defendants, Plaintiffs and the Meal Period Subclasses they seek to represent have been deprived of meal periods, premium wages and/or other compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, plus interest, attorney's fees, and costs.

52.     Plaintiffs and the Meal Period Subclasses they seek to represent request relief as

- 23 -

described below. The nature of the claim is amenable for class treatment as anytime any employee wanted to leave the secure area of the employer's premises, they were subject to search that was taken away from what was supposed to be 30 continuous, uninterrupted minutes of meal period time in order to comply with law.

## FOURTH CAUSE OF ACTION

**Failure to Provide Rest Periods or Compensation in Lieu Thereof**
**(On Behalf of All Plaintiffs, individually, and the Rest Period Subclass as against All Defendants)**

53.     Plaintiffs re-allege and incorporate by this reference each of the foregoing paragraphs as if set forth herein.

54.     By failing to authorize and permit rest periods, and by failing to provide compensation for these rest periods, as alleged above, Defendants willfully violated the provisions of Labor Code section 226.7. The use of Defendants' security policy was to shift the process of security onto the hourly employees' purportedly off-duty time, but in fact, this was a required duty of employees to submit to search. As a consequence, virtually all persons who sought rest periods during the class period that required individualized on-premises search were non-compliant in that they were cut short and interrupted by the search protocol itself.

55.     As a result of the unlawful acts of Defendants, Plaintiffs and the Rest Period Subclass they seek to represent have been deprived of rest periods, premium wages and/or other compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, plus interest, attorney's fees, and costs.

56.     Plaintiffs and the Rest Period Subclass they seek to represent request relief as described below.

## FIFTH CAUSE OF ACTION

**Failure to Timely Pay Wages Due at Termination**
**(On Behalf of All Plaintiffs, individually, and the Waiting Time Subclass, as against All Defendants)**

57.     Plaintiffs re-allege and incorporate by this reference each of the foregoing paragraphs as if fully set forth herein.

58.     California Labor Code section 203 provides that if an employer willfully fails to timely

- 24 -

pay wages, the employer must continue to pay the subject employee's wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

59.     All Waiting Time Claim Subclass members who ceased employment with Defendants are entitled to unpaid compensation, but to date have not received such compensation.

60.     More than thirty days have passed since Plaintiffs and members of the Waiting Time Subclass left Defendants' employment.

61.     Plaintiffs are informed and believe, and based thereupon allege, that Defendants purposefully engaged in a common scheme and design to deprive employees of their full wages and benefits under California law by failing to pay for all travel time, improperly automatically deducting thirty minutes for a meal period without reference to whether employees actually took meal periods, and failing to pay all hours over eight (8) in a day and over forty (40) in a workweek at the overtime rate of pay and all hours over twelve (12) in a day at the double time rate of pay.

62.     As a consequence of Defendants' willful conduct in not paying compensation for all hours worked, the Class Members whose employment ended during the class period are entitled to thirty days' wages under Labor Code section 203, together with interest thereon and attorney's fees and costs.

### SIXTH CAUSE OF ACTION
**Failure to Provide Itemized Employee Wage Statements**
**(On Behalf of All Plaintiffs, individually, and the Wage Statement Subclass as against All Defendants)**

63.     Plaintiffs re-allege and incorporate by this reference each of the foregoing paragraphs as if fully set forth herein.

64.     Defendants knowingly and intentionally failed to provide timely, accurate, itemized wage statements including, inter alia, hours worked, to Plaintiffs and Wage Statement Subclass members in accordance with Labor Code section 226(a) and applicable IWC Wage Orders. Such failure caused injury to Plaintiffs and Wage Statement Subclass members, by, among other things, impeding them from knowing the amount of wages to which they are and were lawfully entitled and under-reporting wages and hours for which pay was due and owing. At all times relevant herein, Defendants have failed to maintain appropriate records of hours worked by the Plaintiffs and Wage Statement Subclass members as required under Labor Code section 1174(d).

65.    Plaintiffs and Wage Statement Subclass members are entitled to seek injunctive relief requiring Defendants to comply with Labor Code sections 226(a) and 1174(d), and further seek the amount provided under Labor Code sections 226(e) and 1174.5, including the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period.

## SEVENTH CAUSE OF ACTION
### Violation of the Unfair Competition Law
**(On Behalf of All Plaintiffs, individually, and the UCL Subclass as against All Defendants)**

66.    Plaintiffs re-allege and incorporate by this reference each of the foregoing paragraphs as if fully set forth herein.

67.    Defendants' failure to pay all hourly and overtime wages use the appropriate rate of overtime pay for shifts exceeding eight (8) hours of work per day and/or over forty (40) hours in a workweek and twelve (12) in a day, failure to authorize and permit meal and rest periods or pay appropriate compensation in lieu thereof, failure to pay wages due at termination, and failure to provide accurate itemized wage statements  all constitute unlawful activity, acts and practices that are prohibited by Business and Professions Code sections 17200, *et seq*. The actions of Defendants described above constitute false, unfair, fraudulent and deceptive business practices, within the meaning of Business and Professions Code sections 17200, *et seq*. Defendants have violated multiple provisions of California law and applicable regulations and Orders of the IWC that have the same force and effect of a violation of law. This includes, without limitation California Labor Code Sections 201-203, 226.7, 512, and 1194, which serve as statutory predicates for which restitution is owed by Defendants, as well as Wage Order 4-2001, Section 11-12, and applicable regulations of the California Code of Regulations that relate to record keeping, overtime pay calculations, and failure to properly account for and pay wages lost as a result of security policies referenced herein.

68.    Named Plaintiffs are entitled to restitution and other equitable relief against such unlawful practices in order to prevent future damage, for which there is no adequate remedy at law, and to avoid a multiplicity of lawsuits.

69.    As a result of these unlawful acts, Defendants have reaped and continue to reap unfair benefits and illegal profits at the expense of Plaintiffs and the proposed Class and the proposed

- 26 -

Subclasses they seek to represent. Defendants should make restitution for these ill-gotten gains to restore to Plaintiffs and the members of the UCL Subclass the wrongfully under-reimbursed amounts, underpaid wages and overtime pursuant to Business and Professions Code section 17203 and specific performance of payment of penalties ordered under Business and Professions Code section 17202.

70.    Plaintiffs are informed and believe, and based thereon allege, that Defendants are unjustly enriched through the acts described above and that they and the proposed Class have and continue to suffer irreparable prejudice by Defendants' unfair practices.  Further, by engaging in such activities, Defendants are illegally operating at an advantage to other law abiding employers in the State of California and underpaying payroll and other applicable taxes that are collected by the State and local governmental entities in California. Plaintiffs are informed and believe that other competitors in the market place, to the extent they require security screenings of the nature described herein, render it part of the employees' compensable "hours worked" as required by Wage Order 4-2004, and track the time subject to employer control as required under IWC recordkeeping requirements.

71.    The illegal conduct alleged herein is continuing, and there is no indication that Defendants will not continue such activity into the future. Plaintiffs allege that Defendants will continue to fail to pay all hourly and overtime wages, appropriate overtime rates of pay for shifts where overtime is clearly worked, fail to pay all wages due at termination, and fail to pay and avoid paying appropriate taxes, insurance, and unemployment withholdings.

## EIGHTH CAUSE OF ACTION

**Violation of the Private Attorneys General Act of 2004 ("PAGA")**
**(As a Representative Action on Behalf of the California LWDA by All Plaintiffs as against All Defendants)**

72.    Plaintiffs re-allege and incorporate by this reference each of the foregoing paragraphs as if fully set forth herein

73.    Plaintiffs, by virtue of their employment with Defendants, and the Defendants' failure to pay all compensable wages for time worked, are aggrieved employees with standing to bring an action under the Private Attorneys General Act ("PAGA"). Plaintiffs have satisfied all prerequisites to serve as representatives of the general public to enforce California's labor laws, including, without

limitation, the penalty provisions identified in Labor Code section 2699.5.  (Exhibits "A" and "B").  Because the LWDA declined to intervene and Defendants took no corrective action to remedy the allegations set forth above within the allotted time period, Plaintiffs SALDANA, BREWSTER and CARLIN are acting in their capacity as representatives of the people of the State of California and/or the LWDA, will seek any and all penalties otherwise capable of being collected by the California Labor Commission, the LWDA and/or the California Department of Labor Standards Enforcement (DLSE) within the applicable limitations period based on a Notice date of December 19, 2013 as against AMAZON.COM LLC, SMX and STAFF MANAGEMENT. With regard to Plaintiff ROBERTSON, she will act in the capacity of a representative of the people of the State of California and/or the LWDA, will seek any and all penalties otherwise capable of being collected by the California Labor Commission, the LWDA and/or the California Department of Labor Standards Enforcement (DLSE) within the applicable limitations period based on a Notice date of March 27, 2014 as against Defendant GOLDEN STATE, FC, LLC, as well as Defendants AMAZON.COM LLC, SMX and STAFF MANAGEMENT.

74.    The Labor Code violations for which applicable penalties may apply includes each of the following, as set forth in Labor Code Section 2699.5, which provides that Section 2699.3(a) applies to any alleged violation of the following provisions: Sections 98.6, 201, 201.3, 201.5, 201.7, 202, 203, 203.1, 203.5, 204, 204a, 204b, 204.1, 204.2, 205, 205.5, 206, 206.5, 208, 209, and 212, subdivision (d) of Section 213, Sections 221, 222, 222.5, 223, and 224, subdivision (a) of Section 226, Sections 226.7, 227, 227.3, 230, 230.1, 230.2, 230.3, 230.4, 230.7, 230.8, and 231, subdivision (c) of Section 232, subdivision (c) of Section 232.5, Sections 233, 234, 351, 353, and 403, subdivision (b) of Section 404, Sections 432.2, 432.5, 432.7, 435, 450, 510, 511, 512, 513, 551, 552, 601, 602, 603, 604, 750, 751.8, 800, 850, 851, 851.5, 852, 921, 922, 923, 970, 973, 976, 1021, 1021.5, 1025, 1026, 1101, 1102, 1102.5, and 1153, subdivisions (c) and (d) of Section 1174, Sections 1194, 1197, 1197.1, 1197.5, and 1198, subdivision (b) of Section 1198.3, Sections 1199, 1199.5, 1290, 1292, 1293, 1293.1, 1294, 1294.1, 1294.5, 1296, 1297, 1298, 1301, 1308, 1308.1, 1308.7, 1309, 1309.5, 1391, 1391.1, 1391.2, 1392, 1683, and 1695, subdivision (a) of Section 1695.5, Sections 1695.55, 1695.6, 1695.7, 1695.8, 1695.9, 1696, 1696.5, 1696.6, 1697.1, 1700.25, 1700.26,

- 28 -

1700.31, 1700.32, 1700.40, and 1700.47, paragraphs (1), (2), and (3) of subdivision (a) of and subdivision (e) of Section 1701.4, subdivision (a) of Section 1701.5, Sections 1701.8, 1701.10, 1701.12, 1735, 1771, 1774, 1776, 1777.5, 1811, 1815, 2651, and 2673, subdivision (a) of Section 2673.1, Sections 2695.2, 2800, 2801, 2802, 2806, and 2810, subdivision (b) of Section 2929, and Sections 3095, 6310, 6311, and 6399.  Such penalties sought will be based on the factual predicate arising in this action and will be sought in an amount that that is reasonable and not confiscatory, as determined by the Court.

75.     Plaintiffs are informed and believe that Defendants have violated and continue to violate provisions of the California Labor Code and applicable Wage Orders related to the payment of all wages due at termination. As for Plaintiffs SALDANA, BREWSTER and CARLIN, 33 days elapsed after their notice to Defendants AMAZON, SMX and STAFF MANAGEMENT without response. By operation of law, Plaintiffs SALDANA, BREWSTER and CARLIN are entitled to commence this cause of action in the California Superior Court as a representative action under PAGA. The First Amended Complaint was filed on or about January 28, 2014, and asserted the PAGA cause of action against Defendants AMAZON, SMX and STAFF MANAGEMENT. Plaintiff ROBERTSON received official notice from the LWDA's appointment of her as representative as against all Defendants, including GOLDEN STATE, FC, LLC, and gave notice of its determination to not intervene or investigate on April 22, 2014.  As part of the LWDA response, the agency assigned case number 15993 and expressly requires Court approval of any penalties, if any, to be recovered in the action and requires notice of same to the LWDA regarding an award of such penalties. (Exhibit "C", which is incorporated herein by this reference).

76.     Plaintiffs, as personal representatives of the general public, will and do seek to recover any and all penalties for each and every violation shown to exist or to have occurred during the one year period before Plaintiffs filed Notice with the LWDA of their intent to bring this action, in an amount according to proof, as to those penalties that are otherwise only available to public agency enforcement actions. Funds recovered will be distributed in accordance with PAGA, with at least 75% of the penalties recovered being reimbursed to the State of California and the Labor and Workforce Development Agency ("LWDA").

# VII.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves individually and all members of the proposed Plaintiff Class and subclasses they seek to represent, pray for relief as follows:

A.     Certification of this action as a class action on behalf of the proposed California class;

B.     For an order certifying that action be maintained as a class action pursuant to Code of Civil Procedure section 382 on behalf of a class of pickers and packers employed by Defendants in the state of California within the last four and that notice of the pendency of this action be provided to members of the California Class;

C.     Designation of the Named Plaintiffs as Class Representatives and Plaintiffs' attorneys as Counsel for the Class;

D.     A declaratory judgment that the practices complained of herein are unlawful under appropriate state law;

E.     If appropriate, declaratory and/or injunctive relief, as permitted by California's Unfair Competition Law, Business & Professions Code Section 17203, *et seq.*

F.     All appropriate state statutory penalties under Labor Code Sections 203 and 226;

G.     All appropriate meal period premiums for non-compliant meals periods of less than full 30 minutes in length of off-duty time as required by Labor Code Section 226.7 and applicable IWC Wage Orders;

H.     All appropriate rest period premiums for non-compliant rest periods of less than full 10 minutes in length of off-duty time as required by Labor Code Section 226.7 and applicable IWC Wage Orders;

I.     An award of compensatory and liquidated damages pursuant to Labor Code section 1194.2, and restitution to be paid by Defendants according to proof;

J.     For penalties for each violation of the Private Attorney General Act ("PAGA") for each "aggrieved employee" during the applicable limitations periods based on Exhibits "A" to "C" attached hereto;

K.     Pre-Judgment and Post-Judgment interest, as provided by law;

- 30 -

1     L.     Such other equitable relief as the Court may deem just and proper;

2     M.     Attorneys' fees and costs of suit, including expert fees and fees pursuant to California

3 Labor Code sections 1194, California Code of Civil Procedure sections 1021.5, and other applicable

4 state laws, including Labor Code section 2698, *et seq*.;

5     N.     For an order that Defendants make restitution to Plaintiffs and the Class due to their

6 unlawful business practices, including unlawfully-collected compensation pursuant to California

7 Business and Professions Code sections 17203 and 17204; and

8     O.     Such other legal equitable relief as this Court deems necessary, just, equitable and

9 proper.

10                           **THIERMAN LAW FIRM**
**THE MARKHAM LAW FIRM**
11                           **COHELAN KHOURY & SINGER**
**HAMNER LAW OFFICES, LP**
12                           **UNITED EMPLOYEES LAW GROUP, P.C.**

13

14 Dated: June 12, 2014                 By: s/J. Jason Hill

15                           J. Jason Hill, Esq.
Attorneys for Plaintiffs DAVID C. SALDANA LADAISJA
16                           BREWSTER, MONICA CARLIN, KHADIJAH
ROBERTSON and all others similarly situated, and the
17                           general public

18                       **DEMAND FOR JURY TRIAL**

19     PLAINTIFFS hereby demand a jury trial with respect to all issues triable of right by jury.

20                           **THIERMAN LAW FIRM**
**THE MARKHAM LAW FIRM**
21                           **COHELAN KHOURY & SINGER**
**HAMNER LAW OFFICES, LP**
22                           **UNITED EMPLOYEES LAW GROUP, P.C.**

23

24 Dated: June 12, 2014                 By: s/J. Jason Hill

25                           J. Jason Hill, Esq.
Attorneys for Plaintiffs DAVID C. SALDANA LADAISJA
26                           BREWSTER, MONICA CARLIN, KHADIJAH
ROBERTSON and all others similarly situated, and the
27                           general public

28

Second Amended Class Action Complaint                 Master File No. 14-MD-2504