UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE: AMAZON.COM, INC.,
FULFILLMENT CENTER FAIR LABOR                    Master File No. 3:14-md-2504
STANDARDS ACT (FLSA) AND                              MDL Docket No. 2504
WAGE AND HOUR LITIGATION

THIS DOCUMENT RELATES TO:
*Saldana, et al. v. Amazon.com, LLC, et al.*,           Case No. 3:14-cv-290-DJH

\* \* \* \* \*

## ORDER

This matter is before the Court for final approval of a class action settlement.  (Docket No. 71)  The plaintiffs also seek final approval of attorney fees and class-representative incentive payments, as well as certification of the class for settlement purposes and a finding that the notice procedure was fair, reasonable, and adequate (*Id.*; D.N. 65).   These motions are unopposed, and no class member has objected to the settlement.   For the reasons discussed below, the plaintiffs' motions will be granted.

## I.       BACKGROUND

The plaintiffs in this class action are current or former employees of Defendant Amazon.com, LLC; SMX, LLC; Staff Management, LLC; or Golden State, FC, LLC.  They allege that they were forced to spend uncompensated time waiting in line to undergo security checks at the Amazon.com fulfillment centers where they worked.  The settlement pertains only to current and former employees of SMX, LLC, a temporary employment agency whose services Amazon engaged.[1]  (*See* Master File D.N. 61, PageID # 1759)

---

[1] Plaintiff Khadijah Robertson's claims against Amazon.com, LLC and Golden State, FC, LLC are unaffected by the settlement.

The settlement agreement defines the Settlement Class as

> [a]ll non-exempt employees employed by SMX in California who worked at an Amazon.com fulfillment center from October 1, 2012 until the date that the preliminary approval of the proposed settlement is ordered ("Class Members")[.]

(D.N. 53-1, PageID # 771)   Two subclasses, the "Pre-*Busk* Subclass" and the "Post-*Busk* Subclass," are also defined.[2]  Pre-*Busk* Subclass members are

> [t]hose Class Members who were employed by SMX in California and who worked at an Amazon.com fulfillment center from October 1, 2012 through April 30, 2013.

(*Id.*)  The Post-*Busk* Subclass consists of

> [t]hose Class Members who were employed by SMX in California and who worked at an Amazon.com fulfillment center from May 1, 2013 until the date that the preliminary approval of the proposed settlement is ordered.

(*Id.*)

Following a preliminary fairness hearing held on March 11, 2016, the Court preliminarily approved the class action settlement and incentive payments to class representatives; conditionally certified the class for settlement purposes; appointed class counsel, lead class counsel, and the settlement administrator; and approved the notice and claim form to be sent to class members.  (Docket No. 60)  The Court held a final fairness hearing on August 15, 2016.  At that hearing, counsel for both Plaintiffs and Defendants emphasized the strong claims response rate, low number of opt-outs, and absence of objections to the settlement: more than 25 percent of class members filed claims; only 192 opted out; and none objected.  (D.N. 73)  This positive response to the settlement, combined with the factors analyzed below, convince the Court that final approval is appropriate.

---

[2] In *Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525 (9th Cir. 2013), the Ninth Circuit held that an employee may recover under the Fair Labor Standards Act for time spent going through security checks at the end of a shift.  *See id.* at 530-31.  The decision was later reversed by the Supreme Court.  *See Integrity Staffing Solutions v. Busk*, 135 S. Ct. 513 (2014).

## II.    ANALYSIS

### A.    Final Approval of Settlement

Rule 23 requires that settlement of a class action be approved by the Court.  Fed. R. Civ. P. 23(e).  The Court may approve a settlement only after determining that it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making this determination, the Court must ask "whether the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation 4th* 309 (2004).  The Manual for Complex Litigation notes that "approval of settlement class actions"—i.e., cases where class certification and settlement approval are sought at the same time—"requires closer judicial scrutiny than approval of settlements reached only after class certification has been litigated through the adversary process."  *Id.* at 313.  At the final-approval stage, settlement proponents bear the burden of demonstrating that the settlement meets Rule 23's requirements, and the Court must satisfy itself that those requirements are met, regardless of whether there are objections to the settlement.  *Id.* at 322 (noting that "Rule 23 and good practice both require specific findings as to how the settlement meets or fails to meet the statutory requirements").  The Court's evaluation of the settlement is guided by the following "presumptions and rules": "that settlement is favored; that a settlement reached at arms-length is presumed to be fair; [and] that a court must accept or reject the settlement but cannot rewrite it."  *Newberg on Class Actions* § 13:43 (5th ed. 2016) (footnotes omitted).

Settlement is preferred in class actions "because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation."  *Id.* § 13:44.  Here, each side believes strongly in the validity of its claims or defenses but acknowledges significant potential obstacles to success if the case

3

proceeded further.  (D.N. 71, PageID # 1268)  In addition, both sides wish to avoid the expense of protracted litigation.  (*Id.*)  Settlement is an efficient resolution of the case, both for the parties and for the Court.

Moreover, the record reflects that the settlement was reached at arm's length.  Although settlement occurred at a fairly early stage of the litigation, there has been some adversarial motion practice, and the plaintiffs engaged in significant investigation and discovery prior to settlement.  (*See* D.N. 71, PageID # 1269)  In addition, the settlement negotiations were mediated by a third party.  (*Id.*, PageID # 1269-70)  The involvement of a third-party mediator and adversarial litigation with substantial discovery are factors indicating an absence of collusion.  *Newberg, supra*, § 13:14.  The plaintiffs have presented sufficient evidence "that the settlement is the product of arms-length negotiation, untainted by collusion."  *Id.* § 13:45.

The settlement is also substantively adequate.  Factors to be considered in evaluating the terms of a settlement include

> (1) the amount of the settlement in light of the class's potential recovery, discounted by the likelihood of plaintiffs prevailing at trial; (2) the extent to which the parties have engaged in sufficient discovery to evaluate the merits of the case; (3) the complexity and potential costs of trial; (4) the number and content of objections; (5) the recommendations of experienced counsel that settlement is appropriate; (6) and in some instances, the capacity for the defendant to withstand a larger judgment.

*Id.* at 13:15.  Under the terms of the settlement, each member of the pre-*Busk* subclass who timely submits a valid claim form will receive $20 per shift worked from October 1, 2012 through April 30, 2013.[3]  (D.N. 53-1, PageID # 772)  Post-*Busk* subclass members will receive a flat payment of $30 each upon timely submission of a valid claim form.  (*Id.*, PageID # 772-73)  The distinction between subclasses is based on the plaintiffs' conclusion, following discovery,

---

[3] Members of the pre-*Busk* subclass will receive an average award of $809.09.  (D.N. 73, PageID # 1297)

"that there was little or no waiting in any lines after the Ninth Circuit's ruling in *Busk* holding that time spent in security lines was compensable."  (D.N. 53, PageID # 749; *see also* D.N. 71, PageID # 1271 ("Plaintiffs compromised their claims on the post-*Busk* Subclass to a flat $30.00 per employee amount in recognition of the fact that there was certainly no security screening delay for that group."))  Class members had a chance to opt out of the settlement.  (*See* D.N. 53-1, PageID # 779-80)

In exchange for the settlement payments, Class members will release all claims under various California labor laws against SMX, Staff Management, Inc.; Amazon.com, LLC; and Golden State FC, LLC.  (D.N. 48-1, PageID # 659-60)  They will further agree to waive the protection of California Civil Code § 1542, which provides that a general release does not apply to claims not known or suspected by the releaser at the time the release was executed.  (*Id.*, PageID # 660-61)  Such a waiver is valid unless procured by fraud.  *Reynov v. ADP Claims Servs. Grp., Inc.*, No. C 06-2056 CW, 2007 U.S. Dist. LEXIS 31631, at *8 (N.D. Cal. Apr. 30, 2007) (citing *Pac. Greyhound Lines v. Zane*, 160 F.2d 731, 736 (9th Cir. 1947)).

The settlement payments are favorable to the class members in light of the following explanation of how the numbers were reached:

> Plaintiffs alleged that it took employees approximately 20-30 minutes to pass through the anti-theft screening process at the end of the workday.  In addition, Plaintiffs asserted that they were denied a full 30-minute uninterrupted meal period that is required under California law because they were required to pass through the anti-theft screening prior to being able to take their meal period.  The average hourly rate of employees who worked for [SMX] was approximately $10.00 an hour.  Based on Plaintiffs' allegations, the total exposure per employee per shift for unpaid overtime and a meal and rest break violation was approximately $17.50, not including other penalties allowable under the law for failure to provide accurate itemized wage statements, waiting time penalties for former employees, and [Private Attorneys General Act] penalties.

(D.N. 71, PageID # 1270 (citations omitted))  Moreover, as discussed above, the parties have engaged in substantial discovery, and the risks and expense involved in proceeding to trial would have been significant.  Counsel for Plaintiffs and Defendants, all of whom have extensive experience in employment class actions, agree that settlement is appropriate.  (*See id.*, PageID # 1272)  And the settlement's provisions for attorney fees and incentive payments to class representatives are reasonable, as explained below.  For all of these reasons, the Court finds the settlement to be fair, reasonable, and adequate.

### B.    Class Certification

Under Rule 23(a) of the Federal Rules of Civil Procedure, a class action may be maintained if

(1)    the class is so numerous that joinder of all members is impracticable;
(2)    there are questions of law or fact common to the class;
(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  To certify a class, the Court must also find that the action satisfies subsection (b)(1), (2), or (3).  Here, the plaintiffs rely on subsection (b)(3), which provides that a class action is appropriate if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court must conduct a "rigorous analysis" to determine whether Rule 23's requirements are met.[4]  As at the preliminary-approval stage, each requirement is satisfied here.

---

[4] Some circuits, as well as some district courts within the Sixth Circuit, require that the Rule 23 factors be established by a preponderance of the evidence.  *See Newberg*, *supra*, § 7:21 & n.3

### 1.      Numerosity

There are 52,215 class members.  (D.N. 71-2, PageID # 1287 ¶ 6)  Any class of 41 or more is generally considered to be sufficiently numerous.  5-23 *Moore's Federal Practice* § 23.22(1)(b) (2015).

### 2.      Commonality

There is a common question of fact among the Settlement Class members and the subclass members, namely whether the members were subjected to mandatory uncompensated security checks during the relevant time period.  And the class members allege "the same injury" as a result of the defendants' security-check policies: the loss of compensation for the time spent undergoing those checks.  *Dukes*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).

### 3.      Typicality

The typicality requirement is satisfied "if the class representative's claims arise from the same events, practice, or conduct, and are based on the same legal theory, as those of other class members." *Id.* § 23.24(2).  The class representatives in this case complain of the same unlawful conduct as the other class members, and the same legal theories apply to all.

### 4.      Adequacy of Representation

The primary concern as to this element is whether there is any conflict of interest between class representatives and other class members.  *Id.* § 23.25.  Nothing in the record suggests that any of the class representatives in this case has such a conflict, nor is there any

---

(citing cases).  The Sixth Circuit, however, has declined to adopt the preponderance standard. *See Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 418 n.8 (6th Cir. 2012) (noting that the Supreme Court employed only the rigorous-analysis standard in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), and finding "no reason to superimpose a more specific standard than the Supreme Court").

indication that the representatives are unable to vigorously prosecute the lawsuit or lack adequate counsel.  *See id.*

### 5.      Predominance and Superiority

Under Rule 23(b)(3), the Court must find both "[t]hat common questions of law or fact predominate over questions affecting only individual members" and "[t]hat a class action is superior to other available methods for resolving the controversy."  *Id.* § 23.44(1).  The Court is unaware of any individual questions in this case.  Furthermore, given the large number of class members and the fact that each member is entitled to a relatively small amount (i.e., too small to justify bringing an individual action), a class action is the superior method for resolving these claims.  Subsection (b)(3) is therefore satisfied.

### C.      Notice

The Court previously found that the proposed notice of settlement was adequate under Rule 23(e), which merely requires "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  The rule contains more specific requirements for notice of class certification.  It provides that in class actions brought under subsection (b)(3),

> the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:
>
> (i)      the nature of the action;
> (ii)     the definition of the class certified;
> (iii)    the class claims, issues, or defenses;
> (iv)     that a class member may enter an appearance through an attorney if the member so desires;
> (v)      that the court will exclude from the class any member who requests exclusion;
> (vi)     the time and manner for requesting exclusion; and

(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The notice sent to class members in this case stated the nature of the action, defined the class and subclasses, and described the class claims.  (D.N. 53-1, PageID # 795-96, 798)  It also explained the opt-out process, how to object to the settlement, and the binding nature of the settlement, as well as the terms of the release.  (*Id.*, PageID # 799-802)  It further stated that class members could appear at the final fairness hearing through an attorney.  (*Id.*, PageID # 802)  The notice was therefore sufficient under Rule 23(c)(2)(B).

The notification procedure was likewise adequate.  "[N]otice by mail is the preferred means for notifying identified members of a class," and "first class mail is ideal for sending individual notice to class members."  *Newberg*, *supra*, § 8:28.  The settlement administrator, Simpluris, mailed 52,215 notice packets to class members via first class mail; fewer than 2,000 packets were returned as undeliverable.  (D.N. 71-2, PageID # 1287)  This was "the best notice that [was] practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B); *see Newberg*, *supra*, § 8:28, and more than 96 percent of class members presumably received notice as a result.  (*See* D.N. 71-2, PageID # 1287)

### D.    Attorney Fees and Costs

Rule 23 provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  In this case, class counsel seek fees of $785,932.50 and costs of $25,000 pursuant to the parties' settlement agreement.  (D.N. 65; *see* D.N. 53-1, PageID # 774 ¶ 6)  These amounts are reasonable under the circumstances.

### 1.    Fees

In determining whether a fee request is proper, the Court may employ either the percentage-of-the-fund method or the lodestar method.  *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 278-80 (6th Cir. 2016); *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016) (citing *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002)). Here, the plaintiffs suggest that the Court apply a percentage, then use the lodestar method as a cross-check.  (*See* D.N. 65)  Both the Sixth Circuit and the Ninth Circuit have approved this approach.  *See Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 955 (9th Cir. 2015) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)); *Bowling v. Pfizer*, 102 F.3d 777, 780 (6th Cir. 1996).

### a.    Percentage of Fund

The Ninth Circuit recognizes a "benchmark" of 25 percent in common-fund cases, while the Sixth Circuit has permitted fee awards ranging from 10 to 50 percent.  *See Stetson*, 821 F.3d at 1165; *Bowling*, 102 F.3d at 780 (affirming fee award of 10 percent of $102 million common fund); *Clevenger v. Dillards, Inc.*, No. C-1-02-558, 2007 U.S. Dist. LEXIS 174, at *10-11 (S.D. Ohio March 9, 2007) (finding 29 percent fee to be "modest and . . . below what is often awarded by district courts in th[e Sixth] Circuit" and citing various cases in support of that conclusion). The fees requested in this case amount to approximately 21 percent of the gross settlement fund, comfortably within either range.  (*See* D.N. 53-1, PageID # 771 ¶ 4, 774 ¶ 6)

Factors to be considered in determining the reasonableness of a proposed fee award are

(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

10

*Gascho*, 822 F.3d at 280 (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)).  Class counsel in this case obtained monetary relief for class members that likely exceeds their actual damages.  (*See* D.N. 71, PageID # 1270 (concluding that "the total exposure per employee per shift for unpaid overtime and a meal and rest break violation was approximately $17.50," excluding penalties); *id.*, PageID # 1271 (post-*Busk* subclass members were not subjected to any delay))  In addition, the settlement agreement requires the defendants to take measures to prevent future violations of wage and hour laws—benefiting persons both within and outside the settlement class—and to pay $50,000 in penalties to the California Labor & Workforce Development Agency.  (*See* D.N. 53-1, PageID # 773-74 (outlining injunctive relief, including employee training and annual audits))  Class counsel worked on a contingent fee basis, expending nearly 900 hours and advancing more than $20,000 in costs.  Class counsel's hourly rates range from $350 to $1,000, commensurate with market rates and their skill and experience. (*See* D.N. 65-1, PageID # 1065; D.N. 65-2, PageID # 1124-27; D.N. 65-6, PageID # 1192; D.N. 65-7, PageID # 1216)  The highest rate is that of Mark Thierman, who litigated the *Busk* action at the district court, Ninth Circuit, and Supreme Court.  (D.N. 65-2, PageID # 1123-25)  Defense counsel are likewise experienced in this type of litigation.  (*Id.*, PageID # 1123)  In sum, the factors indicate that the requested fee amount is reasonable.

### b.    Lodestar Cross-Check

A lodestar cross-check, while unnecessary, also supports class counsel's fee request. Under the lodestar method of calculation, the Court "multiplies a reasonable number of hours by a reasonable hourly rate."  *Stetson*, 821 F.3d at 1165 (quoting *Fischel*, 307 F.3d at 1006).  A

"multiplier" is frequently applied to the lodestar figure in common-fund cases.[5]  The Supreme

Court has identified twelve factors that may be considered in determining whether to apply a

multiplier:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499-500 (6th Cir. 2011)

(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983)).

Class counsel spent considerable time and effort not only on this case, but also on *Busk*, a

novel case whose facts and legal theories overlap with those at issue here.  (*See* D.N. 65, PageID

# 1055)  They worked on a contingent basis and obtained substantial results for the plaintiffs,

particularly given the unfavorable outcome in *Busk*.[6]  These factors warrant application of a

multiplier.  *Cf. Van Horn*, 436 F. App'x at 500 (finding no abuse of discretion where district

court applied multiplier of 1.2; case was not novel, but counsel worked on contingency and class

action was inherently complex).

---

[5] Although the Supreme Court has stated that multipliers are only appropriate in "rare" and "exceptional" cases, *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010) (citations omitted), those comments have been interpreted as referring only to fees awarded under fee-shifting statutes. *See Newberg*, *supra*, § 15:91 ("[I]n common fund cases, courts that employ a pure lodestar method are not bound by the Supreme Court's rulings that limit multiplied lodestars in the fee-shifting context. Since the client, rather than the adversary, is paying the fee, the primary constraint on a multiplier is inapposite.").

[6] According to the Claims Administrator, the average estimated payment for a pre-*Busk* subclass member is $809.09.  (D.N. 73, PageID # 1297 ¶ 10)  And post-*Busk* subclass members, who suffered no injury, will nevertheless receive $30.00 each.  (*Id.* ¶ 11)

Based on the declarations of class counsel, the total fee amount thus far is $535,026.30.[7] (D.N. 65-2, PageID # 1129)  Dividing the amount they seek ($785,932.50) by this amount results in a multiplier of 1.47.  A multiplier above 1 is reasonable in a contingent-fee case, and "most multipliers are in the relatively modest 1-2 range."  *Newberg*, *supra*, § 15:87.  Thus, the lodestar cross-check result indicates that the fee award sought by class counsel is reasonable.[8]

### 2. Costs

Pursuant to Rule 23, "the court may award . . . nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Nontaxable costs generally include "reasonable expenses normally charged to a fee paying client," such as photocopying, travel, paralegal, computer research, and postage expenses.  *Newberg*, *supra*, § 16:5.

The settlement agreement permits class counsel to seek costs up to $25,000; they request the full amount.  (D.N. 53-1, PageID # 774; D.N. 65)  To date, counsel have advanced $20,319.33 in costs.  (D.N. 65-2, PageID # 1129)  This figure does not include travel to and from the final fairness hearing, staff time spent on class-member inquiries, or other expenses related to overseeing administration of the settlement process.  (D.N. 65, PageID # 1057)  In addition, lead class counsel, Thierman Buck, LLP, advanced more than $64,000 in costs in the *Busk* litigation, which overlaps substantially with this case.  Because it appears that the actual costs will ultimately exceed $25,000, the requested amount is reasonable and will be approved.  *See* Fed. R. Civ. P. 23(h).

---

[7] The total listed in counsel's declaration is undercalculated by $5,000.

[8] Moreover, as the plaintiffs point out, factoring in the hours spent on *Busk* results in a negative multiplier, i.e., a multiplier below 1.  (D.N. 65, PageID # 1057)  *See Newberg*, *supra*, § 15:87.

### E.     Incentive Payments to Class Representatives

Incentive payments to class representatives are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case."   *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997) (citations omitted).   An incentive payment generally "does not raise a red flag" in the settlement-approval inquiry "because the class representative and class member are not similarly situated in regard to . . . the incentive payment: the class representative did extra work and took extra risk to earn" the additional compensation.   *Newberg*, *supra*, § 13:59.   However, requests for incentive awards are "scrutinized carefully" in light of the concern that such payments "may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain."   *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (citing *Newberg on Class Actions* § 11.38 (3d ed. 1992)).

Brewster, Carlin, and Saldana provided substantial assistance to class counsel both before and after this case was filed; in addition, they were involved in the mediation and reviewed the settlement agreement.   (D.N. 65-3, PageID # 1171-72 ¶¶ 3-7 (Brewster declaration); D.N. 65-4, PageID # 1174-75 ¶¶ 3-7 (Carlin declaration); D.N. 65-5, PageID # 1178-79, ¶¶ 4-9 (Saldana declaration))   The payments are meant to reward the class representatives "for their time, effort, risks undertaken for the payment of costs in the event this action had been unsuccessful, the stigma upon future employment opportunities for having initiated this action against a former employer, and a general release of all claims."   (D.N. 65, PageID # 1059)   As all class members were required to release claims against the defendants, the fact that the class representatives also released claims is not relevant for purposes of the incentive payments.   Given their active

participation in the case and the risks entailed in undertaking the litigation as named plaintiffs, however, the relatively modest incentive payments of $2,500 are reasonable.[9] *See, e.g.*, *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009) (noting that no party objected to $10,000 payments to each class representative).

## III.    CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    Plaintiffs' motion for final approval of class action settlement (D.N. 71) is **GRANTED**.  The Gross Settlement Fund is **APPROVED** in the amount of $3,773,002.50.[10]

(2)    The following class and subclasses are **CERTIFIED**:

(a)    The Settlement Class, which is defined as follows and includes all Class Members who did not timely and validly opt out:

> All non-exempt employees employed by SMX in California who worked at an Amazon.com fulfillment center from October 1, 2012 until the date that the preliminary approval of the proposed settlement is ordered ("Class Members").

(b)    The Pre-*Busk* Subclass, which is defined as follows:

> Those Class Members who were employed by SMX in California and who worked at an Amazon.com fulfillment center from October 1, 2012 through April 30, 2013.

(c)    The Post-*Busk* Subclass, which is defined as follows:

> Those Class Members who were employed by SMX in California and who worked at an Amazon.com fulfillment center from May 1, 2013 until the date that the preliminary approval of the proposed settlement is ordered.

---

[9] Class Counsel noted at the final fairness hearing that the incentive payments are comparable to what some class members will receive in settlement of their claims.

[10] For purposes of this Order, the Court adopts the defined terms set forth in the Settlement Agreement.

15

Payment to Class Members shall be made in accordance with the Settlement Agreement.

(3)     This Order applies to all claims or causes of action so identified in the Settlement Agreement and binds all Class Members, including those who did not timely and validly submit a request for exclusion pursuant to this Court's Preliminary Approval Order.  This Order does not bind persons who filed timely and valid requests for exclusion.

(4)     Through the Plaintiff Class Release, Plaintiffs and all Class Members (and Plaintiff Class Releasing Parties) who did not timely and validly request exclusion are (a) deemed to have released and discharged SMX (and Defendant Released Parties) from all claims (Released Claims) arising out of or relating to any act, omission, or other conduct as provided under the Settlement Agreement; and (b) barred and permanently enjoined from asserting, instituting, or prosecuting, either directly or indirectly, such Released Claims.

(5)     All payment checks issued to claimants shall contain a declaration that by endorsing and cashing the payment check, the payee agrees to be bound by the Settlement Agreement in this case, *Saldana, et al. v. Amazon.com, LLC, et al.*, No. 3:14-cv-290-DJH (W.D. Ky.), and by this Order.

(6)     The injunctive relief set forth in paragraph 5 of the Settlement Agreement shall take effect within thirty (30) calendar days of the effective date of the Settlement Agreement.

(7)     The penalties allocated to the California Labor and Workforce Development Agency shall be disbursed within thirty (30) calendar days of the effective date of the Settlement Agreement.

(8)     Plaintiffs' unopposed motion for final approval of attorney fees and costs and class representative service payments (D.N. 65) is **GRANTED**.  Fees in the amount of $785,932.50 and costs in the amount of $25,000 shall be awarded to Class Counsel.  Each Class

Representative shall be awarded a service payment of $2,500.00. Payments to Class Counsel and Class Representatives shall be made in accordance with the Settlement Agreement.

(9)     The Court shall retain jurisdiction over this action and the parties pending final performance of the Settlement Agreement.

October 31, 2016

**David J. Hale, Judge**
**United States District Court**