# UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540

Deborah S. Hunt  POTTER STEWART U.S. COURTHOUSE  Tel. (513) 564-7000

Clerk  CINCINNATI, OHIO 45202-3988  www.ca6.uscourts.gov

Filed:  September 19, 2018

Mr. Joshua David Buck
Mr. Mark Russell Thierman
Thierman Buck
7287 Lakeside Drive
Reno, NV 89511

Mr. Richard G. Rosenblatt
Morgan Lewis & Bockius
502 Carnegie Center
Princeton, NJ 08540

Mr. Rick D. Roskelley
Littler Mendelson, 3960 Howard Hughes Parkway, Suite 300
Las Vegas, NV 89169

Mr. Cory G. Walker
Littler Mendelson, 2425 E. Camelback Road, Suite 900
Phoenix, AZ 85016

Re:  Case No. 17-5784/17-5785, *Jesse Busk, et al v. Integrity Staffing Solutions, et al*
Originating Case No. : 3:14-md-02504 : 3:14-cv-00139

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc:  Ms. Vanessa L. Armstrong

Enclosure

Mandate to issue

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0207p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

| | |
|---|---|
| IN RE: AMAZON.COM, INC., FULFILLMENT CENTER FAIR LABOR STANDARDS ACT (FLSA) AND WAGE AND HOUR LITIGATION.<br><br>─────────────<br><br>JESSE BUSK; LAURIE CASTRO; SIERRA WILLIAMS; MONICA WILLIAMS; VERONICA HERNANDEZ,<br><br>*Plaintiffs-Appellants,*<br><br>*v.*<br><br>INTEGRITY STAFFING SOLUTIONS, INC.; AMAZON.COM, INC.,<br><br>*Defendants-Appellees.* | Nos. 17-5784/5785 |

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
Nos. 3:14-cv-00139; 3:14-md-02504—David J. Hale, District Judge.

Argued: June 14, 2018

Decided and Filed: September 19, 2018

Before: BATCHELDER and CLAY, Circuit Judges; SARGUS, District Judge.[*]

───────────────

## COUNSEL

**ARGUED:** Joshua D. Buck, THIERMAN BUCK LLP, Reno, Nevada, for Appellants. Rick D. Roskelley, LITTLER MENDELSON, Las Vegas, Nevada, for Appellee Integrity Staffing Solutions. Richard G. Rosenblatt, MORGAN, LEWIS & BOCKIUS, LLP, Princeton, New Jersey, for Appellee Amazon.com. **ON BRIEF:** Joshua D. Buck, Mark R. Thierman, THIERMAN BUCK LLP, Reno, Nevada, for Appellants. Rick D. Roskelley, LITTLER MENDELSON, Las Vegas, Nevada, Cory G. Walker, LITTLER MENDELSON, Phoenix,

───────────────

[*]The Honorable Edmund A. Sargus, Jr., Chief United States District Judge for the Southern District of Ohio, sitting by designation.

Nos. 17-5784/5785        *Busk, et al. v. Integrity Staffing Solutions, et al.*        Page 2

Arizona, for Appellee Integrity Staffing Solutions.  Richard G. Rosenblatt, MORGAN, LEWIS & BOCKIUS, LLP, Princeton, New Jersey, for Appellee Amazon.com.

    CLAY, J., delivered the opinion of the court in which SARGUS, D.J., joined, and BATCHELDER, J., joined in part.  BATCHELDER, J. (pp. 27–28), delivered a separate opinion concurring in part and dissenting in part.

_____

## OPINION

_____

    CLAY, Circuit Judge.  Plaintiffs in this purported class action seek compensation under Nevada and Arizona law for time spent undergoing or waiting to undergo mandatory onsite security screenings at the Amazon facilities where they worked.  The district court granted summary judgment for Defendants on the grounds that time related to security checks is not compensable as "hours worked" under Nevada and Arizona labor law.  Because we conclude that time spent undergoing mandatory security checks is compensable under Nevada law, we **REVERSE** the district court's judgment with regard to the Nevada claims and **REMAND** for further proceedings.  Because we conclude that the Arizona Plaintiffs have failed to satisfy Arizona's "workweek requirement," we **AFFIRM** the district court's dismissal of Plaintiffs' Arizona claims.

## BACKGROUND

### Factual Background

    Defendant Integrity Staffing Solutions, Inc. ("Integrity"), provides warehouse labor services to businesses throughout the United States where hourly workers fill orders, track merchandise, and process returns.  Integrity employs thousands of hourly warehouse employees like Plaintiffs at each of Defendant Amazon.com's ("Amazon") facilities.  Some Plaintiffs in this case were hourly employees of Integrity at warehouses in Nevada and Arizona.  Other Plaintiffs were directly employed by Amazon.  According to Plaintiffs, "Amazon.com exercises direct control over the hours and other working conditions of all Plaintiffs and all similarly-situated hourly shift employees who are paid on the payroll of Integrity working at all Amazon.Com's [sic] warehouse locations nationwide."  (R. 134, Third Amended Compl., PageID # 2351.)

This case concerns a security clearance policy that is enforced by both Integrity and Amazon at all Amazon locations throughout the United States.  Under the policy, Plaintiffs and all other hourly paid, non-exempt employees were required to "undergo a daily security clearance check at the end of each shift to discover and/or deter employee theft of the employer's property and to reduce inventory 'shrinkage.'"  (*Id.*)  The policy worked like this: "At the end of their respective shifts, hundreds, if not thousands, of warehouse employees would walk to the timekeeping system to clock out and were then required to wait in line in order to be searched for possible warehouse items taken without permission and/or other contraband."  (*Id.* at PageID # 2352.)  Plaintiffs allege that "Defendants' policy of requiring hourly warehouse employees to undergo a thorough security clearance before being released from work and permitted to leave the employer's property was solely for the benefit of the employers and their customers."  (*Id.* at PageID # 2351.)   Plaintiffs further allege that this screening process took approximately 25 minutes each day.  Plaintiffs were also required to undergo the same security clearance prior to taking their lunch breaks, thereby reducing the full thirty-minute break they were supposed to receive.   Because employees were required to "clock out" before undergoing the security screening, they were not compensated for their time spent waiting in line for and then undergoing the screenings.  (*Id.* at PageID # 2351, 2352.)

## Procedural History

In 2010, Plaintiffs filed a putative class action in the District Court of Nevada against Integrity on behalf of similarly situated employees in the Nevada warehouses for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and Nevada labor laws.  The employees alleged that they were entitled to compensation under the FLSA for the time spent waiting to undergo and actually undergoing the security screenings.  They also alleged that the screenings were conducted "to prevent employee theft" and thus occurred "solely for the benefit of the employers and/or their customers."  (R. 30-3, First Amended Compl., PageID # 223.)

The district court dismissed Plaintiffs' first amended complaint for failure to state a claim, holding that the time spent waiting for and undergoing the security screenings was not compensable under the FLSA.  *Busk v. Integrity Staffing Sols., Inc.*, No. 2:10-cv-01854, 2011

WL 2971265 (D. Nev. July 19, 2011). It explained that, because the screenings occurred after the regular work shift, the employees could state a claim for compensation only if the screenings were an integral and indispensable part of the principal activities they were employed to perform. The district court held that these screenings were not integral and indispensable, but instead fell into a noncompensable category of postliminary activities. As for Plaintiffs' Nevada state law claims for unpaid wages arising from the security checks and shortened meal periods, the Nevada district court found that Plaintiffs had properly asserted a private cause of action under Nev. Rev. Stat. § 608.140 but failed to allege sufficient facts to support their clam. *Id.* at *7.

Plaintiffs appealed to the Ninth Circuit, which affirmed the dismissal of the meal-period claims but reversed as to the security-check claims. *Busk v. Integrity Staffing Sols., Inc.*, 713 F.3d 525 (9th Cir. 2013). The Ninth Circuit asserted that post-shift activities that would ordinarily be classified as noncompensable postliminary activities are nevertheless compensable as integral and indispensable to an employee's principal activities if those post-shift activities are necessary to the principal work performed and done for the benefit of the employer. *Id.* at 530. Accepting as true the allegation that Integrity required the security screenings to prevent employee theft, the court concluded that the screenings were "necessary" to the employees' primary work as warehouse employees and done for Integrity's benefit. *Id.* at 531.

The case was then appealed to the Supreme Court, which held that the time related to the security checks was not compensable under the FLSA. *Integrity Staffing Solutions, Inc. v. Busk*, 135 S.Ct. 513 (2014) ("*Integrity Staffing*"). Specifically, the Court found that the security screenings were "noncompensable postliminary activities" under the Portal-to-Portal Act, 29 U.S.C. § 254(a)(2). *Id.* at 518. The Portal-to-Portal Act was enacted as an amendment to the FLSA, and it "narrowed the coverage of the [Act]" by excluding certain "preliminary" and "postliminary" activities from the FLSA's compensation requirements. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 27 (2005). *Integrity Staffing* clarified that post-shift security screenings are among those noncompensable, "postliminary" activities under federal law. 135 S. Ct. at 518.

Following the Supreme Court's reversal, the Ninth Circuit remanded the remainder of Plaintiff's state law claims to the district court. *Busk v. Integrity Staffing Sols., Inc.*, 797 F.3d

756 (9th Cir. 2015).  Plaintiffs again amended their complaint, and the case was then transferred to an ongoing multidistrict litigation in the Western District of Kentucky.

Consistent with the Supreme Court's decision, Plaintiffs' third amended complaint eliminates the claims for compensation under federal law and asserts claims under Nevada and Arizona law for unpaid wages and overtime, as well as minimum wage violations.  Plaintiffs asserted their claims as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of the following persons:

> **Nevada Class**:  All person [sic] employed by Defendants, and/or each of them, as hourly paid warehouse employees who worked for Defendant(s) within the State of Nevada at anytime [sic] within three years prior to the original filing date of the complaint in this action.
>
> **Arizona Class**:  All person [sic] employed by Defendants, and/or each of them, as hourly paid warehouse employees who worked for Defendant(s) within the State of Arizona at any time from within three years prior to the filing of the original complaint until the date of judgment after trial, and shall encompass all claims by such persons for the entire tenure of their employment as provided in A.R.S. 23-364 (G).

(R. 134, Third Amended Compl., PageID # 2353.)

The Nevada plaintiffs allege claims on behalf of themselves and the Nevada Class for failing to pay for all the hours worked (NRS § 608.016), daily and weekly overtime (NRS § 608.018), and a minimum wage claim under the Nevada Constitution (Nev. Const. art. 15, § 16).  The Nevada plaintiffs seek continuation wages in the amount of 30-days of additional wages for failing to pay employees all their wages due and owing at the time of separation from employment (NRS § 608.020–.050).   The Arizona plaintiffs allege claims on behalf of themselves and the Arizona Class for failing to pay regular and minimum wages (A.R.S. § 23-363).  These Plaintiffs also seek continuation wages under A.R.S. § 23-353 *et seq.*

Defendants filed a motion to dismiss the claims, which the district court granted.  The district court dismissed the Nevada claims on three grounds: first, there was no private right of action to assert claims under Nevada's wage-hour statutes, NRS Chapter 608; second, Nevada law incorporated the FLSA in relevant part and Plaintiffs' Nevada state claims were barred by Nevada's incorporation of the Portal-to-Portal Act and the Supreme Court's decision in *Busk*;

and third, Plaintiffs' claims for minimum wages failed because they failed to identify any workweek in which they were paid less than the minimum wage.  The district court concluded the same with respect to the Arizona claims, holding that Arizona impliedly adopted the Portal-to-Portal Act and thus Plaintiffs "have not demonstrated that they are entitled to compensation under Arizona law for time spent undergoing, or waiting to undergo, security screenings."  (R. 236, Order, PageID # 4702.)  The court also concluded that Arizona minimum wage claims failed because Plaintiffs had failed to identify a particular workweek in which they were paid less than the minimum wage.

Plaintiffs filed a timely notice of appeal.

## DISCUSSION

### I.     Standard of Review

We review the district court's grant of a motion to dismiss under Rule 12(b)(6) *de novo*. *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 599 (6th Cir. 2016).  When reviewing such a grant, "we must 'accept all factual allegations as true,' construing the complaint, 'in the light most favorable to the plaintiff[s].'"  *Id.* (quoting *Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 403 (6th Cir. 2014)) (alteration in *Puckett*).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### II.    Analysis

#### A.  Nevada employees have a private right of action to pursue unpaid wage and penalty claims

The court's main basis for dismissing Plaintiffs' Nevada law claims was its legal conclusion that there is no private right of action for the recovery of unpaid wages under Nevada law.  The court held that "no private right of action exists for violations of Nevada Revised Statutes §§ 608.005–.195 in the absence of a contractual claim."  (R. 236, Order, PageID # 4694.)

Since briefing was completed in this case, the Nevada Supreme Court issued a decision in *Neville v. Eighth Jud. Dist. Ct.*, 406 P.3d 499 (Nev. 2017), which holds exactly the opposite.  In *Neville*, the court began its opinion thus: "In this opinion, we clarify that NRS 608.140 explicitly recognizes a private cause of action for unpaid wages."  *Id.* at 500.  And the court explained as follows:

> Because NRS 608.016, NRS 608.018, and NRS 608.020 through NRS 608.050 do not expressly state whether an employee could privately enforce their terms, Neville may only pursue his claims under the statutes if a private cause of action for unpaid wages is implied.  The determinative factor is always whether the Legislature intended to create a private judicial remedy.  We conclude that the Legislature intended to create a private cause of action for unpaid wages pursuant to NRS 608.140.  It would be absurd to think that the Legislature intended a private cause of action to obtain attorney fees for an unpaid wages suit but no private cause of action to bring the suit itself.  *See Bisch v. Las Vegas Metro. Police Dep't*, 129 Nev. 328, 336, 302 P.3d 1108, 1114 (2013) ("In order to give effect to the Legislature's intent, [this court] ha[s] a duty to consider the statute[s] within the broader statutory scheme harmoniously with one another in accordance with the general purpose of those statutes." (internal quotation marks omitted)).  The Legislature enacted NRS 608.140 to protect employees, and the legislative scheme is consistent with private causes of action for unpaid wages under NRS Chapter 608.

*Id.* at 504.

The court's intervening decision thus decides the issue in this case: Plaintiffs *do* have a private cause of action for unpaid wages.  The district court's decision to the contrary is reversed.[1]

---

[1]In its brief on appeal, Defendants anticipated a decision in *Neville* and argued that even if the Nevada Supreme Court went against them, nothing in that decision would support a private right of action for meal break claims under NRS § 608.019.  However, the *Neville* decision provides no basis for distinguishing claims brought under § 608.019 from other claims brought under Chapter 608 for unpaid wages.  Like claims under §§ 608.016, 608.018, and 608.020–.050, § 608.019 is also a claim for unpaid wages: if Plaintiffs were not provided a full half-hour break, there was no interruption of a "continuous period of work" under the statute, and they must be compensated for that time.  Thus, we conclude that, under *Neville*, Plaintiffs have a private cause of action to enforce their rights under § 609.019; hence, Defendants' argument fails.

Nos. 17-5784/5785        *Busk, et al. v. Integrity Staffing Solutions, et al.*        Page 8

### B. Time spent undergoing security screenings is compensable under Nevada and Arizona law

In *Integrity Staffing*, the Supreme Court held that the post-shift security screenings at issue in this case were noncompensable postliminary activities under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, as amended by the Portal-to-Portal Act, 29 U.S.C. § 251 *et seq.* 135 S. Ct. at 518–19. The main question on appeal in this case is whether *Integrity Staffing* resolves similar claims brought under Nevada and Arizona law.

"As a federal court applying state law, 'we anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court.'" *Vance v. Amazon.com*, 852 F.3d 601, 610 (6th Cir. 2017) (quoting *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005)). Neither the Nevada Supreme Court nor the Arizona Supreme Court have decided whether their states have adopted the federal Portal-to-Portal Act or whether time spent undergoing mandatory security screening is compensable under the respective states' wage laws. Thus, since "'the state supreme court has not yet addressed the issue,' we render a prediction 'by looking to all the available data.'" *Id.* (quoting *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). Sources of relevant data include the decisions (or dicta) of the state's highest court in analogous cases, pronouncements from other state courts, and regulatory guidance.

Before turning to an analysis of Nevada and Arizona law, we will first explain how the issue is decided under federal law. We will then address whether time spent undergoing security screenings is compensable under Nevada and Arizona law.

### 1. Time spent undergoing security screenings is noncompensable postliminary activity under federal law

In *Vance*, this Court recently had occasion to explain the background of the Portal-to-Portal Act and the Supreme Court's decision in *Integrity Staffing* as it was relevant to a case arising out of the same multidistrict litigation as the instant case. The Court explained as follows:

"Enacted in 1938, the FLSA established a minimum wage and overtime compensation for each hour worked in excess of 40 hours in each workweek."

*Integrity Staffing*, 135 S.Ct. at 516. "The Act did not, however, define the key terms 'work' and 'workweek.'" *Sandifer v. U.S. Steel Corp.*, —— U.S. ——, 134 S.Ct. 870, 875, 187 L.Ed.2d 729 (2014). Absent congressional guidance, the Supreme Court interpreted these terms broadly. *Integrity Staffing*, 135 S.Ct. at 516. "It defined 'work' as 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" *Id.* (quoting *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944)). Only months after *Tennessee Coal*, the Court expanded the definition further, "clarif[ying] that 'exertion' was not in fact necessary for an activity to constitute 'work' under the FLSA," for "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen." *IBP*, 546 U.S. at 25, 126 S.Ct. 514 (quoting *Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944)). "Readiness to serve may be hired, quite as much as service itself," and must therefore also be compensated. *Armour*, 323 U.S. at 133, 65 S.Ct. 165.

The Court took a similar approach with "the statutory workweek," which "include[d] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690–91, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). "That period, *Anderson* explained, encompassed time spent 'pursuing certain preliminary activities after arriving, such as putting on aprons and overalls and removing shirts.'" *Sandifer*, 134 S.Ct. at 875 (quoting *Anderson*, 328 U.S. at 692–93, 66 S.Ct. 1187) (ellipsis and brackets omitted). Per *Anderson*, these preparatory efforts "'are clearly work' under the Act." *Id.* (quoting *Anderson*, 328 U.S. at 693, 66 S.Ct. 1187).

Together, these holdings led to decisions requiring compensation for nearly every minute an employer required its employees to be on the employer's premises, including "the time spent traveling between mine portals and underground work areas," and "walking from timeclocks to work benches." *Integrity Staffing*, 135 S.Ct. at 516 (citing *Tenn. Coal*, 321 U.S. at 598, 64 S.Ct. 698, and *Anderson*, 328 U.S. at 691–92, 66 S.Ct. 1187). They also "provoked a flood of litigation," including 1,500 FLSA actions filed within six months of the Court's ruling in *Anderson*. *Id.*

"Congress responded swiftly." *Id.* Finding the Court's decisions had "creat[ed] wholly unexpected liabilities" with the capacity to "bring about financial ruin of many employers," it enacted the Portal-to-Portal Act of 1947. *Id.* at 516–17 (quoting 29 U.S.C. § 251(a)–(b)). The Act excepted two activities the Court previously deemed compensable: "walking on the employer's premises to and from the actual place of performance of the principal activity of the employee, and activities that are 'preliminary or postliminary' to that principal activity." *IBP*, 546 U.S. at 27, 126 S.Ct. 514; *see also Integrity Staffing*, 135 S.Ct. at 516–17 (detailing history). Under the Portal-to-Portal Act then, an employee's

principal activities are compensable, while conduct he engages in before and after those activities (i.e., preliminary and postliminary acts) is not.

"[P]rincipal activity" refers to the activity "an employee is employed to perform." *Integrity Staffing*, 135 S.Ct. at 517, 519. "[T]he term principal activity . . . embraces all activities which are an integral and indispensable part of the principal activities." *IBP*, 546 U.S. at 29–30, 126 S.Ct. 514 (internal quotation marks and citation omitted). An activity is "integral and indispensable" to the principal activities an individual is employed to perform "if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing*, 135 S.Ct. at 517. In other words, an activity is integral and indispensable to the work an employee was hired to do if it is a component of that work, and he cannot complete the work without it. *Id.*

Applying these terms, the *Integrity Staffing* Court held that post-shift security screenings were neither the principal activity Amazon hired its employees to perform, nor "integral and indispensable" to that activity:

> To begin with, the screenings were not the "principal activity or activities which [the] employee is employed to perform." Integrity Staffing did not employ its workers to undergo security screenings, but to retrieve products from warehouse shelves and package those products for shipment to Amazon customers.
>
> The security screenings also were not "integral and indispensable" to the employees' duties as warehouse workers. . . . The screenings were not an intrinsic element of retrieving products from warehouse shelves or packaging them for shipment. And Integrity Staffing could have eliminated the screenings altogether without impairing the employees' ability to complete their work.

*Id.* at 518 (citation omitted). The screenings were therefore "postliminary" to the employees' principal activities and excluded from compensation pursuant to the Portal-to-Portal Act.

852 F.3d at 608–09.

Thus, Plaintiffs' claims for compensation would fail and have failed under federal law. The question on appeal is whether they also fail under Nevada and Arizona state law.

### 2.  Interpreting Statutes under Nevada and Arizona State Law

#### a.  Nevada

In Nevada, the first rule in construing statutes "is to give effect to the legislature's intent." *Salas v. Allstate Rent-A-Car, Inc.*, 14 P.3d 511, 513 (Nev. 2000) (citing *Cleghorn v. Hess*, 853 P.2d 1260, 1262 (Nev. 1993)).  "In so doing, we first look to the plain language of the statute.  Where the statutory language is ambiguous or otherwise does not speak to the issue before us, we will construe it according to that which 'reason and public policy would indicate the legislature intended.'"  *Id.* at 513–14 (quoting *State, Dep't of Mtr. Vehicles v. Lovett*, 874 P.2d 1247, 1249–50 (Nev. 1994)).  "In such situations, legislative intent may be ascertained by reference to the entire statutory scheme."  *Id.* at 514 (citation omitted).

"When a federal statute is adopted in a statute of this state, a presumption arises that the legislature knew and intended to adopt the construction placed on the federal statute by federal courts.  This rule of [statutory] construction is applicable, however, only if the state and federal acts are substantially similar and the state statute does not reflect a contrary legislative intent." *Century Steel, Inc. v. State, Div. of Indus. Rel., Occupational Safety and Health Section*, 137 P.3d 1155, 1158–59 (Nev. 2006) (adopting a federal construction where the "state and federal statutes [were] nearly identical" and "the state statute [did] not reflect a legislative intent contrary to the federal statute").

Thus, when interpreting state provisions that have analogous federal counterparts, Nevada courts look to federal law unless the state statutory language is "materially different" from or inconsistent with federal law.  *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 900–01 (9th Cir. 2013); *see Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951, 955–56 (Nev. 2014) (endorsing the rule in *Rivera*).  Nonetheless, the Nevada Supreme Court "has signaled its willingness to part ways with the FLSA where the language of Nevada's statutes has so required." *Terry*, 336 P.3d at 955–56.

### b. Arizona

Similarly, when interpreting Arizona law, "one of the fundamental goals of statutory construction is to effectuate legislative intent." *Canon Sch. Dist. No. 50 v. W.E.S. Const. Co.*, 869 P.2d 500, 503 (Ariz. 1994) (citing *Automatic Registering Mach. Co. v. Pima County,* 285 P. 1034, 1035 (Ariz. 1930)). "Yet, '[e]qually fundamental is the presumption that what the Legislature means, it will say.'" *Id.* (quoting *Padilla v. Industrial Comm'n,* 546 P.2d 1135, 1137 (Ariz. 1976)). "For this reason, [Arizona courts] have often stated that the 'best and most reliable index of a statute's meaning is its language,' and where the language is plain and unambiguous, courts generally must follow the text as written." *Id.* (quoting *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991)).

Arizona courts may look to federal interpretations for guidance where an Arizona statute is "patterned after" a federal statute and where "Arizona courts have not addressed the issue presented." *See Rosier v. First Fin. Capital Corp.*, 889 P.2d 11, 13–14 (Ariz. Ct. App. 1994).

### 3. Time spent undergoing security screenings is "work" under Nevada and Arizona law

Plaintiffs brought claims under Nev. Rev. Stat. §§ 608.016, 608.018, 608.140, 608.020–.050, and the Nevada Constitution. They also brought claims under Ariz. Rev. Stat. § 23-363 *et seq.*, the statutory codification of the Raise the Arizona Minimum Wage for Arizonans Act, and Ariz. Rev. Stat. § 23-353 *et seq.* Each of these claims turns on whether Plaintiffs were uncompensated for some "work" they performed. *See, e.g.*, NRS § 608.016 ("An employer shall pay to the employee wages for each hour the employee works.").

Plaintiffs contend that "[t]here has never been any dispute that the time spent undergoing the anti-theft security screening is 'work' under either federal or the various state wage-hour laws." (Brief for Appellants at 12.) Defendants, however, argue that "there absolutely *has* been such a dispute throughout the entirety of the case, because time spent passing through security screening *is not work* under either federal, Nevada, or Arizona law." (Brief for Appellees at 6 (emphasis in original).)

Thus, and perhaps unsurprisingly, the first step for this Court in determining whether time spent undergoing mandatory security screenings is compensable is to determine whether such time constitutes "work" under Nevada and Arizona state law.

### a. Nevada

Under the Nevada Administrative Code, "hours worked" includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." Nev. Admin. Code § 608.115(1). However, the Nevada legislature has not defined what constitutes "work." Thus, in this instance, it is appropriate to look to the federal law for guidance. *See Rivera*, 735 F.3d 900-01; *Terry*, 336 P.3d 955–56. Under the FLSA, work is defined broadly as any activity "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944); *see Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944).

Putting aside the Portal-to-Portal Act for a moment, time spent waiting in line and then undergoing mandatory security screenings clearly seems to fit the federal definition of "work." The screenings surely are "required by the employer," and Plaintiffs have alleged that the screenings are "solely for the benefit of the employers and their customers." (R. 134, Third Amend. Compl., PageID # 2351.)

Nonetheless, Defendants put forth two arguments for why time spent undergoing mandatory security screenings is not "work" under Nevada law: (1) the Portal-to-Portal Act amended the FLSA to exclude postliminary activities from the federal definition of "work;" and (2) for an activity to be considered work, it must involve "exertion" and Plaintiffs have not alleged any exertion. We find neither argument persuasive.

First, Defendants misread what the Portal-to-Portal Act accomplished. Defendants argue that it amended the Supreme Court's definition of "work." (*See, e.g.*, Brief for Appellees at 12.) ("Congress had swiftly disagreed with that Supreme Court holding and clarified that the term 'work' in the FLSA excluded, among others, preliminary and postliminary activities.") But that is not so.

The Portal-to-Portal Act provides, in relevant part, as follows:

[N]o employer shall be subject to any liability . . . under the Fair Labor Standards Act . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a); 29 C.F.R. § 785.50.

As we read this language, the Portal-to-Portal Act excludes certain work activities from being compensable; it does not, however, redefine the Supreme Court's earlier definitions of "work."[2]  This view finds some support in the Supreme Court's decision in *IBP, Inc.*, where it explained:

Other than its express exceptions for travel to and from the location of the employee's "principal activity," and for activities that are preliminary or postliminary to that principal activity, the Portal-to-Portal Act does not purport to change this Court's earlier descriptions of the terms "work" and "workweek," or to define the term "workday."  A regulation promulgated by the Secretary of Labor shortly after its enactment concluded that the statute had no effect on the computation of hours that are worked "within" the workday.

*IBP, Inc. v. Alvarez*, 546 U.S. 21, 28 (2005).  This view also seems to comport with 29 C.F.R. § 785.7, which provides:

The United States Supreme Court originally stated that employees subject to the act must be paid for all time spent in "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued

---

[2]Defendants, at least on some level, seem to recognize the intuitive appeal of this reading.  Indeed, before this Court they argue that "[t]he Portal-to-Portal Act and its exclusion of what otherwise might be considered 'work' under federal and state law is not even implicated in this case unless and until a determination is made that the underlying activity at issue rises to the level of 'work.'"  (Brief for Appellees at 33.)

necessarily and primarily for the benefit of the employer and his business." (*Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123*, 321 U. S. 590 (1944)) Subsequently, the Court ruled that there need be no exertion at all and that all hours are hours worked which the employee is required to give his employer, that "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer." (*Armour & Co. v. Wantock*, 323 U.S. 126 (1944); *Skidmore v. Swift*, 323 U.S. 134 (1944)) The workweek ordinarily includes "all the time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place". (*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)) *The Portal-to-Portal Act did not change the rule except to provide an exception for preliminary and postliminary activities.* See § 785.34.

29 C.F.R. § 785.7 (emphasis added).

Nothing in the Supreme Court's decision in *Integrity Staffing* changed this definition of "work" or the recognition in *IBP, Inc.* and § 785.7 that the Portal-to-Portal Act did not change the Court's longstanding definition of "work." Instead, *Integrity Staffing* was solely concerned with whether undergoing security screenings fell within the Portal-to-Portal Act's exception for "postliminary" activity; it did not opine on whether such activity constituted work. In short, the Portal-to-Portal Act excludes some "work" from its bucket of what is compensable activity, but that does not mean it is not "work."

Second, Defendants argue that time spent waiting to undergo security screenings is not "work" because "it involves no exertion." (Brief for Appellees at 7.) This argument is highly dubious for a number of reasons, not the least of which is that undergoing security screening clearly does involve exertion. Further, it is not at all clear that Nevada and Arizona's definitions of "work" require "exertion" even if they incorporate the federal definition because even the federal definition no longer requires "exertion." *See* 29 C.F.R. § 785.7.

Defendants cite to the Supreme Court's decision in *Tennessee Coal*, which, in addition to providing the current definition of "work," held that in order for an activity to be "work" it must involve "physical or mental exertion (whether burdensome or not)." 321 U.S. at 598. However,

as this Court recognized in *Vance*, "[o]nly months after *Tennessee Coal*, the Court expanded the definition further, 'clarif[ying] that "exertion" was not in fact necessary for an activity to constitute "work" under the FLSA,' for 'an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen.'" *Vance*, 852 F.3d at 608 (quoting *IBP, Inc.*, 546 U.S. at 25.)  It may "strain the bounds of reason to argue that the Supreme Court in *Armour* somehow overruled *Tennessee Coal* (decided only 9 months earlier) without saying it was doing so," (Brief for Appellees at 34), but on this particular point, that is precisely what the Supreme Court has recognized.  *See IBP, Inc.*, 546 U.S. at 25 (explaining that "[t]he same year [as *Tennesse Coal*], in *Armour & Co. v. Wantock* . . . we clarified that 'exertion' was not in fact necessary for an activity to constitute 'work' under the FLSA.").  Thus, "Appellants completely ignore[d] this 'physical or mental exertion' requirement," (Brief for Appellees at 33), because there is no such requirement.

In sum, Nevada law incorporates the federal definition of "work," and this broad definition encompasses the type of activity at issue in this case.**[3]**

---

**[3]**Before proceeding to a discussion of Arizona law and whether the Portal-to-Portal Act applies to these state claims, we can decide whether Plaintiffs state a claim under Nevada law based on their allegations that the mandatory security screenings robbed them of their full lunch time.  Plaintiffs alleged that the security screenings that they were required to undergo before taking their lunch breaks resulted in them being "significantly delayed and [] unable to take a full 30-minute uninterrupted lunch period."  (R. 134, Third Amend. Compl., PageID # 2352.)  Under Nevada law, "[a]n employer shall not employ an employee for a continuous period of 8 hours without permitting the employee to have a meal period of at least one-half hour."  Nev. Rev. Stat § 608.019.  The law further provides that "no period of less than 30 minutes interrupts a continuous period for work for the purposes of this subsection."  *Id.*  Thus, because time spent undergoing the security screenings is "work," the Nevada plaintiffs were required to work during their lunch break; thus, they were not given an uninterrupted half-hour, and they should have been paid for their lunch.

The district court dismissed all of Plaintiffs' Nevada wage claims on the grounds that they were noncompensable under the Portal-to-Portal Act.  However, even if the Portal-to-Portal Act does apply to Nevada wage claims generally, it does not apply to Plaintiffs' claims relating to their pre-meal security screenings.  This is because "[a]s the statute's use of the words 'preliminary' and 'postliminary' suggests, § 254(a)(2), and as our precedents make clear, the Portal-to-Portal Act of 1947 is primarily concerned with defining the beginning and end of the workday."  *Integrity Staffing*, 135 S. Ct. at 520 (Sotomayor, J., concurring) (citing *IBP, Inc.*, 546 U.S. at 34-37).  On this reasoning, the Portal-to-Portal Act does not apply to claims that employees were uncompensated for time spent *during* the workday.  Therefore, if undergoing security screenings is "work" under Nevada law, then the district court erred in dismissing the Nevada plaintiffs' claims relating to their shortened meal-periods.

### b.  Arizona

Like Nevada, Arizona also fails to define "work."  Therefore, it is again appropriate to turn to the federal law for a definition of "work."  *See Rosier*, 889 F.2d at 13–14.  And, as the analysis above shows, time spent undergoing mandatory security screenings is "work" under federal law and, thus, under Arizona law.  But the case under Arizona law may be even stronger.

Arizona law also provides a definition for "hours worked," which states as follows: "'Hours worked' means all hours for which an employee covered under the Act is employed and required to give to the employer, including all time during which an employee is on duty or at a prescribed work place and all time the employee is suffered or permitted to work."  Ariz. Admin. Code R20-5-1202(19).  "On duty," in turn, means "time spent working or waiting that the employer controls and that the employee is not permitted to use for the employee's own purpose."  Ariz. Admin. Code R20-5-1202(22).

Arizona's broad definition of "hours worked" makes it even clearer than Nevada law that time spent undergoing mandatory security screenings is "work."

### 4.  Neither Nevada nor Arizona incorporate the federal Portal-to-Portal Act

### a.  Nevada

Upon concluding that time spent undergoing mandatory security screenings is "work" under Nevada law, the next question is whether the Nevada legislature has exempted this "work" from being deemed "compensable" under their state wage-hour statutes, as Congress did in enacting the Portal-to-Portal Act.

The district court dismissed both Plaintiffs' Nevada statutory claims and Nevada constitutional claims on the grounds that Nevada had adopted the Portal-to-Portal Act.  It concluded that Nevada had adopted the Portal-to-Portal Act because Plaintiffs were unable to "identify any Nevada law that is irreconcilable with the Portal-to-Portal Act."  (R. 236, Order PageID # 4695.)  The district court reasoned that because Nevada and Arizona wage-hour statutes do not define "work," it must turn to the federal law for a determination of what is "compensable work" and this included the Portal-to-Portal Act.  But there is the error of the

district court's analysis: it conflated two independent questions, which we have tried to separate: (1) whether time spent undergoing mandatory security screenings is work, and (2) whether such time is compensable.

Plaintiffs argue that it was appropriate for the district court to look to the federal law's definition of "work," for the reasons we have given above. (Brief for Appellants at 20.) But Plaintiffs also argue that it was inappropriate for the district court to look to the Portal-to-Portal Act to decide the compensability of certain activities. We agree. Absent any affirmative indication that the Nevada legislature intended to adopt the Portal-to-Portal Act, there is no reason to assume that it did.

As mentioned above, the Portal-to-Portal Act provides as follows:

> [N]o employer shall be subject to any liability . . . under the Fair Labor Standards Act . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—
>
> (3)  walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (4)  activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

Plaintiffs argue that Nevada has not adopted "the Portal-to-Portal Act or any comparable legislation." (Brief for Appellants at 13.) Their primary piece of evidence is the absence of evidence that the Nevada legislature did so. They argue that "[t]he problem for Amazon and the District Court is that there are no 'portal-to-portal like' statutes, regulations, or constitutional amendments under Nevada and/or Arizona wage-hour law" and "[t]his fact alone should be the end of the inquiry." (*Id.* at 22–23.)

But Plaintiffs also identify several Nevada laws that they claim are "in direct conflict with the Portal-to-Portal Act." (*Id.* at 23.)  For instance, NRS § 608.016 provides that "an employer shall pay to the employee wages for each hour the employee works" and "[a]n employer shall not require an employee to work without wages during a trial or break-in period." Pursuant to this section, Nevada's administrative regulations further provide that "[a]n employer shall pay an employee for all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." Nev. Admin. Code § 608.115.

Further, the Nevada legislature expressly included references to federal regulations in multiple parts of NRS Chapter 608.  *See, e.g.*, NRS § 608.060(3) (referring to 29 C.F.R. §§ 541.1, 541.2, 41.3, § 541.5, 152); NRS § 608.018(3)(f) (referring to the Motor Carrier Act of 1935); NRS § 608.0116 (29 C.F.R § 541.302; *see also* NAC § 608.100(3)(c) (stating that the Nevada minimum wage provisions do not apply to "[a] person employed as a trainee for a period not longer than 90 days, as described the United States Department of Labor pursuant to section 6(g) of the Fair Labor Standards Act").  That the Nevada legislature expressly adopted some federal regulations indicates that its failure to adopt others was intentional.  *See State Dep't of Taxation v. DaimlerChrysler*, 119 P.3d 135, 139 (Nev. 2005) ("[O]missions of subject matters from statutory provisions are presumed to have been intentional.").

There are two Nevada statutes or regulations that bear some resemblance to provisions in the Portal-to-Portal Act.  Upon closer examination, however, they are entirely distinct.  The first is NRS § 608.200, which limits the 8-hour work requirement to "time actually employed in the mine and does not include time consumed for meals or travel into or out of the actual worksite." Nev. Rev. Stat. § 608.200.  But, significantly, this provision applies only to mineworkers, and it includes no mention of "preliminary" and "postliminary" activities.  The second is NAC § 608.130, which generally provides payment for travel and training but excludes time the employee spends traveling between work and home.  Nev. Admin. Code § 608.130(2)(b).  This regulation also omits any reference to "preliminary" and "postliminary" activities.  Thus, neither of these provisions can be read to imply that the Nevada legislature intended to adopt the Portal-to-Portal Act.  Indeed, if it had adopted the Act, there would be no need to pass NRS § 608.200

or for the Commissioner to issue the regulation § 608.130(2)(b) to exclude time spent traveling to or from a place of work.

Defendants make multiple references to places where Nevada wage-hour law parallels the FLSA, and they refer the Court to cases holding that Nevada courts will interpret a provision of Nevada law the same as its parallel provision in the FLSA.  None of that is surprising.  But this reasoning is simply irrelevant where Nevada law has no provision parallel to a particular FLSA provision.

Defendants also argue that "there is no Nevada law . . . obviating the Portal-to-Portal amendments to the FLSA."  (Brief for Appellees at 23.)  True enough.  But there is no reason to think such a law would be necessary.  Instead, the Nevada legislature has chosen not to affirmatively adopt the law anywhere in the Nevada state code.  If, at some point, the Nevada legislature decides to explicitly incorporate the Portal-to-Portal Act into its Code, it can do so.

Furthermore, despite the apocalyptic implications that Defendants seem to believe rejecting the Portal-to-Portal Act in the state of Nevada would have, both California and Washington have declined to incorporate it into their state codes and they seem to be doing fine. *See, e.g.*, *Morillion v. Royal Packing Co.*, 995 P.2d 139 (Ca. 2000) (finding that state labor codes and wage orders "do not contain an express exemption for travel time similar to that of the Portal-to-Portal Act" and holding that "[a]bsent convincing evidence of the [Industrial Wage Commission]'s intent to adopt the federal standard of determining whether time spent traveling is compensable under state law, we decline to import any federal standard, which expressly eliminates substantial protections to employees, by implication"); *Anderson v. State, Dep't of Soc. & Heath Servs.*, 63 P.3d 134, 136 (Wash. Ct. App. 2003) ("We are not persuaded that the Legislature intended to adopt the Portal to Portal Act; and we do not hold that it was adopted.").

In sum, because there is no reason to believe that the Nevada legislature intended to adopt the Portal-to-Portal Act, we are reluctant to infer an entirely unsupported legislative intent.

### b. Arizona

As for Arizona, Plaintiffs argue that it too has not "adopted the Portal-to-Portal Act or any comparable legislation." (Brief for Appellants at 13.)  The district court, however, held that "[t]he Arizona plaintiffs' claims fail for similar reasons" as the Nevada plaintiffs, (R. 236, Order, PageID # 4699), namely, that Plaintiffs were unable to "identify any [Arizona] law that is irreconcilable with the Portal-to-Portal Act." (*Id.* at PageID # 4695.)  As with the Nevada claims, Plaintiffs' argument is that there is no evidence that the Arizona legislature adopted the Act.  Indeed, nothing in the Arizona code seems to parallel or incorporate the Portal-to-Portal Act.

Arizona law also seems inconsistent with the Portal-to-Portal Act.  For instance, the Industrial Commission[4] has promulgated regulations that state that "no less than the minimum wage shall be paid for *all hours worked*, regardless of the frequency of payment and regardless of whether the wage is paid on an hourly, salaried, commissioned, piece rate, or any other basis." *See* Ariz. Admin. Code R20-5-1206(A) (emphasis added).  And as explained above, "hours worked" is defined under Arizona law as "all hours for which an employee covered under the Act is employed and required to give the employer, including *all time during which an employee is on duty or at a prescribed work pace and all time the employee is suffered or permitted to work*." Ariz. Admin. Code R.20-5-1202(9) (emphasis added).  And "on duty," means "time spent working or waiting that the employer controls and that the employee is not permitted to use for the employee's own purpose." Ariz. Admin. Code R20-5-1202(12).  Plaintiffs thus characterize the Arizona Commission's definitions as creating something of an "'anti' portal-to-portal act." (Brief for Appellants at 29.)  Whether or not this is a fair characterization, the language of the regulations strongly suggests that Arizona law is more inclusive than the Portal-to-Portal Act in the types of work it compensates.

---

[4]The Arizona Industrial Commission is the agency tasked with enforcing and implementing Arizona's wage statute.

Defendants point to an advisory statement from the Commission as evidence that Arizona has adopted the FLSA. As cited by Defendants, that statement reads:

> For purposes of enforcement and implementation of [the Arizona Wage Act], in interpreting and determining "hours worked" under this Act . . . the Industrial Commission of Arizona will be guided by ***and rely upon*** 29 CFR Part 785 – Hours Worked Under the Fair Labor Standards Act . . . .

(Brief for Appellees at 26 (alteration and emphasis in Appellee's brief).) Part 785 includes subpart 785.50, which is the codification of the federal Portal-to-Portal Act. 29 C.F.R. § 785.50. But Defendants' version of the statement omits important qualifying language. Indeed, the ellipses Defendants introduce after the word "Act" and before "the" obscure the full meaning. The unaltered statement reads as follows:

> For purposes of enforcement and implementation of this Act, in interpreting and determining "hours worked" under this Act, *and where consistent with A.A.C. R20-5-1201 et seq. (Arizona Minimum Wage Act Practice and Procedure)*, the Industrial Commission of Arizona will be guided by and rely upon 29 CFR Part 785 – Hours Worked Under the Fair Labor Standards Act of 1938.

Substantive Policy Statement Regarding Interpretation of "Hours Worked" For Purposes of the Arizona Minimum Wage Act, available at https://www.azica.gov/labor-substantive-policy-hours-worked.aspx (last visited May 31, 2018) (emphasis added). The unaltered statement, rather than adopting the FLSA's interpretation in its entirely, merely sets forth the same principle discussed above: namely, that Arizona, like Nevada, looks to the federal law for guidance where it has parallel provisions. Where Arizona law does not have a parallel provision, this statement is not a license to create one.

In sum, there is nothing to suggest that the Arizona legislature intended to adopt the federal Portal-to-Portal Act into its Code. As with Nevada, we refuse to read-in such a significant statute by inference or implication.

## C. The Fair Labor Standards Act's "workweek requirement"

The district court dismissed Plaintiffs' Nevada and Arizona claims for the additional reason that they "do not allege that there was a week for which they were paid less than minimum wage." (R. 236, Order, PageID # 4698 (citing *Richardson v. Mountain Range*

Nos. 17-5784/5785        *Busk, et al. v. Integrity Staffing Solutions, et al.*        Page 23

*Restaurants LLC*, No. CV-14-1370-PHX-SMM, 2015 WL 1279237 (D. Ariz. March 20, 2015).) Again, the district court based its conclusion largely on the assumption that Nevada and Arizona incorporate the FLSA.

"The FLSA mandates that '[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce' a statutory minimum hourly wage." *Stein v. HHGREGG, Inc.*, 873 F.3d 523, 530 (6th Cir. 2017) (citing 29 U.S.C. § 206(a)). "In addition, if an employee works in excess of forty hours a week, the employee must 'receive[ ] compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed.'" *Id.* at 536 (quoting 29 U.S.C. § 207(a)). "The 'regular rate' is 'the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed,' and is 'computed for the particular workweek by a mathematical computation in which hours worked are divided into straight-time earnings for such hours to obtain the statutory regular rate.'" *Id.* at 536–37 (quoting 29 C.F.R. § 779.419). "Assuming a week-long pay period, the minimum wage requirement is generally met when an employee's total compensation for the week divided by the total number of hours worked equals or exceeds the required hourly minimum wage, and the overtime requirements are met where total compensation for hours worked in excess of the first forty hours equals or exceeds one and one-half times the minimum wage." *Id.* at 537 (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580 n.16 (1942); *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960)).

Thus, under federal law, Plaintiffs would be required to identify a particular workweek in which, taking the average rate, they received less than the minimum wage per hour. Plaintiffs argue that Nevada and Arizona law does not calculate the wage requirement in the same way, but that, instead, they only require a plaintiff to allege an hour of work for which she received less than the statutory minimum wage. We agree that there is no basis for concluding that Nevada incorporates the federal workweek requirement. However, we also conclude that Arizona does have an analogous requirement that bars Plaintiffs' claims for minimum wage violations under Arizona law.

### 1. Nevada Law

The district court held that Plaintiffs' Nevada minimum-wage claims failed for the additional reason that "[u]nder the FLSA, 'the workweek as a whole, not each individual hour within the workweek, determines whether an employer has complied with' the minimum-wage requirement; 'no minimum wage violation occurs so long as the employer's total wage paid to an employee in any given workweek divided by the total hours worked in the workweek equals or exceeds the minimum wage rate.'" (R. 236, Order, PageID # 4697 (quoting *Richardson*, 2015 WL 1279237, at *13–14).) The district court rejected Plaintiffs' argument there was a relevant difference between FLSA and Nevada law.

But there is no basis for the conclusion that Nevada has adopted the FLSA's workweek requirement. Indeed, Nevada's statutes would seem to be inconsistent with such a requirement. NRS § 608.016, for example, provides that an employee must be paid "wages of each *hour* the employee works." Nev. Rev. Stat. § 608.016 (emphasis added). Or Nevada's overtime statute, NRS § 608.018(1)(b), provides that an employer shall pay 1 ½ times an employee's regular wage whenever an employee works "[m]ore than 8 hours in any workday." Nev. Rev. Stat. § 608.018. Further, although Nevada regulations require an employer to "pay an amount that is at least equal to the minimum wage when the amount paid to the employee in a pay period is divided by the number of hours worked by the employee during the pay period," which looks like the FLSA standard, that section explicitly applies only to employees paid "by salary, piece rate or any other wage rate *except for a wage rate based on an hour of time*." Nev. Admin. Code § 608.115(2). The import of § 608.115(2) is clearly that only the minimum wages of *non-hourly* paid employees may be calculated on a per-pay-period basis to determine whether there is a minimum wage violation. Such a regulation is completely inconsistent with the FLSA's workweek requirement.

The cases cited by Defendant for the proposition that Nevada incorporates the federal workweek requirement are not availing. For instance, *Levert v. Trump Ruffin Tower I, LLC*, No. 2:14-cv-01009-RCJ-CWH, (D. Nev. Jan. 9, 2015), actually does not address claims brought under Nevada law. Instead, it holds that Plaintiffs could not bring their FLSA claims because they failed to satisfy the workweek requirement, and then it declined to exercise supplemental

jurisdiction over the Nevada claims.  *Id.* at *5.  It is not surprising that one needs to satisfy the FLSA's requirements to bring an FLSA claim, but that is hardly relevant here.  In *Johnson v. Pink Spot Vapors, Inc.*, No. 2:14-CV-1960 JCM (GWF), 2015 WL 433503 (D. Nev. Feb. 3, 2015), another unpublished district court decision, the court dismissed the plaintiff's FLSA claims for failing to satisfy the workweek pleading requirement and then found that "its analysis of plaintiffs' FLSA claims [was] also applicable" to the plaintiff's state claims.  *Id.* at *6.  Although this decision nominally supports Defendants' argument, the district court did not give any explanation as to why the FLSA's workweek requirement applied to Nevada state claims.

On balance, we conclude that there is insufficient reason to hold that Nevada adopted the federal workweek requirement.

### 2.  Arizona Law

As for the Arizona plaintiffs, however, we conclude that Arizona does apply a "workweek requirement" analogous to that provided by the FLSA.[5]  The district court noted that there was a "dearth of precedent" on whether Arizona adopted the federal workweek standard. (R. 236, Order, PageID # 4701.)  However, the regulation is clear:

> (B) If the combined wages of an employee are less than the applicable minimum wage for a work week, the employer shall pay monetary compensation already earned, and no less than the difference between the amounts earned and the minimum wage as required under the Act.
>
> (C)  The workweek *is the basis for determining an employee's hourly wage.*  Upon hire, an employer shall advise the employee of the employee's designated workweek.  Once established, an employer shall not change or manipulate an employee's workweek to evade the requirements of the act.

Ariz. Admin. Code R20-5-1206 (emphasis added).

---

[5]Additionally, the district court dismissed the Arizona plaintiffs' claims for the recovery of overtime pay under Arizona law on the grounds that Arizona provides no mechanism for the recovery of overtime pay.  (R. 236, Order, PageID # 4699) (citing *Reyes v. Lafarga*, No. CV-11-1998-PHX-SMM, 2014 WL 5431172 (D. Ariz. Nov. 20, 2013) ("Arizona does not have an overtime law; consequently, the only overtime protections for Arizonan employees come from the FLSA.").  And Plaintiffs have failed to address this issue in their briefs on appeal. Therefore, they have forfeited their claims for overtime pay under Arizona law.

Guidance from the Arizona Industrial Commission is also unhelpful to the Arizona plaintiffs.  On its website answering the question, "Is an employer subject to Arizona's minimum wage laws required to pay at least minimum wage for all hours worked?," the Commissioner responds as follows:

> Yes.  Minimum wage shall be paid for all hours worked regardless of the frequency of payment *and regardless of whether the wage is paid on an hourly*, salaried, commissioner, piece rate, or any other basis.  If in any *workweek* the *combined wages* of an employee are less than the applicable minimum wage, the employer shall pay, in addition to sums already earned, no less than the difference between the amounts earned and the minimum wage.

Industrial Commission of Arizona, Frequently Asked Questions, available at: https://www.azica. gov/frequently-asked-questions-about-wage-and-earned-paid-sick-time-laws  (last visited May 31, 2018) (emphasis added).

Thus, because the Arizona plaintiffs have failed to allege a workweek in which they failed to receive the minimum wage, they have failed to plead a violation of Arizona minimum wage law.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's dismissal of Plaintiffs' Arizona claims and **REVERSE** the district court's judgment with regard to the Nevada claims in part and **REMAND** for further proceedings consistent with the opinion of this court.

---

### CONCURRING IN PART AND DISSENTING IN PART

---

ALICE M. BATCHELDER, Circuit Judge, concurring in part and dissenting in part. "As a federal court applying state law, we anticipate how the . . . state's highest court would rule in the case and . . . [i]f [that] court has not yet addressed the issue, . . . render a prediction by looking to all the available data." *Vance v. Amazon.com*, 852 F.3d 601, 610 (6th Cir. 2017) (quotation marks and citations omitted). In this case, I would expect the Nevada Supreme Court to find that Nevada's wage-and-hour statutes do not differ materially from the FLSA, so they implicitly incorporate the Portal-to-Portal Act's exclusions, and therefore time spent undergoing security checks is not compensable. Because the majority sees this differently, I must respectfully dissent from its analysis of the Nevada-law claims. I otherwise concur in the judgment.

In deciding wage-and-hour issues, Nevada courts look to the FLSA unless Nevada's statutory language is materially different from or inconsistent with it. *Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951, 955-56 (Nev. 2014); *id.* at 958 (harmonizing a state minimum wage law with the FLSA because "the [Nevada] Legislature has not clearly signaled its intent . . . [to] deviate from the federally set course"). To be sure, the Nevada Supreme Court "has signaled its willingness to part ways with the FLSA where the language of Nevada's statutes has so required," *id.* at 956, but it appears to limit that willingness to situations in which it finds "substantive reason to break with the federal courts," *id.* at 957. I find no such reason here.

In *Csomos v. Venetian Casino Resort, LLC*, 381 P.3d 605, *3 (Nev. 2012) (Table), the Nevada Supreme Court found that NRS § 608.018 tracks the FLSA, and has since 2005, because, in amending the provision, the Nevada Legislature expressly intended to "mirror federal law"; citing to comments at the bill's public hearing in 2005 (including "comments from the [Nevada] Labor Commissioner that the exceptions under NRS 608.018 generally track the exceptions that are in the Fair Labor Standards Act"), a Nevada Attorney General Opinion, and further comments during public hearing on a subsequent amendment in 2009. Thus, as the *Csomos* Court put it, NRS § 608.018's "legislative history demonstrates that, although the 2005-2009

version of the statute [wa]s not as clearly worded as the [subsequent] version, the Nevada legislature intended [its overtime law] to track federal law beginning in 2005." *Id.*

Also, in *Rite of Passage v. Nevada Department of Business and Industry*, No. 66388, 2015 WL 9484735, at *1 (Nev. Dec. 23, 2015), the Nevada Supreme Court considered the meaning of the term "work" in NRS § 608.016 and began by citing *Terry*, 336 P.3d at 955-56, for the proposition that, because "Nevada law provides little guidance on this issue, we turn to the federal courts' interpretation of hours worked under the [FLSA]." Consequently, the Nevada Supreme Court decided the meaning of "work" based on the FLSA and federal case law. *Id.*

I recognize that, pursuant to Nevada's Rules of Court, unpublished Nevada Supreme Court opinions do not establish mandatory precedent, Nev. R. App. P. 36(2), and that a party could not even cite *Csomos* or *Rite of Passage* for its persuasive value, *id*. at 36(3). But given that this court is not a "party," and therefore not strictly subject to that limitation, and that our peculiar task is to anticipate or predict the Nevada Supreme Court's opinion "by looking to all the available data," *see Vance*, 852 F.3d at 610, these cases—or at least the underlying support and reasoning therein, even without their explicit holdings—are certainly informative. Regardless, even ignoring them, *Terry* is likely sufficient on its own to establish that the Nevada Supreme Court would follow the FLSA on this issue rather than differentiate it.

For these reasons, I respectfully dissent from the majority's decision as to the Nevada law claims and would instead affirm the judgment of the district court in its entirety.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 17-5784/5785

IN RE:  AMAZON.COM, INC., FULFILLMENT
CENTER FAIR LABOR STANDARDS ACT
(FLSA) AND WAGE AND HOUR LITIGATION.

_____

JESSE BUSK; LAURIE CASTRO; SIERRA WILLIAMS;
MONICA WILLIAMS; VERONICA HERNANDEZ,

    Plaintiffs - Appellants,

     v.

INTEGRITY STAFFING SOLUTIONS, INC.;
AMAZON.COM, INC.,

    Defendants - Appellees.

> **FILED**
> Sep 19, 2018
> DEBORAH S. HUNT, Clerk

Before:  BATCHELDER and CLAY, Circuit Judges; SARGUS, District Judge.[*]

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Kentucky at Louisville.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's dismissal of the Arizona Plaintiffs' claims is AFFIRMED.  IT IS FURTHER ORDERED that the district court's judgment with regard to the Nevada Plaintiffs is REVERSED in part and REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

_____
Deborah S. Hunt, Clerk

---

[*]The Honorable Edmund A. Sargus, Jr., Chief United States District Judge for the Southern District of Ohio, sitting by designation.