# UNITED STATES DISTRICT COURT
## WESTERN DIVISION OF KENTUCKY
### AT LOUISVILLE

| | |
|---|---|
| **IN RE:  AMAZON.COM, INC., FULFILLMENT CENTER FAIR LABOR STANDARDS ACT (FLSA) AND WAGE AND HOUR LITIGATION** | Master File No. 3:14-md-2504<br>MDL Docket No. 2504<br><br>JUDGE:    HON. DAVID J. HALE<br><br>**[Unopposed]** |
| This Document Relates to:<br>*Saldana v. Amazon.com, LLC*,<br>Case No. 14-CV-00290-DJH | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date :<br>Time:<br>Judge:    Hon. David J. Hale<br>Crtrm:    106 |

This motion is brought seeking preliminary approval of a pre-certification wage and hour class action settlement in the sum of $11,132,134 by Plaintiff Khadijah Robertson, on behalf of herself and an estimated 200,000[1] other Class Members employed[2] in California by Defendants Amazon.com, LLC, and Amazon.com Services LLC (into which Golden State FC, LLC merged effective January 1, 2019) ("Defendants" or "Amazon.com"), as non-exempt hourly paid warehouse workers at Amazon.com warehouse facilities (fulfillment centers and sortation centers) ("Covered Facilities") any time during the period from the October 1, 2012 through the date preliminary approval is granted (the "Class" or "Class Member(s)").

This proposed settlement represents the remainder and global resolution of this wage and hour class action which originated in 2013 and is based upon alleged California Labor Code and Industrial Wage Commission Order violations.  This Court approved a previous settlement ***in this case*** with defendant SMX LLC, a temporary staffing service company providing workers to

---

[1] Declaration of Mark R. Thierman ("Thierman Decl."), ¶ 65

[2] For simplicity, "employed or providing services" will be referenced simply with "employed."

Amazon's California fulfillment centers, in October 2016.  *See* Dkt. 228  This settlement with the remaining defendants represents a superior result for the class when compared to the prior settlement, which required a claim form in order for temporary Amazon workers to obtain relief under the terms of the SMX settlement.  This settlement requires no claim form, and is direct-pay to each of the approximately 200,000 class members, without the need to wait for the outcome of the pending appeal on the security screening issues before the Court.

In short, this settlement represents a laudable compromise between Defendants, who continue to contend that the security screening procedure results in no compensable off-the-clock time being spent (as this Court held upon granting summary judgment), and Plaintiff and the Class, who contend on appeal that being subject to the direction and control of the employer results in compensable time.  This settlement, reached after more than six years of hard-fought appeals and motion practice (including a United States Supreme Court appeal affecting the timeline of this litigation), is an adequate, reasonable, and fair result to the class at this time.

## I.      BACKGROUND

### A.      Plaintiff and Her Contentions

During the Class Period, Plaintiff Khadijah Robertson was employed by Defendants as a non-exempt, hourly paid warehouse employee at the Amazon.com Fulfillment Center Warehouse located in San Bernardino, California.[3]  Ms. Robertson was employed with Defendants through December 2013.  Ms. Robertson's rate of pay was $12 per hour.  *See* Dkt. 66 (Defendants' Answer to Second Amended Complaint (the operative complaint), at ¶ 12).

Plaintiff contends that Defendants violated California's labor laws by their systemic and uniform company practice of subjecting Class Members to mandatory security searches on their premises after Class Members clocked out for meal periods and at the end of their shifts. Plaintiff contends these mandatory individualized security searches resulted in up to 20-30 minutes, or more, of unpaid compensable work each day, resulting in a daily underpayment for all time worked and daily interruptions in employee meal and rest periods.  *See* Dkt. 61., ¶ 1    Plaintiff further contends

---

[3] The other three plaintiffs, David Saldana, Ladaisja Brewster, and Monica Carlin, were subject to a prior settlement approved by this Court on October 31, 2016 (Dkt. 228), with defendant employer SMX, which provided supplemental staffing services to Amazon.  Only plaintiff Robertson remains as a class representative, as employed by Golden State, FC, LLC,

that these searches could be performed before employees clock out for lunch or before they clock out at the end of their shifts. *Id.* Plaintiff also asserts that Defendants failed to provide correctly itemized and accurate wage statements showing all hours actually caused or suffered to work, and failed to pay all wages owed at separation to separated employees. *Id.*

### B. Defendants and their Defenses

Amazon has more than 50 Fulfillment Centers throughout the United States. *See* Defendants' Answer to Second Amended Complaint - Dkt. 66, ¶¶ 15 and 17. Amazon employees pick and pull merchandise at the Amazon warehouses for shipping to Amazon customers. Due to the nature of these tasks and the access to merchandise, all persons, including employees, leaving Amazon Fulfillment Centers are required to pass through security screening. *Id.* at ¶¶ 20-22. Defendants contend that any time spent by employees passing through security screening does not require compensation under controlling law. *Id.* at ¶ 22.

Defendants deny the allegations of the class action lawsuit in their entirety, deny any liability or wrongdoing of any kind associated with the claims alleged in this action, and further deny that, for any purpose other than settling this action, this action is appropriate for class treatment. *See* Dkt. 33, *generally*; Thierman Decl. ¶ 37. Defendants contend, among other things, that they have complied at all times with all applicable California laws, and further contend that, if this matter were to be further litigated, they would have strong defenses on the merits and as to class certification. *Thierman Decl.* ¶ 37.

## II. PROCEDURAL HISTORY

On December 19, 2013, plaintiffs Saldana, Brewster, and Carlin filed a class action complaint for damages, injunctive relief, and restitution entitled *David C. Saldana, Ladaisja Brewster, and Monica Carlin, on behalf of themselves and all others similarly situated v. Amazon.com, LLC, a Delaware Limited Liability Corporation, SMX, LLC, an Illinois Limited Liability Company; Staff Management, LLC, an Illinois Limited Liability Company, and Does 1 through 10, inclusive.* The complaint was filed in the Superior Court of California for the County of Los Angeles and assigned Case No. BC531096 (the "Lawsuit"). These plaintiffs performed work at the Amazon fulfillment centers but were paid by SMX ("SMX plaintiffs").

and the Amazon defendants.

Before the Lawsuit was filed, on April 12, 2013, the Ninth Circuit Court of Appeals issued a decision in *Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525 (9th Cir. 2013), holding that employees may bring an overtime claim under the Fair Labor Standards Act ("FLSA") for time spent undergoing a security screening at the end of each shift. Following the Ninth Circuit's decision, numerous cases were filed across the country under the FLSA, and some included state law claims as well. These cases were transferred/consolidated and sent to the above-captioned District Court of Kentucky pursuant to the Judicial Panel on Multidistrict Litigation.

On January 28, 2014, SMX plaintiffs filed a First Amended Class Action Complaint for Damages, Injunctive Relief, and Restitution.  On February 21, 2014, Plaintiffs added Golden State FC, LLC as an additional defendant.

On February 28, 2014, Defendants Amazon.com, LLC and Golden State FC, LLC removed the matter to the United States District Court for the Central District of California, case number 2:14-cv-01545, assigned to Judge Manuel Real.

On March 13, 2014, the Honorable Judge John G. Heyburn II of the Western District of Kentucky stayed the Multidistrict Litigation coordinated cases, *In re: Amazon.com, Inc., Fulfillment Center Fair Labor Standards Act (FLSA) and Wage and Hour Litigation*, pending the outcome of the U.S. Supreme Court's decision in the appeal of the Ninth Circuit's decision in *Busk v. Integrity Staffing Solutions, Inc.* The appeal would determine the viability of claims brought pursuant to the FLSA.

On April 3, 2014, the Lawsuit was transferred to the Western District of Kentucky and assigned to the Honorable Judge John G. Heyburn, II pursuant to Rule 7.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation.

On June 12, 2014, Plaintiffs filed a Second Amended Class Action Complaint, adding Khadijah Robertson as a Plaintiff and proposed class representative in order to perfect the claim against Golden State, FC, LLC. *See* Doc. 61 (the "Operative Complaint").  Ms. Robertson performed services at the Amazon fulfillment center while being paid by Golden State, FC, LLC, which was then a subsidiary of Amazon.

The Operative Complaint asserts causes of action against Defendants for: (1) Failure to pay Hourly Wages, (California Lab. Code §§ 200-204, 1194; IWC Order 2-2001); (2) Failure to Pay

4

Overtime Wages (California Lab. Code §§ 200-204, 1194; IWC Order 2-2001); (3) Failure to Provide Meal Periods or Compensation in Lieu Thereof (California Lab. Code § 226.7, IWC Order 5, Cal. Code Regs., Title 8 § 11050); (4) Failure to Provide Rest Periods or Compensation in Lieu Thereof (California Lab. Code §§ 226.7, 512; IWC Order 5, Cal. Code Regs., Title 8 § 11050; (5) Failure to Timely Pay Wages of Terminated or Resigned Employees (California Lab. Code, §§ 201-203); (6) Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions (California Lab. Code, § 226); (7) Violations of the Unfair Competition Law; (California Business & Professions Code §§17200 – 17208; and (8) Violations of the Private Attorneys General Act of 2004 ("PAGA") (California Lab. Code § 2698 *et seq.*).   All claims in the Operative Complaint arise under California law, rather than under FLSA. *Id.*

On December 9, 2014, the United States Supreme Court issued its decision in *Busk*, holding that time spent undergoing security is not compensable under the FLSA. The *Busk* decision did not address whether such time was compensable under California state law. (*See* Master File No. 3:14-md-02504, Doc. 96.)

As a result of the *Busk* decision, nearly all of the multi-district litigation cases were resolved, as the security search time was not compensable ***under FLSA.***   A few cases remained pending, under various state law claims, including this case.   The discovery and motion stay remained in place for the multi-district litigation.   This case was not pleaded as a FLSA case but was instead premised upon California Labor Code violations far distinct and more employee-protective than the FLSA. Plaintiffs therefore moved for remand.

While awaiting the remand decision, the SMX parties participated in mediation in June, 2015, and eventually reached a settlement agreement as a result of that mediation.   Remand was denied on July 27, 2015 [Dkt. 136].   The SMX parties, including defendant SMX and the SMX Plaintiffs, moved for preliminary approval of the settlement on November 3, 2015 [Dkt. 148].   The case remained stayed.   In view of the stay, the parties began discussing informal discovery needs.

The Court granted preliminary approval to the SMX settlement on May 4, 2016.   Before the discovery stay had been lifted, Defendants filed for summary judgment as to the remaining Amazon/Golden State FC parties on June 7, 2016 [Dkt. 202].   In Plaintiffs' opposition to the motion for summary judgment, Plaintiffs argued that recent pending California state and federal cases

regarding compensable security searches would be dispositive; specifically *Troester v. Starbucks Corp.,* and *Frlekin v. Apple, Inc.* In *Troester,* California employees contended that post-shift off-the-clock activities were not *de minimis* and should be compensable. In *Frlekin,* California employees contended that post-shift bag searches in security screening should be compensable. Both of these cases were in California district courts, and in both cases, the Ninth Circuit certified the question to the California Supreme Court.

The Court granted final approval to the SMX settlement on October 31, 2016 [Dkt. 228]. The gross settlement value for the SMX parties was $3,773,002.50. The remaining parties are Ms. Robertson for plaintiff, and Amazon.com, LLC, and Amazon.com Services LLC (into which Golden State FC, LLC merged effective January 1, 2019) (the "Amazon Defendants").

The Court in this matter granted summary judgment in favor of the Amazon parties on June 20, 2017 [Dkt. 238]. Plaintiff timely appealed the matter. Plaintiff moved for a stay of the appeal while the *Starbucks* and *Apple* cases moved from the Ninth Circuit to the California Supreme Court; these motions were denied *sub silencio,* as the matter was fully briefed to the Sixth Circuit. Plaintiff argued the matter to the Sixth United States Court of Appeals on June 14, 2018 and renewed her motion to have the matter stayed while the California Supreme Court considered the questions of compensability of security searches and the *de minimis* doctrine in California.

In a July 26, 2018 opinion, the California Supreme Court held in *Troester v. Starbucks Corp.,* 5 Cal.5th 829 (2018), that California wage and hour statutes did not recognize the *de minimis* doctrine embraced by FLSA, and that post-shift off-the-clock activities were compensable under California wage and hour laws. 5 Cal.5th at 835. Plaintiff supplemented the appellate record with this authority.

In its February 13, 2020 opinion in *Frlekin v. Apple, Inc.,* the California Supreme Court held that post-shift security searches were compensable time, even if the items brought to be searched were "optional:" "Is time spent on the employer's premises waiting for, and undergoing, required exit searches of packages, bags, or personal technology devices voluntarily brought to work purely for personal convenience by employees compensable as "hours worked" within the meaning of Wage Order 7-2001. For the reasons that follow, we conclude the answer to the certified question is, yes." 8 Cal.5th 1038, 1042 (2020).

6

The Sixth Circuit United States Court of Appeals has not issued its decision in this appeal and the parties have submitted supplemental briefing regarding their respective positions regarding the impact, or lack thereof, of the *Frlekin* decision on this case.  Thereafter, the parties communicated to determine whether the parties could settle this matter at this time.  The parties have now reached a preliminary settlement agreement providing certain, substantial benefit to hundreds of thousands of Amazon employees at this time—including an overlapping group pursuing several identical claims in a consolidated action filed in July 2017, which is now pending in the U.S. District Court for the Eastern District of California, captioned *Trevino v. Golden State FC LLC*, Nos. 18-cv-00120-DAD (BAM), 18-cv-00121, 18-cv-00567, 18-cv-01176, and 18-cv-17-01300 — without prolonging the uncertainty of the result of the appeal.  Both parties continue to believe in the merits of their positions, but believe it is in the best interests of the parties in providing an end to this costly, time-consuming litigation on this issue.

## III.    THE PROPOSED SETTLEMENT

The parties informally exchanged voluminous documentation during the past six full years regarding the merits of the case, motion practice, appellate practice, membership in the class, number of shifts, policies and procedures at the respective fulfillment centers, as well as obtaining the deposition of Ms. Robertson.  The information gathered provides support for finding that the proposed settlement is fair, adequate, and reasonable.  The parties reached agreement on a preliminary settlement on April 28, 2020.  A copy of the Joint Stipulation of Class Action Settlement and Release Agreement ("Settlement Agreement") is attached as Exhibit A to the Thierman Declaration.

### A.    The Settlement Class

The proposed Settlement Class is defined as:

> All non-exempt employees employed by Amazon in California who worked at an Amazon.com warehouse facility (fulfillment centers and sortation centers) ("Covered Facilities") from October 1, 2012 until the date that the preliminary approval of the proposed settlement is ordered ("Class Members").

There are two sub-classes:

1.    <u>Pre-May 2013 Subclass.</u> For purposes of the settlement of the Lawsuit, the Pre-May 2013 Subclass is defined as:

Those Class Members who were employed by Amazon in California and who worked at an Amazon.com Covered Facility from October 1, 2012 through April 30, 2013.

        2.     <u>Post-May 2013 Subclass.</u> For purposes of the settlement of the Lawsuit, the Post-May 2013 Subclass is defined as:

Those Class Members who were employed by Amazon in California and who worked at an Amazon.com Covered Facility from May 1, 2013 until the date that the preliminary approval of the proposed settlement is ordered.

The reason for the two subclasses is that beginning on May 1, 2013, Defendants implemented different policies and procedures which minimize any time spent in post-clock out security measures, in a significant way.

Each individual in the Settlement Class shall be referred to as a Settlement Class Member in the Settlement Agreement. The Settlement Class shall not include individuals who file a timely request to opt-out pursuant to Paragraph 14 of the Agreement ("Opt-outs"). Those Opt-outs shall not be held to release any claims for individual relief nor shall they participate in the Settlement. The Parties agree that Amazon's records are sufficient to identify all Settlement Class Members.

**B.    The Settlement Funds**

Pursuant to the Agreement, the Parties have agreed that this action be settled and compromised for the sum of $11,132,134 ("Gross Settlement Fund" or "GSF"), which sum includes, subject to and contingent upon the approval of this Court, the individual settlement payments to Class Members who do not opt out of the Settlement, Class Counsel's attorneys' fees and costs to Class Counsel, enhancement payment to plaintiff Robertson, payment to the Settlement Administrator, and a payment to the California Labor Workforce and Development Agency ("LWDA") for PAGA penalties. Agreement § 4. The remainder of the GSF will be defined as the "Class Payment Amount," which is estimated to amount to $7,158,530.

Subject to Court approval, Class Representative Robertson shall be paid ten thousand dollars ($10,000) within thirty (30) days of the Effective Date of the Settlement Agreement as an enhancement payment. The Settlement Administrator shall pay each Pre-May 2013 Subclass Member who does not timely opt-out of the Settlement, twenty dollars ($20) per shift during the time period October 1, 2012 through April 30, 2013. The number of shifts each participating Pre-May 2013 Subclass Member worked shall be determined by reference to Defendants' records. The

Settlement Administrator shall make the payments to the Pre-May 2013 Subclass Members within thirty (30) days of the Effective Date of this Settlement Agreement.

The Settlement Administrator shall pay to each Post-May 2013 Subclass Member who does not timely opt-out of the Settlement an amount equal to the Remaining Class Payment Amount divided by the total number of Post-May 2013 Subclass Members who do not timely opt-out of the Settlement (which amount the Parties estimate to be approximately $30 per Post-May 2013 Subclass Member based on the estimated Subclass size as of the date of this Settlement Agreement is filed, subject to adjustment for reasonable Settlement Administrator fees). The Settlement Administrator shall make the payments to the Post-May 2013 Subclass Members within thirty (30) days of the Effective Date of this Settlement Agreement.

Out of the Gross Settlement Fund, Defendants shall pay $250,000 to the California Labor & Workforce Development Agency to resolve and settle claims for penalties under the California Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq.* This represents 75% of the total amount of $333,333.33 that Defendants will pay out of the Gross Settlement to resolve and settle claims for PAGA penalties. The remaining 25% ($83,333.33) is part of the Class Payment Amount that will be distributed to each Settlement Class Member as part of the payments described above.

The payment made to each Settlement Class Member shall be allocated one third to wages, one third to penalties, including PAGA penalties, and one third to interest.

Defendants will not oppose, and Class Counsel agrees that it will not seek more than, attorneys' fees amounting to $3,673,604 and costs not to exceed $25,000, to be paid from the Gross Settlement Fund. Defendants shall pay the attorneys' fees and costs within thirty (30) days of the Effective Date of this Settlement Agreement or within thirty (30) days of the Court's order establishing the attorneys' fees and costs to be paid, whichever comes later and pursuant to any instructions or limitations set forth in the Court's order.

## C.     The Release

Under the language of the Agreement, the Class Representative and the Settlement Class Members and their successors in interest (the "Releasors"), fully release and discharge Defendants and any and all of their parent, subsidiary, predecessor, successor, and affiliated entities or related

entities (including but not limited to Amazon.com Inc.), current and former directors, officers and employees (the "Releasees") from any and all claims, whether known or unknown, and including those overlapping claims[4] asserted in the consolidated actions captioned *Trevino v. Golden State FC LLC*, Nos. 18-cv-00120-DAD (BAM), 18-cv-00121, 18-cv-00567, 18-cv-01176, and 18-cv-17-01300, currently pending in the U.S. District Court for the Eastern District of California, for: (1) Failure to Pay Hourly Wages (including any claim brought under any theory of recovery, or seeking any form of relief, that was or could have been alleged in this action, including under Lab. Code §§ 200-204, 206, 210, 212, 223, 510-11, 558, 1194, 1194.2, 1197, 1197.1, 1198, 1199; any IWC Wage Order); (2) Failure to Pay Overtime Wages (including any claim brought under any theory of recovery, or seeking any form of relief, that was or could have been alleged in this action, including under Lab. Code §§ 200-204, 206, 212, 510-11, 558, 1194, 1197.1, 1198, 1199 any IWC Wage Order); (3) Failure to Provide Meal Periods or Compensation in Lieu Thereof (including any claim brought under any theory of recovery, or seeking any form of relief, that was or could have been alleged in this action, including under Lab. Code §§ 200, 220, 226.7, 512, 558, 1197.1, 1198, 1199, any IWC Wage Order, Cal. Code Regs., Title 8 §§ 11010 through 11170); (4) Failure to Provide Rest Periods or Compensation in Lieu Thereof (including any claim brought under any theory of recovery, or seeking any form of relief, that was or could have been alleged in this action, including under Lab. Code §§ 200, 220, 226.7, 512, 558, 1197.1, 1198, 1199; any IWC Wage Order, Cal. Code Regs., Title 8 §§ 11010 through 11170; (5) Failure to Timely Pay Wages of Terminated or Resigned Employees (including any claim brought under any theory of recovery, or seeking any form of relief, that was or could have been alleged in this action, including under Lab. Code, §§ 201-204, 210, 227.3, 558, 1197.1, 1199); (6) Failure to Comply with Lab. Code, § 226 or § 1174 (including any and all claims for penalties associated therewith, brought under any theory of recovery, or seeking any form of relief, including pursuant to Labor Code § 226.3 or § 1174.5); (7) Violations of the Unfair Competition Law (including any claim brought under any theory of

---

4    The claims overlapping between this action and the *Trevino* litigation include the following:  (1) Failure to Pay Wages for All Hours Worked, Including Overtime, Lab. Code §§ 510–511 (predicated on Plaintiffs' security screening claims); (2) Failure to Provide Lawful Meal Periods, IWC Wage Order, Lab. Code §§ 226.7, 512 (predicated on Plaintiffs' security screening claims); (3) Failure to Provide Rest Periods, IWC Wage Order, Lab. Code §226.7 (predicated on Plaintiffs' security screening claims); (4) Wage Statement Violations, Lab. Code §226; and (5) Failure to Timely Pay Wages Due At Termination, Lab. Code §203 (predicated on Plaintiffs' security screening claims).

recovery, or seeking any form of relief, that was or could have been alleged in this action, including under Bus. & Prof. Code § 17200 *et seq.*); (8) Claims for penalties brought pursuant to PAGA (including any claim brought under any theory of recovery, or seeking any form of relief, that was or could have been alleged in this action, including under Lab. Code § 2698 *et seq.*); (9) Violations of Lab. Code § 2810.5 (including any claim brought under any theory of recovery, or seeking any form of relief, that was or could have been alleged in this action); and (10) Failure to Pay Wages for Work Performed Off-the-Clock (including any claim brought under any theory of recovery, or seeking any form of relief, that was or could have been alleged in this action); and any other derivative or penalty claims, including, but not limited to California Labor Code violations, including any alleged recordkeeping violations (such as a claim brought under Labor Code §§ 226, 226.3 or 1174), Wage Order violations, common law claims, federal law violations (including violations of the Fair Labor Standards Act), and any claims arising under PAGA for work performed as an Amazon employee at a Covered Facility in California ("Released Claims"). It is the express intent of the Parties that the release in the Agreement applies to any claim against Defendants and their parents, subsidiaries, affiliated or related entities for the time period during which Settlement Class Members worked for Defendants at Covered Facilities in California. The release applies to claims arising from the Releasors' employment with Defendants in the State of California from October 1, 2012 until the date of preliminary approval of this Settlement Agreement.

The Agreement contains a standard California Civil Code section 1542 waiver: "For the purpose of implementing a full and complete release of the claims in Paragraph 6 of this Settlement Agreement, Plaintiff and Settlement Class Members expressly acknowledge that the releases given in this Settlement Agreement are intended to include, without limitation, claims that Plaintiff or Settlement Class Members did not know or suspect to exist in their favor at the time of the effective date of this Settlement Agreement, regardless of whether the knowledge of such claims, or the facts upon which they might be based, would materially have affected the settlement of this matter; and that the consideration given under this Settlement Agreement was also for the release of those claims and contemplates the extinguishment of any such unknown claims, despite the fact that California Civil Code section 1542 may provide otherwise. Limited to the scope of the claims released in Paragraph 6 of this Settlement Agreement, Plaintiff and Settlement Class Members who do not timely

opt out expressly waive any right or benefit available to them in any capacity under the provisions of California Civil Code section 1542, which provides as follows:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

### D.   Notice of Class Action Settlement

Following preliminary approval, the Defendants will forward the Class Data List to the Administrator for preparing the Notice Packet to be mailed to the Class to inform them of the Settlement. *See* Agreement § 10. The Notice Packet will include the Notice of Class Action Settlement (Exhibit A to the Agreement), and a Request for Exclusion Form (Exhibit B to the Agreement).  Agreement, ¶ 10. The Notice will advise the Class of their rights (1) to participate and to receive their share of the Settlement, (2) to object to the Settlement, and to appear at the Final Fairness Hearing, (3) to request exclusion from the Settlement, and (4) the manner and timing of each of these options. *See* Exhibit A to the Agreement. The Notice will also inform the Class of the claims to be released. *Id.* at § E(2).

**There is no claims procedure.**  This is a direct-pay, no-reversion settlement, with immediate benefits to the Class.

## IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT AND SET A FINAL FAIRNESS HEARING DATE

A class action may not be dismissed, compromised, or settled without the approval of the Court. FRCP 23(e). The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992); *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1238 (9th Cir. 1998)). The Rule 23(e) settlement approval procedure includes three distinct steps: (1) preliminary approval of the proposed settlement; (2) dissemination of a notice of the settlement to all affected class members; and (3) a formal fairness hearing at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlement. *See In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 338 (N.D. Ohio 2001); *Murillo v. Pac. Gas &*

*Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010). This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* Alba Conte & Herbert Newberg, *4 Newberg on Class Actions* (2002) ("*Newberg*"), §§ 11.22, *et seq*.

By way of this motion, Plaintiff requests that the Court take the first step in the Settlement process and preliminarily approve the proposed Settlement. The purpose of the Court's preliminary evaluation of the proposed Settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the Class and a formal fairness hearing are appropriate. *See Newberg* § 11.25. The *Manual for Complex Litigation* (Fourth) (2004) ("*Manual*") characterizes the preliminary approval state as an "initial evaluation" of the fairness of the proposed settlement made by the Court on the basis of written submissions and informal presentation from the settlement parties. *Manual* § 21.632.

Courts must give "proper deference" to settlement agreements, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Vasalle v. Midland Funding, LLC*, 2014 WL 5162380, at *7 (N.D. Ohio, Oct. 14, 2014), citing *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). As the Sixth Circuit has held: "Our task is not to decide whether one side is right or even whether one side has the better of these arguments. Otherwise, we would be compelled to defeat the purpose of a settlement in order to approve a settlement. The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW v. General Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007).

The Court's determination of whether a proposed settlement is fair, adequate, and reasonable is often said to require a balancing of several factors, such as: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW,* 497

F.3d at 631; *see also Granada Invs., Inc., supra,* 962 F.2d at 1205; *Williams v. Vukovich,* 720 F.2d 909, 922–23 (6th Cir.1983).

"This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (citation omitted). The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See UAW, supra,* 497 F.3d at 632 (noting "the federal policy favoring settlement of class actions"); *Steiner v. Fruehauf Corp.*, 121 F.R.D. 304, 305 (E.D. Mich. 1988) *aff'd sub nom. Priddy v. Edelman*, 883 F.2d 438 (6th Cir. 1989) (same); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1275 (9th Cir. 1992).

A.      **Strength of Plaintiffs' Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation**

The court weighs the likelihood of success on the merits in considering whether the settlement is fair, reasonable, and adequate. *In re Gen. Tire & Rubber Co. Sec. Litig.,* 726 F.2d 1075, 1086 (6th Cir.1984). The Court also considers the risks, expense, and delay of further litigation, and weighs them against the recovery provided by the settlement. *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 295 (W.D. Ky. 2014).

Here, while Plaintiff believes in the merits of her case, she also recognizes the inherent risks and uncertainty of litigation and understand the benefits of providing a significant settlement sum now, as opposed to risking an appellate decision affirming the Court's decision granting summary judgment in favor of Defendants.  Given the general statistic of only 9% of all appeals resulting in reversal, this risk to Plaintiff is very great.  *See,* https://www.uscourts.gov/news/2016/12/20/just-facts-us-courts-appeals.  Thierman Decl., ¶ 58. Plaintiff's claims involve complex and disputed legal issues and fact-specific arguments that the Parties have litigated fiercely since inception of the action in December 2013. *Id.,* ¶¶ 55-57.  Plaintiff believes that the differences between California law and FLSA cases tips the balance in favor of Plaintiff's position, and that the recent California Supreme Court decisions in *Starbucks* and *Apple* buttress Plaintiff's position; however, Plaintiff cannot count on an appellate panel agreeing with her position.

Defendants also have strong defenses to liability. *Id.*  This is evident from the Court's ruling on summary judgment in favor of Defendants in this matter already.  In addition, Defendants have

remained steadfast in their defense of this matter on appeal, including that the *Frlekin* decision, which involved retail store employees waiting for bag checks, is dispositively distinguishable from the facts of this case.

Even were Plaintiff to prevail on appeal, upon remand, Plaintiff would face significant hurdles with respect to obtaining class certification when the case would proceed to the certification stage. This is evident in the Court's ruling on other motions for class certification filed in the multi-district litigation regarding security screenings. Defendants assert that obstacles faced by Plaintiff in seeking certification and maintaining that certification are all the greater given the United States Supreme Court's rulings in *Dukes v. Wal-Mart, Inc*, 131 S. Ct. 2541 (2011), and *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). As a result of *Dukes* and *Comcast*, along with many other cases, Defendants believe that Plaintiff will not be able to obtain certification outside of the Settlement context. Thierman Decl. ¶ 37. Defendants further contend *Dukes* explicitly disapproved the use of sampling and surveys to determine class-wide practices, and *Comcast* overturned a certification ruling based on the named representative's failure to identify a reliable damages model that could be used on a class-wide basis. *Id.; Dukes*, 131 S. Ct. at 2561; *Comcast*,133 S. Ct. at 1432-33. Thus, while Plaintiff believes and continues to believe that even if she could prevail on the merits of the claims (if the appeal results in a reversal), whether or not this case is suitable for Rule 23 certification presents a new formidable hurdle. Similarly, while Defendants believe Plaintiff will face several steep hurdles going forward should this matter not resolve, they are also mindful that there are risks and significant expenses associated with proceeding further in the case.

**B.      The Extent of Discovery and Stage of the Proceedings Support the Settlement**

The proposed Settlement is the product of substantial effort by the Parties as previously described above. Thierman Decl., ¶ 55. Plaintiff's investigation of the facts and claims was significant.

Indeed, Plaintiff's counsel has been counsel of record in many cases across the country against Amazon.com fulfillment centers since 2010. During this litigation, Plaintiff's counsel litigated the *Busk* case up to the United State Supreme Court. *Id*.

In addition, Plaintiff's counsel spoke to numerous workers at Amazon.com fulfillment centers in California who explained the working conditions at those facilities, the location of the

security checks, the process by which employees were required to undergo security screenings, and the changes that occurred after the in the Spring of 2013. *Id.,* ¶ 15. Defendant also provided Plaintiff with significant information regarding the screening process at the facilities in California. *Id.* Defendants also provided Plaintiff with critical data regarding the number of putative class members who were employed by Defendants over the course of the Class Period, the average rate of pay for these class members, the total number of former employees, and the total number of employees who had worked within one year of the filing of Plaintiffs' lawsuit, so that Plaintiff could accurately assess Defendants' potential exposure. *Id.*

The Parties have thoroughly investigated and evaluated the factual strengths and weaknesses of this case and engaged in sufficient investigation and discovery reflected above to support the Settlement. Thierman Decl., ¶¶ 55-57.  Thus, the Settlement before this Court came only after the case was fully investigated by Counsel. This litigation, therefore, has reached the stage where the Parties have a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement. *Leonhardt v. ArvinMeritor, Inc.*, 581 F.Supp.2d 818, 837-38 (E.D. Mich. 2008); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also* Thierman Decl., ¶¶ 55-57.

## C.    The Settlement is the Product of Serious, Informed and Non-Collusive Negotiations and Is a Reasonable Compromise of Claims

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt, supra,* 581 F.Supp.2d at 838. Here, the Settlement was reached as a result of informed discovery on related multi-district litigation cases (including *Busk*), informal exchange of information, deposition of Plaintiff, exchange of information with respect to the SMX settlement, and extensive motion and appellate procedure.  Thierman Decl., ¶¶ 25-37.  Following agreement to a settlement in concept, the Parties have worked diligently and in earnest to reach agreement on all terms of the proposed Settlement. Thierman Decl., ¶¶ 40-46. Though cordial and professional, the settlement negotiations have been, at all times, adversarial and non-collusive in nature. *Id.* Continued good faith, but occasionally contentious, negotiations were required to reach agreement on all terms set forth in the Agreement presented here for preliminary approval.  This is evident from the motions for summary judgment and resulting appeals.  The compromise reached is reasonable. *Id.*

Plaintiff alleged that it took employees approximately 20-30 minutes to pass through the anti-theft screening process at the end of the workday. *See* Dkt. 61 ¶ 1. In addition, Plaintiff asserted that she was denied a full 30-minute uninterrupted meal period that is required under California law because she was required to pass through the anti-theft screening prior to being able to take her meal period. *See* Dkt. 61.The average hourly rate of employees who worked for Defendant was approximately $10.00 an hour. *See* Dkt. 61 ¶ 10 -. Based on Plaintiff's allegations, the total exposure per employee per shift for unpaid overtime and a meal and rest break violation was approximately $17.50, not including other penalties allowable under the law for failure to provide accurate itemized wage statements, waiting time penalties for former employees, and PAGA penalties.[5] Plaintiff ultimately achieved a settlement in the amount of $20.00 per shift for the Pre-May Subclass—that's $2.50 more per shift than Plaintiff's and the Class' hard damages. Plaintiff compromised the claims on the Post-May Subclass to a flat $30.00 per employee amount because of the Supreme Court's ruling in *Busk,* and facts developed indicating that there was little or no waiting in any lines after the Ninth Circuit's ruling in *Busk,* due in part to rescheduling and staggering shifts to substantially reduce any time spent in screening.  Furthermore, there is no conflict between the two subclasses because each subclass benefits independently from the other and individuals can be members of both classes.

Defendants hotly disputed Plaintiff's claims and allegations that it took her (and the class) approximately 30 minutes to pass through the screening at the end of the workday. Defendants' similarly contest that Plaintiff did not receive a full 30-minute uninterrupted meal period. Defendants contend that the time spent by employees going through security was less than 5 minutes (and thus *de minimis* under Defendants' point of view) or non-existent and note that changes were made post-*Busk*.

---

[5] Thirty (30) minutes of uncompensated time at the overtime rate would net approximately $7.50 owed. One (1) missed meal period per day would net $10.00 per employee (the penalty for a missed meal period is an additional hour's pay). While Plaintiff would also be entitled to seek penalties under California law for these violations, she would have a heightened "willfulness" standard to prove waiting time penalties, and PAGA penalties are entirely discretionary. Therefore, a $2.50 per shift amount of penalties is entirely reasonable given the uncertainty regarding the recovery of such damages.  Plaintiffs' other claims including, for example, rest period violations, wage statement violations and failure to pay wages due at termination are similarly uncertain and reasonably included within the compromise amount.

Due to the differing factual conditions pre-May, 2013 and post-May, 2013, it represents a fair compromise to compensate the pre-May 2013 class on a per-shift basis, and the post-May, 2013 class on a flat compensation rate, given the assumptions, evidence, and compromise. In fact, this tiered remuneration formula was proposed by the mediator for the SMX case, which was already approved by the Court in October 2016.

### D.      Class Counsel Is Experienced in Similar Litigation

Plaintiff's counsel, Thierman Buck, LLP, The Markham Law Firm, Cohelan, Khoury & Singer, Hamner Law Offices, APC, and the United Employees Law Group, PC, have had significant experience in litigating misclassification, overtime, expense reimbursement, and rest/meal period cases, and other wage and hour class cases and have obtained certification in these types of cases and have been appointed Class Counsel or Co-Class Counsel in dozens of cases as reflected in the Declarations of Mark R. Thierman, Joshua Buck, Isam C. Khoury, David R. Markham submitted with this Motion.[6]

Defendants' counsel, including Richard Rosenblatt and Joseph Nuccio of Morgan Lewis & Bockius, also are experienced in wage and hour employment law and class actions. Buck Decl., ¶ Ex A. Experienced counsel, operating at arms'-length, have weighed the strengths of the case and examined all of the issues and risks of litigation and endorse the proposed Settlement as fair, reasonable and adequate for the class. Buck Decl., ¶6; Markham Decl., ¶ 10. The view of the attorneys actively conducting the litigation is entitled to significant weight in deciding whether to approve the settlement. *Dick v. Sprint, supra,* 297 F.R.D. at 297 ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation"); *see also Ellis v. Naval Air Rework Facility* (N.D. Cal. 1980) 87 F.R.D. 15, 18, *aff'd* 661 F.2d 939 (9th Cir. 1981).

Class Counsel having prosecuted numerous cases on behalf of employees for California Labor Code violations are experienced and qualified to evaluate the Class claims, settlement versus trial on a fully informed basis, and the viability of the defenses. Thierman Decl., ¶ 5. Counsel on both sides share the view that this is a fair and reasonable settlement in light of the complexities of

---

[6] Plaintiffs' counsel have agreed that Thierman Buck LLP will serve as Lead Class counsel in this action.

the case, the state of the law, and of the uncertainties of certification and litigation. *See* Settlement Agreement at ¶¶ L-M. The opinion of counsel in support of the proposed Settlement is based on a realistic assessment of the strengths and weaknesses of their respective cases, extensive legal and factual research, as well as the substantial discovery detailed above. *Id.* The opinion of counsel is also based on an assessment of the risks of proceeding with the litigation through trial and, if a verdict were recovered, through appeal as compared to the certain value of a settlement at this time. *Id.* Given the risks inherent in litigation and the defenses asserted, this Settlement is fair, adequate, and reasonable and in the best interests of the class and should be preliminarily approved. *Id.*

## V.    CLASS COUNSELS' ATTORNEYS' FEES REQUEST AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENT

### A.    Motion for Award of Attorneys' Fees and Litigation Costs

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Properties, Inc*., 9 F.3d 513, 516 (6th Cir. 1993).

Class Counsels' attorneys' fees and costs will be paid from the GSF. Class Counsel will file, concurrently with the motion for order granting final approval, a motion requesting an award of Attorney's Fees in the sum of up to $3,673,604 and reimbursement of their litigation costs of up to $25,000. *See* Agreement, § 5. The fees to be requested represent under 33% of the GSF.  This figure should be balanced against the companion SMX settlement in this same case, in which the same Class Counsel agreed to take *under 21%* of the GSF.  At this time, Class Counsel has litigated not just a motion for summary judgment, but **also a fully executed appeal awaiting decision**, with a more than six-year outlay of costs and resources.  The preparation of the appeal, together with augmenting the appellate records as California Supreme Court cases continued to influence the projected outcome of this case, support this fee request, which percentage is routinely supported by both Sixth and Ninth Circuit case law.

In *Swigert v. Fifth Third Bank,* 2014 U.S.Dist. LEXIS 94450 (S.D.Ohio July 11, 2014), the court applied the factors set forth in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974), to approve a 33% fee award in a wage and hour class action settlement:

Society's stake in rewarding attorneys who bring class action wage and hour cases favors the requested award. Gentrup v. Renovo Servs., LLC, No. 1:07-cv430, 2011 U.S. Dist. LEXIS 67887, 2011 WL 2532922, at *4 (S.D. Ohio, June 24, 2011) . . . 3. The Services Rendered Were on a Contingent Fee Basis Despite the risks associated with prosecuting this case, including issues related to certification, Defendant's multiple defenses, the extent to which MLOs actually worked overtime hours, and willfulness, Class Counsel took this case solely on a contingency fee basis and were prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Further, Class Counsel have not been compensated for any time or expense since the litigation began in 2011, consistent with the fee agreement entered into between Plaintiffs and class counsel. . . . 5. Complexity of the Litigation Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming. See Beckman v. KeyBank, N.A., 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013). This is particularly true here, where Plaintiffs alleged overtime claims under the FLSA, and under the state laws of Ohio. Resolving the procedural issues, the merits, and damages would have been risky, costly, and time consuming. 6. The Professional Skill and Standing of Counsel The professional skill and standing of counsel on both sides is substantial. . . . The lawyers representing Defendant have extensive experience in this area as well. Accordingly, this factor supports approval of the requested fee award. C. Comparison to Attorneys' Fees in Similar Cases An award of 33% of the total settlement fund is well within the range of fees requested in class and collective actions in Ohio federal district courts. See, e.g., Johnson, 2013 U.S. Dist. LEXIS 74201, 2013 WL 2295880, at *6 (awarding attorney fees and expenses to class counsel in an amount of 33% of the settlement funds in class action case); Kritzer, 2012 U.S. Dist. LEXIS 74994, 2012 WL 1945144, at *9-10 (awarding attorney's fees and costs up to $235,000 out of a settlement of $455,000 (52% of total recovery) in a hybrid FLSA collective and Ohio class action for unpaid overtime)).

Swigert, at *16-19.  Each of the factors enumerated above exist in the present litigation:  there is a societal interest in having wage and hour class actions prosecuted, this was a complex contingent fee case with many defenses and an uncertain outcome, Class Counsel have not been compensated since the inception of this case in 2013, wage and hour class actions are complex and time consuming, the attorneys for plaintiffs and defendants in this matter have extensive experience in wage and hour class actions, and in the Sixth Circuit, a 33% fee award has ample precedent.

The Ninth Circuit also supports fee awards of 33% for wage and hour class actions. Vazquez v. Coast Valley Roofing, 266 F.R.D. 482 (E.D. Cal. 2010)(33.3% fee award of the common fund in wage and hour class action); Barbosa v. Cargill Meat Solutions Corp., 297 F.R.D. 431 (E.D.Cal. 2013)(33.3% of common fund in wage and hour class action).

### B.     Enhancement Payment to Class Representative Robertson

The Sixth Circuit has noted that enhancement payments are typically awarded to class representatives for their extensive involvement with a lawsuit. Hadix v. Johnson, 322 F.3d 895, 897

(6th Cir. 2003). Awards encourage members of a class to become class representatives and reward their efforts taken on behalf of the class. *Id.* Payment of enhancement payments   to class representatives is a reasonable use of settlement funds. *Moulton v. U.S. Steel Corp.,* 581 F.3d 344, 351 (6th Cir. 2009).

Likewise in the Ninth Circuit, "named plaintiffs . . . are eligible for reasonable incentive payments. The district court must evaluate their awards individually, using 'relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class had benefitted from those actions, the amount of time and effort the plaintiff in pursuing the litigation and reasonable fears of workplace retaliation.'" *Staton v. Boeing Corp.,* 327 F.3d 938, 977 (9th Cir. 2003) (citations and internal alterations omitted).

Subject to the Court's approval at the time of the Final Fairness hearing, Class Counsel will request on behalf of Plaintiff Robertson, the reasonable sum of $10,000 for her time, effort, risks undertaken for the payment of costs in the event this action had been unsuccessful, the stigma upon future employment opportunities for having initiated this action against a former employer, and a general release of all claims. *See* Agreement § 4(a); Thierman Decl., ¶ 53. Plaintiff invested a great deal of personal time and effort into the investigation, prosecution, and the settlement of the case, as will be set forth in her declaration to be filed concurrently with the final approval motion and motion for award of attorneys' fees, costs, and settlement administration expenses. *Id.* In addition to working with Ms. Robertson in the initial investigation and initiation of her involvement in this litigation against an Amazon employer, Ms. Robertson has been involved in the discovery and approval process throughout the past nearly six-and-a-half years, including preparation for, and traveling to, a full-day deposition – a commitment the SMX plaintiffs was spared. Ms. Robertson's involvement also stretched beyond the involvement of the SMX plaintiffs, as they were compensated after final approval in October, 2016. Ms. Robertson continued to be responsive and active in the progress of this litigation, even though appeal. Thus, the Class Representative enhancement payment of $10,000 is fair and reasonable. *See, e.g.*, *Singer v. Becton Dickinson & Co.,* 2010 U.S. Dist. LEXIS 53416, at *24-26 (S.D. Cal. June 1, 2010) ("The $25,000 incentive award is . . . well within the acceptable range awarded in similar cases.") (discussing *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) (approving $50,000 class representative payment to named

plaintiff); and *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (same)); *Glass v. UBS Financial Services*, 2007 U.S. Dist. LEXIS 8476, at *50-52 (N.D. Cal. Jan. 26, 2007) (approving $25,000 class representative payment).

## VI.     THE PROPOSED RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR SETTLEMENT PURPOSES

### A.     The Proposed California Rule 23 Class Meets the Certification Requirements of Rule 23(a) and (b) for Settlement Purposes

For purposes of the proposed Settlement (and for settlement purposes only), the Parties request that the Court provisionally certify the Rule 23 class as defined in the Settlement Agreement:

> All non-exempt employees employed by Amazon in California who worked at an Amazon.com warehouse facility (fulfillment centers and sortation centers) ("Covered Facilities") from October 1, 2012 until the date that the preliminary approval of the proposed settlement is ordered ("Class Members").

Agreement, §3. The Court has the authority to certify a provisional settlement class at the time of preliminary approval. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In determining whether a class should be certified, the court is bound to take the substantive allegations of the complaint as true. *See Blackie v. Barrack*, 524 F.23d 891, 901 n.17 (9th Cir. 1975). A proposed settlement class is still subject to the requirements of FRCP Rule 23(a) and (b) which are "designed to protect absentees by blocking unwarranted or overbroad class definitions." *Amchem*, 521 U.S. at 620. However, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Id.*

### 1.     Rule 23(a)(1) —Numerosity

There are an estimated 200,000 putative class members. Thierman Decl., ¶ 65.  This satisfies the Rule 23(a)(1) numerosity element in the settlement context. 5 James Wm. Moore et al., *Moore's Federal Practice*, § 23.22 (3d ed. 1999).

### 2.     Rule 23(a)(2) —Commonality

The commonality preconditions of Rule 23(a)(2) are "construed permissively." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The presence of simply one common issue whose resolution will affect all or significant number of the putative class members suffices to

satisfy the commonality requirement. "Although Rule 23(a)(2) speaks of "questions" in the plural, we have said that there need only be one question common to the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). Here, Plaintiff alleges that Defendants implemented and applied employment policies and practices to all members of the Class through their employment – the security checks were mandatory and were conducted while Class Members were punched out and off the clock. *See* Dkt. 61 at ¶¶ 9-12. Plaintiff contend this time off the clock was compensable. *Id.* For settlement purposes, Plaintiff's claims meet the minimum burden of establishing commonality.

### 3.       Rule 23(a)(3) —Typicality

Under this Rule's "permissive standards," the representative plaintiff's claims are "typical" if they are "reasonably co-extensive with those of absent class members." *Hanlon,* 150 F.3d at 1020. The typicality requirement is satisfied if Plaintiff's claims arise from the same events or course of conduct that give rise to the claims of other class members and are based on the same legal theory. *See Taylor v. CSX Transp., Inc.,* 264 F.R.D. 281, 289 (N.D. Ohio, 2007); *Ventura v. New York City Health and Hosp., Inc.*, 125 F.R.D. 595, 600 (S.D.N.Y. 1989). Plaintiff contends that her claims arise from a common source—the alleged failure to pay for time worked or under the control of the employer. Buck Decl., ¶ --. Furthermore, the claims of Plaintiff and the putative Class are based on identical legal theories. *Id.* Finally, Plaintiff's interests are aligned with those of the putative Class. *Id.*, ¶ 27. Based on the foregoing, the typicality requirement is also satisfied in the settlement context.

### 4.       Rule 23(a)(4) —Adequacy of Representation

This rule requires (1) that the representative plaintiff does not have any conflict of interest with the putative class; and (2) that plaintiff is represented by qualified and competent counsel. *See Senter v. General Motors Corp.,* 532 F.2d 511, 524-25 (6th Cir. 1976); *Hanlon, supra,* 150 F.3d at 1020. In this case, Plaintiff and the putative class members alike seek relief in connection with certain policies and practices of Defendants and are thus aligned in interest. Thierman Decl., ¶ 71. Plaintiff's counsel are well-situated to assume the responsibilities of Class Counsel because they are experienced employment and class action litigators who are fully qualified to pursue the interests of the Class. *Id*.

### 5. Rule 23(b)(3) —Predominance and Superiority

The predominance inquiry focuses on the relationship between the common and individual issues, testing whether the proposed classes are sufficiently cohesive to warrant adjudication by representation. *See Amchem Products, Inc.,* 521 U.S. at 623; *Beattie v. Century Tel, Inc*., 511 F.3d 554, 564 (6th Cir. 2007)*.* Plaintiff claims that several questions of law and fact are common to her claims and to those of the putative Class and provide a justification for handling the dispute on a representative rather than on an individual basis for settlement purposes. *See* Settlement Agreement ¶ 3. Class treatment is also the superior method for resolving all claims in this case because a class action would (1) accomplish judicial economy by avoiding multiple suits, and (2) protect the rights of persons who might not be able to present claims on an individual basis. *See generally Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345 (1983); *Beattie, supra*, 511 F.3d at 566-67. This is true in the settlement context because the Court need not consider the manageability (or lack thereof) of a trial.

Thus, Plaintiff contends adjudication (and resolution by virtue of the proposed Settlement) of these common issues, which Plaintiff claims represent significant aspects of this case, would serve to adjudicate (and resolve) substantially all of the issues affecting the entire Class. Thierman Decl., ¶ 71. Based on the foregoing, Plaintiff respectfully requests the Court conditionally certify the Class for settlement purposes.

## VII. CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the Class Action Settlement set forth more particularly in the Agreement; (2) certify the Class for Settlement purposes only; (3) approve the Notice of Proposed Class Action Settlement; (4) appoint Plaintiff Robertson as the Class Representative and preliminarily approve Class

/ / /

/ / /

/ / /

24

Representative's enhancement payment; (5) appoint Thierman Buck LLP as Lead Class Counsel and Cohelan Koury & Singer, The Markham Law Firm, Hamner Law Offices APC, and United Employees Law Group, P.C. as Class Counsel and preliminary approve Class Counsel's fees and costs; (6) appoint a Settlement Administrator; and (7) set the Final Fairness Hearing.

Dated:  April 30, 2020

Respectfully submitted,

By: */s/ Mark. R. Thierman*

Mark R. Thierman (CA State Bar No. 72913)
Joshua D. Buck (CA State Bar No. 258325)
**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
Telephone: (775)284-1500\ Facsimile: (775)703-5027

Isam C. Khoury (CA State Bar No. 58759)
Diana M. Khoury (CA State Bar No. 128643)
J. Jason Hill (CA State Bar No. 179630)
**COHELAN KHOURY & SINGER**
605 C Street, Suite 200
San Diego, CA 92101
Telephone: (619) 595-3001\Facsimile: (619) 595-3000

David R. Markham (CA State Bar No.  71814)
Maggie Realin (CA State Bar No. 263639)
**THE MARKHAM LAW FIRM**
750 B Street, Suite 1950
San Diego, CA 92101
Telephone: (619) 399-3995\Facsimile: (619) 615-2067

Christopher J. Hamner (CA State Bar No.  197117)
**HAMNER LAW OFFICES, APC**
5023 Parkway Calabasas
Calabasas, CA 91302-1421
Telephone: (818) 876-9631

Walter L. Haines (CA State Bar No. 71075)
**UNITED EMPLOYEES LAW GROUP, P.C.**
5500 Bolsa Avenue, Suite 201
Huntington Beach, CA 92649
Telephone: (310) 234-5678\Facsimile: (310) 652-2242

Attorneys for Plaintiff Khadijah Robertson