## UNITED STATES DISTRICT COURT
## WESTERN DIVISION OF KENTUCKY
## AT LOUISVILLE

| | |
|---|---|
| **IN RE: AMAZON.COM, INC., FULFILLMENT CENTER FOR FAIR LABOR STANDARDS ACT (FLSA) AND WAGE AND HOUR LITIGATION**<br><br>**This Document Relates to:**<br>***Saldana v. Amazon.com, LLC,***<br>**Case No. 14-CV-00290-DJH** | Master File No. 3:14-md-2504<br>MDL Docket No. 2504<br><br>JUDGE: HON. DAVID J. HALE |

## DECLARATION OF BRIAN KRIEGLER, PH.D.
## IN SUPPORT OF MOTION TO INTERVENE

### May 19, 2020

# Table of Contents

I.  **Introduction** ................................................................................1

    A. Summary of Opinions ........................................................ 2

        1. Summary of Potential Damages, Pre-Judgment Interest, and Derivative Penalties in Trevino ...................................................... 2

        2. Potential PAGA Penalties ............................................. 4

    B. Qualifications and Fee Statement....................................... 5

II.  **Proposed Class/Aggrieved Employee Definitions in *Trevino* that Pertain to Amazon's Security Check Process**......................6

    A. Class Definitions ............................................................. 6

    B. Definition of Alleged Aggrieved Employees ......................... 7

III.  **Understanding of Applicable Laws and Overview of Plaintiffs' Allegations in *Trevino* that Pertain to Amazon's Security Check Process** ..........................................................................7

    A. Alleged Compensable Time Off-the-Clock ........................... 7

        1. Understanding of California Law .................................... 7

        2. Understanding of Off-the-Clock Allegations in Trevino...................... 8

    B. Meal Periods.................................................................. 9

        1. Understanding of California Laws.................................. 9

        2. Understanding of Meal Period Allegations in Trevino ..................... 10

    C. Rest Periods ............................................................... 10



ii

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

     1.  Understanding of California Laws.................................................. 10

     2.  Understanding of Rest Period Allegations in Trevino....................... 11

  D.  § 203 Waiting Time Penalties ......................................................... 12

     1.  Understanding of California Laws.................................................. 12

     2.  Waiting Time Allegations in Trevino ............................................ 12

  E.  § 226 Wage Statement Penalties ..................................................... 12

     1.  Understanding of California Laws.................................................. 12

     2.  Wage Statement Allegations in Trevino ....................................... 12

**IV.  Data Analyzed to Date in _Trevino_ .........................................13**

  A.  Timekeeping Production ................................................................. 13

  B.  Payroll Production ......................................................................... 13

**V.  Calculations Used to Derive Potential Damages, Interest, Derivative Penalties, and PAGA Penalties in _Trevino_ ..............14**

  A.  The Estimated Number of Putative Class Members............................. 14

  B.  The Average Hourly Rates Per Employee.......................................... 15

  C.  The Estimated Numbers of Shifts Between July 12, 2013 and Present Day ............................................................................................. 15

  D.  The Estimated Numbers of Shifts Over 6.0 and of at Least 3.5 Hours.... 15

  E.  Pre-Judgment Interest Across the Putative Class ............................... 16

  F.  Calculations Related to Potential Liquidated Damages ........................ 17

     1.  The Estimated Number of Shifts On/After July 12, 2014 ................. 17

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

2.  The Average Hourly Rate Among Employees On/After July 12, 2014  17

G.  Calculations Related to § 203 Waiting Time Penalties ......................... 17

1.  The Estimated Number of Employees Terminated On/After July 12, 2014 ..................................................................................... 17

2.  The Estimated Average Daily Wage Among Persons Eligible for Waiting Time Penalties ............................................................ 18

H.  Calculations Related to PAGA and § 226 Wage Statement Penalties...... 18

VI.   **Potential Damages, Interest, and Penalties in** *Trevino*............**19**

VII.  **Concluding Remarks..............................................................20**

## LIST OF EXHIBITS

1 - Curriculum Vitae
2 - List of Proposed Classes in *Trevino v. Amazon*
3 - Formulas for Estimating Potential Principal Damages, Pre-Judgment Interest, Derivative Penalties, and PAGA Penalties
4 - Potential Damages, Pre-Judgment Interest, Derivative Penalties, and PAGA Penalties, July 12, 2013 through Present Day
    4A - Derivation of Potential Damages and Pre-Judgment Interest for Each Additional Compensable Minute Per Shift, July 12, 2013 through Present Day
    4B - Derivation of Potential Liquidated Damages for Each Additional Compensable Minute Per Shift, July 12, 2014 through Present Day
    4C - Derivation of Potential Damages and Pre-Judgment Interest for Potential Meal/Rest Premium Payments Owed, July 12, 2013 through Present Day
    4D - Potential Waiting Time Penalties For Persons Terminated On or After July 12, 2014
    4E - Potential Wage Statement Penalties, July 12, 2016 through Present Day
    4F - Potential PAGA Penalties, July 12, 2016 through Present Day



iv

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

5/19/2020

I, Brian Kriegler, declare:

# I.     Introduction

1.      I have personal knowledge of the facts set forth in this declaration except where otherwise specified. If called to testify to these facts as a witness in this action, I would so testify.

2.      I have been retained by the plaintiffs in *Juan Trevino, et al. v. Amazon Fulfillment Services, Inc., et al.* ("Amazon"), Case No. 1:18-cv-00120-DAD-BAM, pending in the United States District Court, Eastern District of California (hereinafter, "*Trevino*"). To date in *Trevino*, I have provided my analyses and opinions in: (i) a declaration in support of Plaintiffs' motion for class certification,[1] (ii) a reply declaration in support of Plaintiffs' motion for class certification,[2] (iii) a declaration in response to a Daubert motion,[3] and (iv) deposition.[4]

3.      My understanding is that this declaration is being submitted in support of a motion to intervene in *Saldana v. Amazon.com, LLC*, Case No. 14-CV-00290-DJH, pending in the United States District Court, Western Division of Kentucky at Louisville.

4.      The purpose of this declaration is to show calculations of potential damages, pre-judgment interest, derivative penalties, and PAGA penalties in *Trevino*.  Such calculations stem from Amazon's exit security check process as alleged in that case. To derive these dollar amounts, I have relied on Amazon's timekeeping and payroll records that were produced during discovery in *Trevino*.  I have also applied generally accepted methods for making projections and extrapolations.

---

[1] Declaration of Brian Kriegler, Ph.D., in Support of Plaintiffs' Motion for Class Certification, dated November 21, 2019.

[2] Reply Declaration of Brian Kriegler, Ph.D., in Support of Plaintiffs' Motion for Class Certification, dated January 30, 2020.

[3] Declaration of Brian Kriegler, Ph.D., in Opposition to Defendants' Notice of Motion and Motion to Exclude Plaintiffs' Expert Dr. Brian Kriegler, dated February 6, 2020.

[4] Videotaped Deposition of Brian Kriegler, Ph.D., December 18, 2019.



5.      Section I.A below includes several tables showing potential damages, interest, and penalties.  I provide my qualifications and fee statement in Section I.B.  Subsequent to Section I, this declaration is organized as follows: Section II covers proposed class definitions and defines alleged Aggrieved Employees.  Section III includes my understanding of the allegations in *Trevino*.  In Section IV, I describe the timekeeping and payroll data that I have analyzed.  In Section V, I describe many of the inputs that are used to calculate the potential damages, interest, and penalties reported herein.  Section VI introduces several exhibits showing the derivation of these calculations.  I offer concluding remarks in Section VII.

## A. Summary of Opinions

6.      The numbers herein are preliminary and potential for three chief reasons.  *First*, my analysis is based on timekeeping and payroll data for a random sample of 10 percent of putative class members in *Trevino* produced by Amazon.  *Second*, said sample of data is current only through mid-2018.  *Third*, my understanding is that *Trevino* is ongoing and that the Court has yet to issue a class certification order.

### 1. Summary of Potential Damages, Pre-Judgment Interest, and Derivative Penalties in Trevino

7.      **Table 1** below shows <u>aggregate</u> potential damages, pre-judgment interest, and derivative penalties in *Trevino*.  These estimates are shown through May 19, 2020.

Page 2

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

5/19/2020

| Table 1: Summary of Potential Classwide Damages, Interest, and Penalties in *Trevino* Through May 19, 2020 ||
| Description | Dollar Amount |
| --- | --- |
| *Unpaid Wages for Each Additional Minute of Compensable Time* | |
| Principal damages* | $4,870,976 |
| Pre-Judgment interest** | $1,166,112 |
| Liquidated damages*** | $3,832,004 |
| *Meal Premium Payments Owed for "Controlled" Meal Periods* | |
| Principal damages* | $200,917,727 |
| Pre-Judgment interest** | $48,099,704 |
| *Rest Premium Payments Owed for "Controlled" Rest Periods* | |
| Principal damages* | $223,480,940 |
| Pre-Judgment interest** | $53,501,337 |
| | |
| *California LC § 203 Penalties for Failure to Pay All Wages Upon Termination*** | $168,640,290 |
| *California LC § 226 Penalties for Failure to Issue Adequate Wage Statements**** | $122,196,500 |
| | |
| **Potential Recovery Across All Class Claims** | **$826,705,590** |
| | |
| * - Statute of limitation dates back to July 12, 2013. <br> ** - Computed at 7% simple per annum with an accrual date of May 19, 2020. <br> *** - Statute of limitation dates back to July 12, 2014. <br> **** - Statute of limitation dates back to July 12, 2016. ||

8.    **Table 2** below shows potential damages, pre-judgment interest, and derivative penalties <u>per average putative class member</u> in *Trevino*. Averages for unpaid wages and meal/rest damages are based on the numbers in Table 1 above divided by an estimated class size of 179,533 people. Average waiting time penalties under § 203 are based on the classwide average daily wage multiplied by 30 days. Average wage statement penalties under § 226 are based on the numbers in Table 1 divided by an estimated wage statement class of 72,520 people.

| Table 2: Summary of Potential Damages, Interest, and Penalties Per Putative Class Member in *Trevino* Through May 19, 2020 | |
| --- | --- |
| **Description** | **Dollar Amount** |
| | |
| *Unpaid Wages for Each Additional Minute of Compensable Time* | |
| Principal damages* | $27.13 |
| Pre-Judgment interest** | $6.50 |
| Liquidated damages*** | $21.34 |
| | |
| *Meal Premium Payments Owed for "Controlled" Meal Periods* | |
| Principal damages* | $1,119.11 |
| Pre-Judgment interest** | $267.92 |
| | |
| *Rest Premium Payments Owed for "Controlled" Rest Periods* | |
| Principal damages* | $1,244.79 |
| Pre-Judgment interest** | $298.00 |
| | |
| *California LC § 203 Penalties for Failure to Pay All Wages Upon Termination*** | $3,451.50 |
| *California LC § 226 Penalties for Failure to Issue Adequate Wage Statements***** | $1,685.00 |
| | |
| **Potential Recovery Per Person Across All Class Claims** | |
| **Putative Class Members Terminated On/After July 2014** | **$8,121.29** |
| **Putative Class Members Not Terminated On/After July 2014** | **$4,669.79** |
| | |
| * - Statute of limitation dates back to July 12, 2013. ** - Computed at 7% simple per annum with an accrual date of May 19, 2020. *** - Statute of limitation dates back to July 12, 2014. **** - Statute of limitation dates back to July 12, 2016. | |

## 2. Potential PAGA Penalties

9.      My understanding is that the plaintiffs in *Trevino* also are seeking penalties pursuant to California's Private Attorneys General Act (PAGA).  In that regard, I further understand that alleged "Aggrieved Employees" include all Amazon hourly employees in California between July 12, 2016 and Present Day ("PAGA Period").  Lastly, my understanding is that for employees at Amazon warehouses that used

Page 4

  *Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

metal detectors to conduct exit security checks, every employee pay period in which an employee had hours worked is potentially subject to a PAGA penalty.

10.     **Table 3** shows <u>aggregate</u> potential PAGA penalties in *Trevino*, subject to different dollar amounts.  These numbers are shown for the period July 12, 2016 through May 19, 2020.

| Table 3: Summary of Potential PAGA Penalties in *Trevino\**, July 12, 2016 through Present Day | |
| --- | --- |
| **Assumed Dollar Amounts Per Violative Employee Pay Period** | **Dollar Amount** |
| $100 per violation | $163,308,000 |
| $200 per violation | $326,616,000 |
| $250 per violation | $408,270,000 |
| * - Statute of limitation dates back to July 12, 2016. | |

11.     **Table 4** below shows PAGA Penalties per alleged Aggrieved Employee in *Trevino*. These calculations are derived using 25 percent of the numbers in Table 3 above and an estimated 72,520 alleged Aggrieved Employees.[5]

| Table 4: Summary of Potential PAGA Penalties Per Alleged Aggrieved Employee in *Trevino,\** July 12, 2016 through Present Day | |
| --- | --- |
| **Assumed Dollar Amounts Per Violative Employee Pay Period** | **Dollar Amount** |
| $100 per violation | $562.98 |
| $200 per violation | $1,125.95 |
| $250 per violation | $1,407.44 |
| * - Statute of limitation dates back to July 12, 2016. | |

## B.  Qualifications and Fee Statement

12.     I am a Managing Director at Econ One Research, Inc. ("Econ One"), an economic and statistical consulting firm with offices in Houston, Los Angeles, Memphis, New York, Sacramento, the San Francisco Bay Area, Washington, D.C, and India. I earned

---

[5] Under PAGA, my understanding is that 25 percent of penalties go to Aggrieved Employees and the remaining 75 percent goes to the State of California.

Page 5

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

my M.S. and Ph.D. in statistics from UCLA and my B.A. in mathematics/economics from Claremont McKenna College. I have published several articles in peer-reviewed journals on the use of sampling and statistical modeling.

13.     I have testified as an expert statistician in both State and Federal courts several dozen times, of which approximately half were in connection with wage and hour class actions.  I have been an invited speaker at numerous legal conferences, including the American Bar Association's Annual Labor and Employment Conference in 2017,[6] the California Employment Lawyers' Association Annual Conference in 2018,[7] and the ABA's Fair Labor Standards Legislation mid-winter meeting in 2020.[8]  A true and correct copy of my curriculum vitae, which includes my testimonial experience, is attached hereto as **Exhibit 1**.

14.     Econ One currently is being compensated for the time I spend on this matter at $415 per hour. Econ One is being compensated for the time spent by other Econ One employees on this project at their normal and customary hourly rates.

## II.     Proposed Class/Aggrieved Employee Definitions in *Trevino* that Pertain to Amazon's Security Check Process

### A. Class Definitions

15.     Attached hereto is **Exhibit 2**, which represents my understanding of the classes for which Plaintiffs seek certification in *Trevino*.  There are 11 proposed classes, of which the following 7 classes relate to Amazon's exit security check process:

- *Class 1* - Unpaid Wages Class (Hours Worked Claim Based on Control of Employees through Mandatory Exit Security Procedures)

- *Class 2* - Unpaid Wages Class (Controlled Meal Periods)

---

[6] "*Representative Evidence in Class Actions after Tyson Foods.*" With Ryan Haggerty, John Ho, Rachnana Srey, and Debra Nahrstadt. 2017 Annual ABA Labor and Employment Law Conference, Washington, DC.

[7] "An Analysis of California Employment-Related Arbitrations," with Genie Harrison and Cliff Palefsky. 31st Annual CELA Conference, San Diego, CA.

[8] "Arbitrating Individual FLSA Claims Under Compulsion," with Matthew Helland, Sally Abrahamson, Eric Su, and Sheri Eisner. 2020 ABA FLSL Midwinter Meeting, Los Cabos, MX.

Page 6

**econ ONE**
*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

- *Class 3* - Meal Period Violations for Controlled Meal Periods

- *Class 4* - Rest Period Violations for Controlled Rest Periods

- *Class 9* - Derivative Wage Statement Class

- *Class 10* - § 203 Class

- *Class 11* - UCL Class

### B. Definition of Alleged Aggrieved Employees

16.    Aggrieved employees include all employees who were subject to any of the violations alleged as to class members on or after July 12, 2016.

## III.   Understanding of Applicable Laws and Overview of Plaintiffs' Allegations in *Trevino* that Pertain to Amazon's Security Check Process

### A. Alleged Compensable Time Off-the-Clock

#### 1. Understanding of California Law

17.    I understand that employers generally are required to pay employees for all "hours worked"[9] and that "hours worked" includes "time during which an employee is subject to the control of an employer."[10] I further understand that this can include time spent before and after scheduled shift times.

---

[9] Wage Order No. 7 provides that "[e]very employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." (8 Cal. Code Regs. § 11070, subd. 4(B).)

[10] See IWC Wage Order 7, ¶2G ("'Hours worked' means the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."). URL: https://www.dir.ca.gov/iwc/wageorders2005/iwcarticle7.html.

Page 7

econ **ONE**

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

### 2. *Understanding of Off-the-Clock Allegations in Trevino*

18.     Plaintiffs contend that Amazon only paid the putative class for some, but not all, hours that they were under Amazon's control.  The basis for these allegations stems from three primary reasons:

   a.   *First*, at specific facilities, employees were required to go through a metal detector security check each time they exited.[11]  These security checks were performed after employees clocked out.[12]  Hereinafter I refer to said off-the-clock time as "Security Check Time." Additionally, I use the term "Facilities with Metal Detectors"[13] to refer to locations that utilize metal detectors during the security check process.

   b.   *Second*, at Facilities with Metal Detectors, employees allegedly clocked in/out at a location different (and on a different device) from where they swiped to enter/exit the facility.  The time spent after swiping in until clocking in at the time clock station was off-the-clock.  Likewise, the time spent after clocking out at the time clock station and swiping out to exit the facility was off-the-clock.  Hereinafter, the term "Controlled Pre/Post-Shift Time" refers to the entire time between the facility entrance/exit and the time clock station.  Controlled Pre/Post-Shift Time includes, but is not limited to, Security Check Time.

   c.   *Third,* at Facilities with Metal Detectors and as a result of the alleged mandatory security check process, Amazon allegedly retained "control" over the employees during meal periods inside the facility. Hereinafter, said time is referred to as "Controlled Meal Period Time."

---

[11] *See* Deposition of Cody Carr, dated October 25, 2019 ("Carr Depo."), at 16:6-15, 18:12-19:14.

Based on Mr. Carr's deposition testimony, at the outset I understand the 12 facilities with metal detectors at the security checkpoint to be as follows: LGB8, OAK3, OAK4, OAK6, ONT2, ONT3, ONT6, ONT8, ONT9, PCA1, SJC7, and SMF1. *See* Carr. Depo., at 35:19-36:3, 37:7-15, 37:21-38:14, 38:20-39:3, 39:16-25, 40:21-24, 41:2-7, 41:10-20, 41:23-42:13, and 42:24-43:22.

[12] *See* Carr Depo., at 71:11-72:19.

[13] My understanding is that there are **at least** 12 such facilities based on the testimony of Amazon's designated Rule 30(b)(6), as follows: LGB8, OAK3, OAK4, OAK6, ONT2, ONT3, ONT6, ONT8, ONT9, PCA1, SJC7, and SMF1.

Page 8

 *Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

19.     Thus at Facilities with Metal Detectors, the plaintiffs in *Trevino* allege that the following are compensable because they are under the control of the employer: (i) Controlled Pre/Post-Shift Time (which includes Security Check Time), and (ii) Controlled Meal Period Time.  Hereinafter the term "Combined Controlled Time" refers to the combination of Controlled Pre/Post-Shift Time and Controlled Meal Period Time.

### B. Meal Periods

#### 1. *Understanding of California Laws*

20.     **Table 5** below shows my understanding of the number of 30-minute duty free, uncontrolled, uninterrupted meal periods that California employers are required to provide to non-exempt employees each shift pursuant to the applicable Wage Order and the California Supreme Court's *Brinker* opinion.[14]

| Table 5: Number of Meal Periods Employer is Required to Provide to Each Putative Class Member on each Shift | |
| --- | --- |
| **Number of Hours in a Non-Exempt Employee's Shift** | **Number of Meal Periods Earned** |
| 5 hours or less | 0 |
| Over 5 hour and up to 10 hours | 1 |
| Over 10 and up to 15 hours | 2 |
| Over 15 and up to 20 hours | 3 |

21.     I further understand that when California non-exempt employees are not provided all of their timely 30-minute uninterrupted and uncontrolled meal breaks in a shift, they are owed one hour of pay at their regular rate of compensation (hereinafter "Meal Period Premium Payment").  By way of example, this means that the employee is

---

[14] "We conclude that, absent waiver, section 512 requires a first meal period no later than the end of an employee's fifth hour of work, and a second meal period no later than the end of an employee's 10th hour of work… [t]he statute requires a first meal period no later than the start of an employee's sixth hour of work…Accordingly, first meal periods must start after no more than five hours… [Section 512] require[s] a second meal period after no more than 10 hours of work in a day, *i.e.*, no later than what would be the start of the 11th hour of work..." *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal. 4th ("*Brinker*") at 1004, 1035, 1037-1039, 1041.

econ**ONE**

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

owed one hour of compensation--*i.e.*, a single Meal Period Premium Payment--under each of the following scenarios:

- The employee is under the employer's control for more than 6 hours and is not provided with any "uncontrolled" 30-minute meal periods.

- The employee is under the employer's control for more than 10 hours and is not provided with any "uncontrolled" 30-minute meal periods.

- The employee is under the employer's control for more than 10 hours, is provided with a 30-minute "uncontrolled" meal period within the first five hours but is not provided with an "uncontrolled" 30-minute second meal period within the first 10 hours.

### *2. Understanding of Meal Period Allegations in Trevino*

22.     At Facilities with Metal Detectors, I understand that the plaintiffs in *Trevino* allege that Amazon required all employees to undergo a security check before exiting at specific facilities in order to take an off-site meal break.[15]  Thus, Amazon allegedly retained "control" over the employees during meal periods inside the facility.  Plaintiffs contend that such policy/practice violated Amazon's obligation to provide "uncontrolled" meal periods.  Within this framework, Plaintiffs are seeking Meal Period Premium Payments for each shift in which at least one earned meal period was "controlled."

## C. Rest Periods

### *1. Understanding of California Laws*

23.     **Table 6** below shows the number of 10-minute uninterrupted and "uncontrolled" rest periods that California employers are required to authorize and permit non-exempt employees to take each shift, per my understanding of California law.[16]

---

[15] *See* Carr Depo., at 16:6-15, 18:12-19:14, and 24:5-25.

[16] "Employees are entitled to 10 minutes' rest for shifts from three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of more than 10 hours up to 14 hours, and so on." *Brinker* at 1020.

econONE

Page 10

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

| Table 6: Number of Rest Periods Employer is Required to Authorize and Permit to Each Putative Class Member on each Shift | |
| --- | --- |
| Number of Hours in a Non-Exempt Employee's Shift | Number of Rest Periods Earned |
| Under 3 hours, 30 minutes | 0 |
| Between 3 hours, 30 minutes and up to 6 hours | 1 |
| Over 6 hours and up to 10 hours | 2 |
| Over 10 hours and up to 14 hours | 3 |

24.     I understand that when non-exempt employees working in California are not authorized and permitted to take a paid and timely 10-minute, duty-free, "uncontrolled," and uninterrupted rest break when required by California law, they are owed one hour of pay at their regular rate of compensation (hereinafter, "Rest Period Premium Payment"). By way of example, this means that the employer owes the employee one hour of pay--*i.e.*, *a single* Rest Period Premium Payment--under each of the following scenarios:

- The employee is under the control of the employer for at least 3.5 hours but is not authorized/permitted to take an "uncontrolled" rest period

- The employee is under the control of the employer for more than 6.0 hours but is not authorized/permitted to take any "uncontrolled" rest periods

- The employee is under the control of the employer for more than 6.0 hours but is authorized/permitted to take only one "uncontrolled" rest period

- The employee is under the control of the employer for more than 10.0 hours but is authorized/permitted to take fewer than three "uncontrolled" rest periods

### 2. Understanding of Rest Period Allegations in Trevino

25.     At Facilities with Metal Detectors, I understand that Amazon required all employees to undergo a security check before exiting at specific facilities in order to take an off-

Page 11

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

site rest break.[17]  Thus, Amazon allegedly retained "control" over the employees during rest periods inside the facility.  The plaintiffs in *Trevino* contend that such policy/practice violated Amazon's obligation to authorize and permit "uncontrolled" rest breaks.

### D. § 203 Waiting Time Penalties

#### 1. *Understanding of California Laws*

26.   My understanding is that California law requires employers to pay all wages due to its employees within 72 hours of their final date of employment.  I further understand that former employees are owed up to 30 days of wages if some wages are unlawfully withheld.

#### 2. *Waiting Time Allegations in Trevino*

27.   I understand that the plaintiffs in *Trevino* allege that waiting time penalties are owed as a derivative claim to the extent that they prevail on claims pertaining to (i) unpaid wages and/or (ii) unpaid Meal/Rest Premium Payments.

### E. § 226 Wage Statement Penalties

#### 1. *Understanding of California Laws*

28.   My understanding is that California law requires that employers provide employees with wage statements containing specific information, including but not limited to hours worked and wages owed.  I further understand that penalties are owed for each instance in which this information is not accurately and sufficiently shown on a wage statement.

#### 2. *Wage Statement Allegations in Trevino*

29.   The plaintiffs in *Trevino* contend that wage statement penalties are owed to the extent they prevail on the claims pertaining to (i) unpaid wages and/or (ii) unpaid Meal/Rest Premium Payments.

---

[17] *See* Carr Depo., at 16:6-15, 18:12-19:14, and 24:5-25.

Page 12

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

## IV.   Data Analyzed to Date in *Trevino*

### A. Timekeeping Production

30.   Amazon's "Timekeeping Production" in *Trevino* consists of data for 7,718 employees. In that litigation, I understand that this purportedly comprised a random sample of 10 percent of putative class members through mid-2018.  I further understand that (i) all time clock stations are located inside the Amazon warehouses, and (ii) such locations are different than the security exit checkpoint(s).  In total, these data include 1,313,687 employee shifts for 7,715 employees spanning July 12, 2013 through July 1, 2018.[18]

31.   Within the Timekeeping Production, there are 7,373 employees who worked at one or more Facility with Metal Detectors.  These people had a total of 1,257,608 shifts at these facilities.  Section V below includes details about how I have estimated total numbers of employees and employee shifts through Present Day.

### B. Payroll Production

32.   Amazon's "Payroll Production" consists of earnings data for 7,726 putative class members in *Trevino v. Amazon*.[19]  With few exceptions, this data file includes information for the same set of employees as in the Timekeeping Production.  For each pay period and putative class member, the Payroll Production includes identification numbers, rates of pay, hours worked, and various categories of earnings. Across all putative class members, these data include 197,135 employee pay periods spanning the period from July 19, 2013 through June 29, 2018.

33.   Within the Payroll Production, there are 7,365 employees who worked at one or more Facilities with Metal Detectors.  They had a total of 183,245 employee pay periods.  Section V below includes details about how I have estimated total numbers of employees and employee pay periods through Present Day.

---

[18] I have excluded any "ambiguous" timekeeping records from my data analysis and calculations. Such records include shifts with inconsistent punch in and out times.  The excluded records account for less than 0.1 percent of all shifts.

[19] *See* TRE-AMA 001199-1200.

Page 13

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

## V.   Calculations Used to Derive Potential Damages, Interest, Derivative Penalties, and PAGA Penalties in *Trevino*

34.   This section includes details about certain calculations that serve as inputs for potential damages, interest, and penalties in *Trevino*.

### A. The Estimated Number of Putative Class Members

35.   The estimated number of putative class members is used to derive potential damages, interest, and penalties owed to each class member on average (*i.e.*, per capita).  At the outset, this number is estimated to be **179,533 people**.  This number is computed using five steps:

- *Step 1* - Identify the number of employees in the Timekeeping Production.  There are 7,715 people in Amazon's data between 7/12/2013 and 7/1/2018.

- *Step 2* - Identify the number of employees in the Timekeeping Production who worked at one or more Facility with Metal Detectors during the same time period.  There are 7,373 people meeting this condition.

- *Step 3* - Use Steps 1 and 2 to calculate the proportion of people at Amazon in California who worked at one or more Facility with Metal Detectors.  This is equal to 7,373 / 7,715 = 95.57 percent.

- *Step 4* - Identify the purported total number of employees at Amazon in California.  My understanding is that such number is approximately 187,855 for the period May 2013 to Present Day.[20]  Such date range aligns closely with the date range in *Trevino*.

- *Step 5* - Multiply the proportion in Step 3 by the number of people in Step 4.  This equals 95.57% x 187,855 = 179,533 people.

---

[20] Declaration of Mark R. Thierman in Support of Preliminary Approval of Class Action Settlement, dated April 30, 2020 (Dkt. 265-2), ¶ 48 ("The number of Post-May 2013 Subclass Member shall be determined by reference to Defendants' records but is currently estimated to be 187,855 persons.").

Page 14

econ **O N E**

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

## B. The Average Hourly Rates Per Employee

36.    The average hourly rate in the Payroll Production from July 19, 2013 through June 29, 2018 is used to derive unpaid wages for alleged Combined Controlled Time. Based on the Payroll Production, this average hourly rate is **$13.17**.

## C. The Estimated Numbers of Shifts Between July 12, 2013 and Present Day

37.    Shift counts qualifying for straight time, overtime, and double time are used to derive potential unpaid wages for each additional minute of Combined Controlled Time. Of the 1,257,608 shifts in the Timekeeping Production, 555,718 shifts are under 10 hours qualifying for straight time, 700,543 shifts are at least 10 and less than 12 hours qualifying for daily overtime, and 1,347 shifts are at least 12 hours qualifying for double time. Given that the data production in *Trevino* constitutes a 10 percent sample through July 1, 2018, it follows the estimated numbers of shifts during this date range are multiplied by 10.

38.    Additionally, my understanding is that the *Trevino* case is ongoing such that the relevant date range extends to Present Day. As of the date of this report, the relevant date range has increased 37.9 percent.[21] Thus at the outset, the estimated numbers of employee shifts between July 12, 2013 through May 19, 2020 are equal to the following:

- 555,718 x 10 x (1 + 0.379) = **7,663,351 straight time shifts**

- 700,543 x 10 x (1 + 0.379) = **9,660,488 daily overtime shifts**

- 1,347 x 10 x (1 + 0.379) = **18,575 daily double time shifts**

## D. The Estimated Numbers of Shifts Over 6.0 and of at Least 3.5 Hours

39.    Shift counts over 6.0 and of at least 3.5 hours are used to derive potential meal/rest period damages. Of the 1,257,608 shifts in the Timekeeping Production, 1,126,031 were over 6.0 hours qualifying for one meal period, and 1,230,525 were at least 3.5

---

[21] There are 1,816 days between July 12, 2013 and July 1, 2018. There are 688 days between July 2, 2018 and May 19, 2020. 688 / 1,816 = 37.9 percent.

Page 15

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

hours qualifying for one rest period.  As of the date of this report, the relevant date range has increased 37.9 percent.[22]  Thus, among all putative class members in *Trevino* between July 12, 2013 and May 19, 2020, there are:

1,126,031 x 10 x (1 + 0.379) = **15,527,967 employee shifts over 6.0 hours,**[23] and

1,230,525 x 10 x (1 + 0.379) = **16,968,940 employee shifts of at least 3.5 hours**.[24]

### E.  Pre-Judgment Interest Across the Putative Class

40.   A pre-judgment interest rate is applied to unpaid wages for alleged (i) Combined Controlled Time (ii) Meal/Rest Premium Payments owed.  Plaintiffs' counsel in *Trevino* has asked me to calculate potential pre-judgment interest at 7 percent simple per annum.  For example, interest is equal to 35 percent on alleged damages from 5 years ago (5 x 7%).  Interest is equal to 14 percent on alleged damages from 2 years ago (2 x 7%).

41.   As of the date of this declaration, the *Trevino* class period includes pay periods between July 19, 2013 and May 19, 2020.  The "midpoint" of this date range is 3.42 years ago (December 18, 2016).  Therefore, estimated pre-judgment interest on average is the following:

7% x 3.42 years on average = **23.94%.**

---

[22] *See* ¶ 38 and fn. 21 above.

[23] Potential meal period damages are offset by 19,743 Meal Premium Payments in the Payroll Production. Extrapolated to the class period to Present Day, there are an estimated total of 19,743 x 10 x (1 + 0.379) = 272,256 Meal Premium Payments.  Thus, meal period damages are computed based on a "net" difference of 15,527,967 - 272,256 = 15,255,711 shifts in which a Meal Premium Payment is allegedly owed.

[24] There do not appear to be any Rest Premium Payments in the Payroll Production.  Therefore, a Rest Premium Payment allegedly is owed for each shift of at least 3.5 hours.

Page 16

 *Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

### F.  Calculations Related to Potential Liquidated Damages

42.     Estimates for the number of shifts and average hourly rate on/after July 12, 2014 are
        used to calculate potential liquidated damages.  The derivation of each number is
        described in this section.

#### 1.  The Estimated Number of Shifts On/After July 12, 2014

43.     Between July 12, 2014 and July 1, 2018 (i.e., 3.97 years), there are 1,184,388 shifts in
        the Timekeeping Production.  Since the end of the Timekeeping Production, the
        relevant date range for liquidated damages extended to Present Day and increased
        47.4 percent.[25]  Thus at the outset, the estimated number of employee shifts between
        July 12, 2014 through May 19, 2020 is equal to the following:

$$1,184,388 \text{ x } 10 \text{ x } (1 + 0.474) = \textbf{17,457,879 employee shifts.}$$

#### 2.  The Average Hourly Rate Among Employees On/After July 12, 2014

44.     Based on the Payroll Production, this average hourly rate between July 12, 2014 and
        July 1, 2018 is **$13.17**.

### G. Calculations Related to § 203 Waiting Time Penalties

45.     Estimates for the number of employees terminated after July 12, 2014 and their
        average daily wage are used to calculate § 203 waiting time penalties.  The derivation
        for each number is described in this section.

#### 1.  The Estimated Number of Employees Terminated On/After July 12, 2014

46.     The Timekeeping and Payroll Productions collectively include 4,886 putative class
        members who (i) had hours worked at one or more Facilities with Metal Detectors on
        or after July 12, 2014, and (ii) did not appear to have any hours worked or earnings
        on or after May 1, 2018 (i.e., approximately 2 months before the end of data
        production).  Given that the data production constituted a 10 percent sample of

---

[25] There are 1,451 days between July 12, 2014 and July 1, 2018.  There are 688 days between July 2, 2018 and
May 19, 2020.  688 / 1,451 = 47.4 percent.

Page 17



*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

5/19/2020

putative class members, it follows that the estimated number of likely former employees as of mid-2018 is **48,860** (*i.e.*, 10 x 4,886).[26]

### 2. The Estimated Average Daily Wage Among Persons Eligible for Waiting Time Penalties

47.    The average daily wage for terminated employees is derived using four steps:

- *Step 1* - Restrict Timekeeping and Payroll Productions to the time period July 12, 2014 through July 1, 2018 and to the 4,886 people described in paragraph 46 above.

- *Step 2* - Among the people and during the time period described in Step 1, compute the average shift length according to the Timekeeping Production. This is equal to 8.96 hours

- *Step 3* - Among the people and during the time period described in Step 1, compute the average base rate according to the Payroll Production. This is equal to $12.84.

- *Step 4* - Multiply the numbers obtained in Steps 2 and 3 to get the average daily wage. This is equal to 8.96 x $12.84 = **$115.05**.

### H. Calculations Related to PAGA and § 226 Wage Statement Penalties

48.    My understanding is that the relevant date range for PAGA and § 226 penalties is July 12, 2016 to Present Day. Collectively, there are two data inputs for these penalties: (i) the number of employees, and (ii) the number of pay periods per employee.

49.    Six steps are used to derive the potential number of employee pay periods that are subject to § 226 and PAGA penalties from July 12, 2016 to Present Day:

- *Step 1* - Calculate the length of the relevant date range. This equals 3.85 years.

- *Step 2* - Identify the date that is 3.85 years prior to the last date in Amazon's data production. Such date is August 23, 2014.

---

[26] This classwide total almost surely is understated because it does not include any employees who were terminated after July 1, 2018.

Page 18

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

- *Step 3* - Count the number of employees between August 23, 2014 and July 1, 2018.  There are 7,252 such employees.

- *Step 4* - Multiply the number of employees in Step 3 by 10 because the data production in *Trevino* constitutes a 10 percent sample.  This represents the estimated number of persons potentially qualifying for PAGA and § 226 penalties.  This equals **72,520 people**.

- Step 5 - Calculate the number of employee pay periods for the 7,252 people in Step 3.  There are 163,308 such employee pay periods.

- *Step 6* - Multiply the number of employee pay periods in Step 5 by 10 because the data production in *Trevino* constitutes a 10 percent sample.  This represents the estimated number of employee pay periods subject to PAGA penalties.  Thus, the estimated number of employee pay periods is **1,633,080**.

Two additional steps are used to derive potential § 226 wage statement penalties per average class member.

- *Step 7* - Calculate potential § 226 penalties for each of the 7,252 employees in Step 3.  These are equal to $4,000 if they have 41+ wage statements.  Otherwise, they are equal to $50 + $100 x (# of wage statements - 1) such that the dollar amount does not exceed $4,000.[27]

- *Step 8* - Use Steps 3 and 7 to estimate the average § 226 penalties per person.  This equals **$1,685.00 per putative class member.**

## VI.   Potential Damages, Interest, and Penalties in *Trevino*

50.   **Exhibit 3** includes the formulas that I have used to calculate potential unpaid wages, pre-judgment interest, liquidated damages, derivative penalties, and PAGA penalties.

51.   **Exhibit 4** collectively shows the derivation of potential principal damages, pre-judgment interest, derivative penalties, and PAGA penalties.  Dollar amounts are

---

[27] If an employee has 40 wage statements qualifying for § 226 penalties, then the calculation is $50 + $100 x (40 - 1) = $3,950.

Page 19

econ**ONE**

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

listed as estimated totals and per "average" putative class member/alleged Aggrieved Employee. There are six sub-exhibits, as follows:

- **Exhibit 4A** shows potential damages and pre-judgment interest for each additional minute of Combined Controlled Time, *i.e.*, compensable time off-the-clock.

- **Exhibit 4B** shows potential liquidated damages for each additional minute of Combined Controlled Time.

- **Exhibit 4C** shows potential damages and pre-judgment interest for potential meal/rest period violations.

- **Exhibit 4D** shows potential derivative penalties under § 203.

- **Exhibit 4E** shows potential derivative penalties under § 226.

- **Exhibit 4F** shows potential PAGA penalties.

## VII.  Concluding Remarks

52.   Potential damages, interest, and penalties are calculated using a combination of (i) my understanding of the allegations in *Trevino* and (ii) Amazon's historical data. I have also utilized widely accepted methods for statistical extrapolation when working with a subset of all possible records. The numbers reported herein are preliminary given the facts that (i) the Timekeeping and Payroll Productions pertained to a random sample of putative class members through mid-2018, (ii) the putative class period in *Trevino* is ongoing, and (iii) the *Trevino* case is ongoing.

53.   The computational programs used to derive the numbers herein are available upon request. Should additional, pertinent information become available to me, I am amenable to incorporating it into my future calculations and opinions.

Page 20

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

5/19/2020

I declare the foregoing to be true under penalty of perjury of the laws of the United States of America.  Executed this 19th day of May, 2020, at Los Angeles, California.

Brian Kriegler, Ph.D.
May 19, 2020

Page 21

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

# EXHIBIT

# 1

**DR. BRIAN KRIEGLER**
*Managing Director*
**Los Angeles, California**
**Tel: 213 624 9600**
**Email:**
**bkriegler@econone.com**



**Brian Kriegler** is a Managing Director at Econ One Research in Los Angeles, California.  He earned his M.S. and Ph.D. in statistics from UCLA, and he earned his B.A. in mathematics/economics from Claremont McKenna College. He has published several articles in peer-reviewed journals on the use of sampling and statistical modeling.  To date, he has also contributed eight articles to Law360.

Dr. Kriegler has testified as an expert statistician in both State and Federal courts several dozen times, of which approximately half were in connection with wage and hour class actions.  He has also testified in the areas of civil rights, consumer claims, and Medicare fraud.  Dr. Kriegler has been an invited speaker in multiple panels, including at the ABA's Annual Labor and Employment Conference in 2017, the FLSL Midwinter Meeting in 2020, and the Annual Conference for the California Employment Lawyers Association in 2018.

Noteworthy cases in which Courts have relied directly on Dr. Kriegler's analysis/opinions include:

- *Alberts v. Aurora -* Employees alleged missed meal/rest periods and off-the-clock work

- *Senne v. Major League Baseball -* Minor league baseball players alleged minimum wage and overtime violations

- *Benton v. TNS -* Cell phone tower installers alleged underpaid overtime and missed meal/rest periods

- *Hamilton v. Walmart -* Fulfillment center employees alleged underpaid overtime and non-compliant meal periods

- *Magadia v. Walmart -* California nonexempt employees alleged various wage statement violations

- *Espinoza v. East West Bank -* Plaintiff and the putative class alleged they were misclassified as salary exempt employees

**DR. BRIAN KRIEGLER**
***Managing Director***

## EDUCATION

Ph.D., Statistics, University of California, Los Angeles
M.S., Statistics, University of California, Los Angeles
B.A., Mathematics-Economics, Claremont McKenna College

## WORK EXPERIENCE

*Econ One Research, Inc.*
Managing Director, January 2015 to Present
Statistician, August 2008 - December 2014

*Claremont McKenna College (Silicon Valley Program)*, Guest Lecturer
Econ 123, Quantitative Data Analysis, *March 2016*
Econ 123, Quantitative Data Analysis, *October 2015*

*University of Pennsylvania Department of Statistics,* Post Doctoral
Researcher, 2007 - 2008

*UCLA Department of Statistics,* Lecturer
Statistics 10, Introduction to Statistical Reasoning, Winter 2008
Statistics 130B, Statistical Analysis with SAS, Summer 2007

*Self-Employed*, Statistical Consultant*,* 2004 - 2008

*Claremont McKenna College Reed Institute for Applied Statistics,* Post
Doctoral Researcher, 2007

*RAND Corporation,* Summer Associate*,* 2006

*UCLA Department of Statistics,* Graduate Student Researcher*,*
2004 - 2006

*UCLA Department of Statistics,* Technology Teaching Assistant
Coordinator, 2004 - 2005

*Lockheed Martin Missiles and Space,* Associate Reliability Engineer,
2001 - 2003

## INVITED PRESENTATIONS

"Arbitrating Individual FLSA Claims Under Compulsion," with Matthew
Helland, Sally Abrahamson, Eric Su, and Sheri Eisner. 2020 ABA
FLSL Midwinter Meeting, Los Cabos, MX.

"An Analysis of California Employment-Related Arbitrations," with Genie
Harrison and Cliff Palefsky. 31st Annual CELA Conference, San
Diego, CA.

**DR. BRIAN KRIEGLER**
*Managing Director*

"*Representative Evidence in Class Actions after Tyson Foods.*" With Ryan
Haggerty, John Ho, Rachhana Srey, and Debra Nahrstadt. 2017
Annual ABA Labor and Employment Law Conference,
Washington, DC.

"*Effective Use of Statistical Evidence in Employment Class Action
Litigation: Practical Guide in 2017.*" Webinar presentation through
The Knowledge Group with Eric Savage, Dubravka Tosic, Ph.D.,
and Paul White, Ph.D.

"*Counting the Homeless in Los Angeles County.*" Joint Statistical
Meetings, Seattle, WA, August 2006.

"*A Southpaw Secret: Are Their Salaries Consistent with Their
Contributions to Team Performance*?" Claremont McKenna
College, Claremont, CA, March 2002.

"*Mixing Component and System Data in Reliability Assessment.*" United
States Navy Complex, Washington, DC, July 2001.

## PUBLISHED ARTICLES & PAPERS

*"An Exploration and Validation of Confidence Intervals."* Law360
(July 15, 2019).

*"Practitioner's Guide to Stratified Random Sampling."* Law360
(Nov 30-Dec 3, 2018).
Part 1: Four Reasons to Select a Stratified Random Sample
Part 2: Three Misconceptions About Stratified Random Sampling

*"Practitioner's Guide to Statistical Sampling."* Law360 (Jan 8-11, 2018).
*Part 1*: Validating Random Sampling and the Central Limit Theorem
*Part 2*: Resampling and Bootstrapping: A Method for Determining
Confidence Intervals from Small Datasets
*Part 3*: Making Valid Statistical Inferences When Sample Selections
Are Missing
*Part 4*: Three Myths About Random Sampling Requirements

*"Delving Deeper Into Duran."* Law360 (Oct 1, 2014)*.*

*"Small Area Estimation of the Homeless Population in Los Angeles
County: An Application of Cost-Sensitive Stochastic Gradient
Boosting,"* Annals of Applied Statistics. Vol. 4 (3), 1234-1255, with
Berk, R. (2010).

*"Counting the Homeless in Los Angeles County."* IMS Collections.
Probability and Statistics: Essays in Honor of David A. Freedman,
Vol. 2. 127-141, with Berk, R. and Ylvisaker, D. (2008).

**DR. BRIAN KRIEGLER**
*Managing Director*

*"Cost-Sensitive Stochastic Gradient Boosting Within a Quantitative Regression Framework,"* Ph.D. Dissertation, Committee Chair: Richard Berk. Portions of this research have been implemented into the "gbm" library in R (open source statistical software) available at www.r-project.org (2007).

*"Forecasting Dangerous Inmate Misconduct: An Application of Ensemble Statistical Procedures."* Journal of Quantitative Criminology, 22(2). 131-145, with Berk, R. and Baek, J.H. (2006).

*"Comparison of Achievement of 8th Graders Who Used the MathScape Curriculum to Those Who Used a More Traditional Curriculum,"* Creative Publications (2001).

*"Estimation of Component and System Reliabilities Using Binomial and Exponential Data and Various Test Methods,"* Undergraduate Senior Thesis, Chair: Janet Myhre (2001).

## REPRESENTATIVE ENGAGEMENTS

### Employment

Minimum wage and underpaid overtime
   *Senne v. Major League Baseball* - To date, retained by the plaintiffs to propose a method for estimating hours worked and calculating damages. Analyzed employee transactional/payroll data, Google Maps, and the Minor League Baseball website to "re-create" minor league baseball players' workdays. Case is pending.

Missed breaks and off-the-clock work
   *Alberts v. Aurora* - To date, retained by the plaintiffs to (i) analyze historical timekeeping and payroll records, along with survey data, and (ii) propose damages model at trial.  Case is pending.

Missed breaks and underpaid overtime
   *Benton v. Telecom Network Specialists* - To date, retained by the plaintiffs to (i) analyze historical timekeeping and payroll records from numerous staffing companies, and (ii) calculate classwide damages.  Case is pending.

   *DLSE v. Adat Shalom Board and Care* - Retained by the defendant to evaluate the sampling design carried out by the DLSE.  Case is pending.

Regular rate
   *Magadia v. Walmart* - Retained by the plaintiffs to analyze payroll and bonus data.  Calculated penalties stemming from various wage statement violations.

**DR. BRIAN KRIEGLER**
*Managing Director*

<u>Non-compliant breaks and underpaid overtime</u>
*Hamilton v. Walmart* - Retained by the plaintiffs to analyze timekeeping data, payroll data, and security camera footage.  Calculated damages and penalties stemming from various wage and hour violations.

<u>Missed breaks, underpaid overtime, and off-the-clock work</u>
*Landon Fulmer v. Golden State Drilling* - Retained by the plaintiffs to calculate classwide damages using class member deposition testimony, timekeeping, and payroll records.

<u>Misclassification</u>
*Boyd v. Landsafe* - Retained by the plaintiffs to calculate classwide damages using survey data, activity logs, and payroll records.  Also worked with survey experts to design and implement a questionnaire to estimate hours worked.

*Espinoza v. East West Bank* - Retained by the defense to evaluate declarations and deposition testimony of potential class members prior to class certification.  Opined on Plaintiffs' experts' approach regarding the proposed use of surveying and sampling.

<u>Seating</u>
*Lampkins v. Chase Bank* - Retained by the plaintiff to analyze the length of time between transaction, the frequency of various types of transactions, and timekeeping data.

<u>Discrimination</u>
*Capen v. Temecula Preparatory School* - Retained by the plaintiff to conduct a statistical analysis of hiring and terminating practices at a charter school.

*Horvath v. Western Refining* - In a single plaintiff age discrimination case, conducted a statistical analysis of hiring and terminating practices at a logistics company.

<u>Compliance audit</u>
In the context of a pending class action, retained by a large restaurant chain to estimate how long various job activities took to complete.  Worked with restaurant industry expert to develop a survey of kitchen managers.

**Civil Rights**

<u>Over-detention and strip searches</u>
*Barnes v. District of Columbia* - Retained by the plaintiffs to analyze inmate databases and to identify potentially impacted individuals.  Also constructed a sampling design for selecting inmate files, and subsequently extrapolated the number of over-detentions and number of post-release strip-searched inmates based on a criminal justice expert's analysis of the sample.

**DR. BRIAN KRIEGLER**
*Managing Director*

Strip searches
*Craft v. San Bernardino* - Retained by the plaintiffs to analyze large
databases to identify inmates who were subjected to strip searches (i)
prior to their arraignment, (ii) after being ordered released, and/or (iii) in
large groups.  Collaborated with system administrators and officers from
the law enforcement agency to construct criteria for identifying class
members.

**False Claims Act**

Medicare reimbursements, disgorgement
Retained by the relator, who alleged that a pharmaceutical company
offered illegal kickbacks to doctors for prescribing specific drugs and
inflated revenue for the pharmaceutical company.  Constructed damages
model that was used for settlement proceedings.

Medicare reimbursements
*U.S. ex rel. Carlo Santa Ana v. Winter Park Urology* - Retained by the
relator, who alleged that the medical provider submitted improperly up-
coded Medicare claims. Extrapolated damages based on a random
sample of patients' data.

**Antitrust**

Large transactional data analysis
*Marchbanks v. Comdata* - In a consulting role to the testifying expert to
manage approximately one billion proprietary debit card transactions.
Collaborated with class administrator to locate class members and
calculate damages for settlement purposes.

**Breach of Contract**

Unjust enrichment
*McAllister v. St. Louis Rams* - Retained by the plaintiff, who alleged that
season ticket holders were entitled to a refund for their personalized
seating license.  Developed a damages model and sampling methodology.

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| **Employment** | | | | | |
| 1. Richard Fairfield v. Advantage Rent-A-Car | Superior Court of the State of California, for the County of Los Angeles | BC342461 | Declaration Declaration Declaration Deposition Supplemental Declaration | December 2006 February 2007 March 2007 March 2007 May 2007 | Plaintiff |
| 2. Elveta Louise Francis v. State of California Department of Corrections | Superior Court of the State of California, for the County of Los Angeles | BC302856 | Declaration Declaration | January 2007 May 2010 | Plaintiff |
| 3. David Lubocki v. ZipRealty, Inc. | U.S. District Court, Central District of California | CV 07 2959 SJO (JCx) | Declaration | September 2007 | Plaintiff |
| 4. Eric Moore v. Roadway Express, Inc. et al. | U.S. District Court, Central District of California | 2:09-CV-01588 RBL (Opx) | Declaration | May 2010 | Plaintiff |
| 5. Maria Martinez. v. Jatco, Inc. | Superior Court of the State of California, for the County of Alameda | RG08397316 | Deposition Trial | September 2011 December 2011 | Defendant |
| 6. Valerie Alberts v. Aurora Behavioral Health Care | Superior Court of the State of California, for the County of Los Angeles | BC419340 | Declaration Deposition Deposition Supplemental Declaration Declaration Deposition Reply Declaration | May 2012 July 2012 October 2012 April 2013  December 2017 February 2018 April 2018 | Plaintiff |

Econ One Research, Inc.
Los Angeles, California

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 7.   Patrick Santiago v. Amdocs, Inc. | U.S. District Court, Northern District of California | 3:10-CV-04317 SI | Declaration Deposition | April 2013 May 2013 | Plaintiff |
| 8.   Christina Espinoza v. East West Bank | Superior Court of the State of California, for the County of Los Angeles | BC502166 | Declaration Deposition | November 2014 February 2015 | Defendant |
| 9.   Crystal Brock v. Living Spaces Furniture; and Ronald Monroe v. Living Spaces Furniture | Superior Court of the State of California, for the County of Los Angeles | BC498415 / BC521299 | Declaration | December 2014 | Plaintiff |
| 10.   Marie Minns, Kemberly Briggs v. Advanced Clinical Employment Staffing LLC, et al. | U.S. District Court, Northern District of California | 3:13-03249-SI | Declaration Supplemental Declaration | February 2015 March 2015 | Plaintiff |
| 11.   Kimberly Murphy v. CVS Caremark Corporation, et al. | Superior Court of the State of California, for the County of Los Angeles | BC464785 | Declaration Deposition | March 2015 April 2015 | Plaintiff |

Econ One Research, Inc.
Los Angeles, California

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 12. Lorenzo Benton v. Telecom Network Specialists | Superior Court of California, for the County of Los Angeles | BC354230 | Declaration Deposition Declaration Supplemental Declaration Supplemental Declaration Supplemental Declaration Reply Declaration Declaration Deposition Trial | March 2015 May 2015 July 2017 November 2017 March 2018 April 2018 August 2018 August 2019 August 2019 January 2020 | Plaintiff |
| 13. Connie Capen v. Temecula Preparatory School, et al. | Superior Court for the State of California, for the County of Riverside | MCC 1300098 | Declaration | April 2015 | Plaintiff |
| 14. Terry P. Boyd v. LandSafe, et al. | U.S. District Court, Central District of California | SA13-CV-00561 DOC (JPRx) | Expert Report | July 2015 | Plaintiff |
| 15. Valerie Horvath v. Western Refining Wholesale | Superior Court for the State of California, for the County of San Bernardino | CIVDS1311846 | Declaration Deposition | November 2015 January 2016 | Plaintiff |
| 16. David Kaanaana v. Barrett Business Services, Inc., et al. | Superior Court for the State of California, for the County of Los Angeles | BC496090 | Deposition Declaration Trial | December 2015 January 2016 February 2016 | Plaintiff |

Econ One Research, Inc.
Los Angeles, California

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 17. James Cole v. CRST, Inc. | U.S. District Court, Central District of California | EDCV 08-1570-VAP(SPx) | Declaration Deposition Expert Report Declaration | January 2016 February 2016 December 2016 February 2017 | Plaintiff |
| 18. Christopher Williams v. Allstate Insurance Company | Superior Court for the State of California, for the County of Los Angeles | BC382577 | Declaration | March 2016 | Plaintiff |
| 19. Larry Loffredo v. Astro Spar, Inc. | Superior Court for the State of California, for the County of Los Angeles | BC559611 | Declaration Deposition | March 2016 April 2016 | Plaintiff |
| 20. Aaron Senne v. Office of the Commissioner of Baseball, et al. | U.S. District Court, Northern District of California | 3:14-CV-00608-JCS / 3:14-CV-03289-JCS | Declaration Declaration Supplemental Declaration Expert Report Rebuttal Declaration | March 2016 April 2016 April 2016 August 2016 October 2016 | Plaintiff |
| 21. Annette Blackwell v. Steve's Plating Corporation | Superior Court for the State of California, for the County of Los Angeles | BC531129 | Deposition | March 2016 | Defendant |

Econ One Research, Inc.
Los Angeles, California

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 22. Bertha Sanchez v. St. Mary Medical Center | Superior Court for the State of California, for the County of San Bernardino | CIVDS 1304898 | Declaration Deposition Rebuttal Declaration Rebuttal Declaration Deposition Declaration | April 2016 May 2016 July 2016 April 2018 April 2018 May 2018 | Plaintiff |
| 23. Antoaneta Vatraleva v. Sears, Robuck & Co. | Superior Court for the State of California, for the County of Los Angeles | BC515650 | Declaration | August 2016 | Plaintiff |
| 24. Donald Harrington v. Marten Transport | U.S. District Court, Central District of California | 15-CV-01419-MWF-ASx | Declaration | October 2016 | Plaintiff |
| 25. Roderick Wright v. Renzenberger, Inc. | U.S. District Court, Central District of California | 2:13-CV-06642-FMO-AGR | Expert Report | April 2017 | Plaintiff |
| 26. Holly Attia v. The Neiman Marcus Group, Inc. | U.S. District Court, Central District of California | 8:16-CV-00504 DOC (FFM) | Declaration | April 2017 | Plaintiff |
| 27. Clayton Dezan v. Dignity Health | Superior Court for the State of California, for the County of San Bernardino | CIVDS1516658 | Declaration Deposition Rebuttal Declaration Declaration | April 2017 June 2017 September 2017 August 2019 | Plaintiff |

Econ One Research, Inc.
Los Angeles, California

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|---|
| 28. | Darel D. Woods v. JFK Memorial Hospital, Inc. | Superior Court for the State of California, for the County of Riverside | INC 1205209 | Declaration Deposition Rebuttal Declaration Supplemental Declaration Declaration | May 2017 August 2017 December 2017 June 2018 August 2019 | Plaintiff |
| 29. | Isaac Rodriguez v. Nike Retail Services, Inc. | U.S. District Court, Northern District of California | 5:14-CV-1508 BLF | Declaration Deposition Supplemental Declaration | June 2017 June 2017 August 2017 | Plaintiff |
| 30. | Eric Chavez v. Converse, Inc. | U.S. District Court, Northern District of California | 15-CV-03746 NC | Declaration Expert Report Declaration Deposition Supplemental Declaration | June 2017 September 2017 September 2017 September 2017 September 2017 | Plaintiff |
| 31. | Segundina Morin v. Physicians' Surgery Center of Downey, Inc. | Superior Court of California, for the County of Los Angeles | BC625567 | Deposition | July 2017 | Plaintiff |
| 32. | Amber Stewart v. Hat World, Inc. | Superior Court of the California, for the County of San Mateo | CIV 533617 | Declaration Declaration Expert Report Supplemental Expert Report | August 2017 April 2018 January 2019 February 2019 | Plaintiff |

Econ One Research, Inc.
Los Angeles, California

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 33. Safeway Wage and Hour Cases | Superior Court of the State of California, for the County of Los Angeles | JCCP 4772 | Rebuttal Declaration Deposition | August 2017 September 2017 | Plaintiff |
| 34. Robyn James and Tiffany Belle v. American Corporate Security, Inc. | Superior Court of the State of California, for the County of Los Angeles | BC525388 | Declaration | August 2017 | Plaintiff |
| 35. Janae Brown v. Blazin' Wings, Inc | Superior Court of the State of California, for the County of Los Angeles | BC620185 | Declaration Declaration Declaration | October 2017 July 2018 March 2019 | Plaintiff |
| 36. Ta'quonna Lampkins et al. v. JP Morgan Chase Bank | U.S. District Court, Central District of California | 11-CV-03428-PSG (PLAx) | Expert Report Supplemental Expert Report Expert Report Errata Supplemental Expert Report Errata Deposition | February 2018 March 2018 March 2018 March 2018 March 2018 | Plaintiff |
| 37. Juan Garcia v. Walmart Stores, Inc. | U.S. District Court, Central District of California | 5:16-CV-01645 TJH (RAOx) | Declaration Reply Declaration Expert Report Deposition Reply Expert Report | February 2018 May 2018 April 2019 April 2019 June 2019 | Plaintiff |

Econ One Research, Inc.
Los Angeles, California

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 38. Landon Fulmer, Jr. v. Golden State Drilling | Superior Court of the State of California, for the County of Kern | S-1500-CV-279707 | Deposition | April 2018 | Plaintiff |
| 39. Emmy Song v. THC-Orange County | U.S. District Court, Central District of California | 8:17-cv-00965-JLS-DFMx | Declaration Deposition | April 2018 May 2018 | Plaintiff |
| 40. Chelsea Hamilton v. Walmart Stores, Inc. | U.S. District Court, Central District of California | 5:17-CV-01415 | Declaration Deposition Reply Declaration Declaration Expert Report Supplemental Expert Report Supplemental Expert Report Deposition Trial | June 2018 July 2018 August 2018 September 2018 September 2018 November 2018 February 2019 March 2019 April 2019 | Plaintiff |
| 41. Nicole Woodworth v. Loma Linda University Medical Center | Superior Court of the State of California, for the County of San Bernardino | CIVDS1408640 | Declaration Declaration Declaration Deposition Declaration Reply Declaration | June 2018 June 2018 December 2018 December 2018 February 2019 February 2019 | Plaintiff |

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 42. | Roderick Magadia v. Walmart Associates, Inc. | U.S. District Court, Northern District of California | 17-CV-00062-LHK | Expert Report Deposition Supplemental Expert Report Trial | July 2018 September 2018 October 2018 December 2018 | Plaintiff |
| 43. | Christopher Wilson v. Harbor Rail Services | Superior Court of the State of California, for the County of Los Angeles | BC598348 | Declaration | July 2018 | Plaintiff |
| 44. | Candice Ritenour v. Carrington Mortgage Services, LLC | U.S. District Court, Central District of California | 8:16-CV-02011-CJC-DFM | Declaration | August 2018 | Plaintiff |
| 45. | Debbie Salazar v. See's Candy Shops, Inc | Superior Court of the State of California, for the County of Los Angeles | BC651132 | Declaration Declaration | September 2018 December 2018 | Plaintiff |
| 46. | Janeice Thomas v. CheckSmart Financial, LLC | Superior Court of the State of California, for the County of Sacramento | 34-2014-00168533-CU-OE-GDS | Declaration Declaration | October 2018 June 2019 | Plaintiff |
| 47. | Maykel Rodriguez v. La-Z-Boy Inc | Superior Court of the State of California, for the County of San Bernardino | CIVDS1615392 | Declaration | October 2018 | Plaintiff |
| 48. | Brandon Vawter v. United Parcel Service | U.S. District Court, Central District of California | 2:18-cv-01318-RGK-E | Expert Report | November 2018 | Plaintiff |

Econ One Research, Inc.
Los Angeles, California

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|---|
| 49. | Gregorio Rosales et al. v. Professional Service Construction | Superior Court of the State of California, for the County of Orange | 30-2016-00892554-CU-OE-CXC | Declaration | November 2018 | Plaintiff |
| 50. | Maria Herrera v. Federal Express Corporation | U.S. District Court, Central District of California | 5:17-CV-02137 | Declaration Deposition | November 2018 December 2018 | Plaintiff |
| 51. | Julio Garcia v. Walmart Associates, Inc. | U.S. District Court, Southern District of California | 3:18-cv-00500-L-MDD | Declaration | December 2018 | Plaintiff |
| 52. | Rose Gutierrez v. St. Bernardine Medical Center | Superior Court for the State of California, for the County of San Bernardino | CIVDS1703269 | Declaration | February 2019 | Plaintiff |
| 53. | Sepehr Forghani v. Whole Foods Market California, Inc. | Superior Court of the State of California, for the County of Los Angeles | BC637964 | Expert Report Deposition Amended Report Deposition | February 2019 February 2019 March 2019 April 2019 | Plaintiff |
| 54. | Bryon Dittman v. Medical Solution, Inc. | United States District Court, Eastern District of California | 2:17-CV-01851 | Declaration | February 2019 | Plaintiff |
| 55. | Reginald Lyle v. Doctors Hospital of Manteca | Superior Court of the State of California, for the County of San Joaquin | STK-CV-UOE-2016-6523 | Declaration Deposition | March 2019 April 2019 | Plaintiff |

Econ One Research, Inc.
Los Angeles, California

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|---|
| 56. | Division of Labor Standards Enforcement, Bureau of Field Enforcement v. Adat Shalom Board and Care | Department of Industrial Relations Office of the Labor Commissioner, State of California | 35-CM-259095 | Hearing | June 2019 | Appellant |
| 57. | Crystal Perkins v. Exclusive Wireless, Inc. | Superior Court of the State of California, for the County of Fresno | 17CECG04108 | Declaration | June 2019 | Plaintiff |
| 58. | Matthew Ogura v. Thrifty Payless, Inc. | Superior Court of the State of California, for the County of Los Angeles | BC605968 | Declaration | June 2019 | Plaintiff |
| 59. | Cipriano Ponce v. Agro-Jal Farming Enterprises, Inc. | Superior Court of the State of California, for the County of San Luis Obispo | 15 CV-0373 | Declaration Reply Declaration | June 2019 September 2019 | Plaintiff |
| 60. | Salvador Ochoa v. CKE Restaurants Holdings; and Hermelinda Aguilar v. CKE Restaurants Holdings | Superior Court of the State of California, for the County of Los Angeles | BC623041 / BC686601 | Declaration | July 2019 | Plaintiff |
| 61. | Blanca Castaneda v. San Gabriel Transit | Superior Court of the State of California, for the County of Los Angeles | BC590907 | Declaration | August 2019 | Plaintiff |
| 62. | Yelter Cruz v. Gelson's Market | Superior Court of the State of California, for the County of Los Angeles | BC670061 | Declaration Deposition | August 2019 October 2019 | Plaintiff |

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 63. Alyssa Diersing v. Sharp Rees-Stealy Medical Group | Superior Court of the State of California, for the County of San Diego--Central | 37-2017-00029164-CU-OE-CTL | Declaration Deposition | September 2019 September 2019 | Plaintiff |
| 64. Scott Carney v. Geo Drilling Fluids, Inc. | Superior Court of the State of California, for the County of Kern | BCV-15-101729 | Declaration | September 2019 | Defendant |
| 65. Stacy O'Braza v. Dignity Health | Superior Court of the State of California, for the County of Sacramento | 34-2018-00240446 | Declaration | October 2019 | Plaintiff |
| 66. Michelle Flynn v. Macy's Corporate Services, Inc. | Superior Court of the State of California, for the County of Los Angeles | BC669170 | Declaration | October 2019 | Plaintiff |
| 67. Ser Lao v. H & M Hennes & Mauritz, L.P. | United States District Court, Northern District of California | 5:16-CV-333 EJD | Expert Report Supplemental Expert Report Deposition | November 2019 November 2019 December 2019 | Plaintiff |
| 68. Jillian Hameister v. Jaco Oil Company | Superior Court of the State of California, for the County of Kern | BCV-17-102876 | Declaration | November 2019 | Plaintiff |
| 69. Juan Trevino v. Amazon Fulfillment Services, Inc. | United States District Court, Eastern District of California | 1:18-cv-00120-DAD-BAM | Declaration Deposition Reply Declaration Declaration | November 2019 December 2019 January 2020 February 2020 | Plaintiff |

**Econ One Research, Inc.**
**Los Angeles, California**

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|---|
| 70. | Terrance Bailey v. Blue Apron, LLC | United States District Court, for the Northern District of California | 3:18-CV-07000-VC | Declaration | December 2019 | Plaintiff |
| 71. | Armando Gutierrez Recendez v. ICO Builders, Inc. | Superior Court of the State of California, for the County of Los Angeles, Central District | BC720019 | Deposition | December 2019 | Defendant |
| 72. | Rina Acosta v. Remington Hotels | Superior Court of the State of California, for the County of Contra Costa | MSC 16-02404 | Declaration | December 2019 | Plaintiff |
| 73. | Eric Camel v. Town of Chesterton | United States District Court, for the Northern District of Indiana, Hammond Division | 2:19-CV-00065-JVB-JPK | Expert Report | January 2020 | Plaintiff |
| 74. | Keenan Patton v. Skyler Electric | Superior Court of the State of California, for the County of Nevada | CU17-082544 | Declaration | January 2020 | Plaintiff |
| 75. | Securitas Wage and Hour Cases | Superior Court of the State of California, for the County of Los Angeles | JCCP 4837 | Declaration Deposition | January 2020 May 2020 | Plaintiff |
| 76. | Ana Mandujano v. Macy's West Stores | Superior Court of the State of California, for the County of Los Angeles | 19STCV33919 | Declaration | January 2020 | Plaintiff |

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 77. Rafael Balderrama v. Park West Landscape Maintenance, Inc. | Superior Court of the State of California, for the County of Los Angeles, Central District | BC 644491 | Declaration | February 2020 | Plaintiff |
| 78. Jesus A. Rios v. All Star Seed | Superior Court of the State of California, for the County of Imperial | ECU008770 | Declaration | March 2020 | Plaintiff |
| 79. Stephanie Heredia v. Eddie Bauer | U.S. District Court, Northern District of California | 5:16-CV-06236-BLF (SVK) | Expert Report | March 2020 | Plaintiff |
| 80. Juan Vincente De La Cruz v. Standard Drywall, Inc. | Superior Court of the State of California, for the County of Los Angeles | BC 591790 | Declaration Deposition | March 2020 April 2020 | Plaintiff |
| **Civil Rights** | | | | | |
| 81. Dianna Johnson v. United States Marshals | U.S. District Court, District of Columbia | 02-2364 (RMC) | Declaration Declaration | July 2007 April 2010 | Plaintiff |
| 82. Marsial Lopez v. Sheriff Donny Youngblood | U.S. District Court, Eastern District of California | CV-F-07-0474 DLB | Declaration | June 2008 | Plaintiff |
| 83. Thomas Lee Goldstein v. City of Long Beach, John Henry Miller, William Collette, and Logan Wren | U.S. District Court, Central District of California | CV 04-9692 AHM (Ex) | Expert Report Deposition Declaration | November 2009 February 2010 June 2010 | Plaintiff |

Econ One Research, Inc.
Los Angeles, California

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 84. Carl A. Barnes v. District of Columbia | U.S. District Court, District of Columbia | 06-315 (RCL) | Declaration Expert Report Supplemental Expert Report Deposition Declaration Expert Report Declaration Expert Report Deposition Expert Report Trial | March 2010 November 2010 December 2010 December 2010 November 2011 February 2012 March 2012 June 2012 October 2012 November 2012 March 2013 | Plaintiff |
| 85. Eric Jones v. Baltimore City Police Department, et al. | U.S. District Court, District of Maryland | CCB 05 CV 1287 | Declaration Deposition Declaration | July 2010 October 2010 January 2011 | Plaintiff |
| 86. Mary Amador v. Sheriff Leroy Baca, et al. | U.S. District Court, Central District of California | CV 10-1649 SVW (JEMx) | Declaration Declaration Declaration Declaration Declaration | October 2010 January 2011 June 2013 July 2013 February 2016 | Plaintiff |
| 87. C. Alan Powell v. Jacqueline H. Barrett, et al. | U.S. District Court, Northern District of Georgia, Atlanta Division | 1:04-CV-1100 (RWS) | Declaration | October 2011 | Plaintiff |

Econ One Research, Inc.
Los Angeles, California

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 88. Duncan Roy v. Sheriff Leroy Baca, et al. | U.S. District Court, Central District of California | CV 12-09012 BRO (FFMx) | Declaration Declaration Rebuttal Declaration Declaration Declaration Declaration | July 2014 May 2016 July 2016  May 2018 May 2018 November 2018 | Plaintiff |
| 89. Marlon Johnson v. County of San Bernardino, et al. | U.S. District Court, Central District of California | 5:18-CV-01121-GW (AFM) | Declaration | October 2019 | Plaintiff |

**False Claims Act**

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 90. U.S. ex rel. Carlo Santa Ana v. Winter Park Urology Associates, P.A., et al. | U.S. District Court, Middle District of Florida | 6:10-CV-806-28TBS | Expert Report Deposition | December 2012 February 2013 | Plaintiff |
| 91. U.S. ex rel. Misty Wall v. VistaCare Hospice Care, et al. | U.S.  District Court, Northern District of Texas | 3-07-CV-0604-M | Declaration Declaration Expert Report Rebuttal Report Deposition Declaration | August 2014 September 2014 July 2015 January 2016  January 2016 April 2016 | Plaintiff |

Econ One Research, Inc.
Los Angeles, California

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 92. U.S. ex rel. Laura Lovett and Lisa Mayhew v. Holzer Clinic | U.S. District Court, Southern District of Ohio, Eastern Division | 2:08-CV-312 | Expert Report | March 2015 | Plaintiff |
| **Breach of Contract** | | | | | |
| 93. In the Matter of City of Moss Point v. FEMA | U.S. Civilian Board of Contract Appeals | CBCA 2346-FEMA | Arbitration Hearing | June 2012 | Plaintiff |
| 94. Amtrust North America, Inc., v. SquareTrade, Inc. | Judicial Arbitration and Mediation Services, San Francisco Office | 1100079447 | Expert Report Supplemental Expert Report Declaration Arbitration Hearing Rebuttal Declaration | April 2015 May 2015 June 2015 June 2015 July 2015 | Claimant |
| 95. Michael Nozzi v. Housing Authority of the City of Los Angeles, et al. | U.S. District Court, Central District of California | CV07-00380-PA (FFMx) | Declaration Expert Report Supplemental Expert Report Declaration | April 2016 February 2017 March 2017 March 2017 | Plaintiff |
| 96. Ronald McAllister v. The St. Louis Rams, LLC | U.S. District Court, Eastern District of Missouri | 4:16-CV-00172-SNLJ | Rebuttal Report Deposition | August 2017 September 2017 | Plaintiff |
| 97. Amtrust North America, Inc. v. SquareTrade, Inc. | Judicial Arbitration and Mediation Services, San Francisco Office | 1100086491 | Expert Report | March 2018 | Claimant |

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| **Consumer Class Actions** | | | | | |
| 98. Christopher O'Shea v. Epson America, Inc., et al. | U.S. District Court, Central District of California | CV09-8063 PSG (CWx) | Declaration | February 2011 | Plaintiff |
| 99. Manny Villanueva v. Fidelity National Title Company | Superior Court of the State of California, for the County of Santa Clara | 1-10-CV-173356 | Deposition Declaration Deposition Trial | March 2014 April 2014 April 2014 April 2014 | Plaintiff |
| 100. Charlene Eike v. Allergan, Inc., et al. | U.S. District Court, East St. Louis Division | 3:12-CV-01141-DRH-DGW | Expert Report Deposition | May 2014 August 2014 | Plaintiff |
| 101. Mohammed Rahman v. Mott's LLP | Superior Court of the State of California, for the County of San Francisco | CGC-13-532078 | Declaration | October 2019 | Plaintiff |
| **Miscellaneous** | | | | | |
| 102. 2009 Aircraft Tax Refund Cases: American Airlines, Inc. v. County of Los Angeles, et al, and United Airlines, Inc. v. County of Los Angeles | Superior Court of the State of California, for the County of Orange | JCCP 4803 / BC547243 / BC550656 | Declaration | July 2017 | Court Appointed |

# EXHIBIT

# 2

# List of Proposed Classes in *Trevino v. Amazon*

| Class Name | Class Description |
|---|---|
| (A) | (B) |
| Class 1 - Unpaid Wages Class (Hours Worked Claim Based on Control of Employees through Mandatory Exit Security Procedures) | All non-exempt employees employed by Amazon.com Services, Inc. or Amazon.com, Inc. at any of Defendants' facilities in California at any time during the period from July 12, 2013 and ending on the date of certification or as otherwise determined by the Court who were required to go through a metal detector security process to exit the facility. |
| Class 2 - Unpaid Wages Class (Controlled Meal Periods) | All non-exempt employees employed by Amazon.com Services, Inc. or Amazon.com, Inc. at any of Defendants' facilities in California at any time during the period from July 12, 2013 and ending on the date of certification or as otherwise determined by the Court who took a meal period and who were required to go through a metal detector security process to leave the facility during such meal period and were not paid for the time of such meal period. |
| Class 3 - Meal Period Violations for Controlled Meal Periods | All non-exempt employees employed by Amazon.com Services, Inc. or Amazon.com, Inc. at any of Defendants' facilities in California at any time during the period from July 12, 2013 and ending on the date of certification or as otherwise determined by the Court who worked a shift longer than six hours and who were required to go through a metal detector security process to leave the facility during such meal periods and were not paid a meal period premium for such shifts. |
| Class 4 - Rest Periods Violations for Controlled Rest Periods | All non-exempt employees employed by Amazon.com Services, Inc. or Amazon.com, Inc. at any of Defendants' facilities in California at any time during the period from July 12, 2013 and ending on the date of certification or as otherwise determined by the Court who worked a shift longer than three and one-half hours and were subject to a policy that leaving company premises without permission during assigned work hours was a serious infraction that subjected them to termination or who were required to go through a metal detector security process to leave the facility during the rest period and were not paid a rest period premium for all such shifts. |
| Class 5 - Improper Rounding Class | All non-exempt employees employed by Amazon.com Services, Inc. or Amazon.com, Inc. at any of Defendants' facilities in California at any time during the period from July 12, 2013 and ending on the date of certification or as otherwise determined by the Court who were subject to a rounding practice that resulted in them being paid less that they would have received had no such rounding practice been utilized for such employees. |

Econ One
5/19/2020

# List of Proposed Classes in *Trevino v. Amazon*

| Class Name | Class Description |
|---|---|
| (A) | (B) |
| Class 6 - Invalid Second Meal Period Waiver Class | All non-exempt employees employed by Amazon.com Services, Inc. or Amazon.com, Inc. at any of Defendants' facilities in California at any time during the period from July 12, 2013 and ending on the date of certification or as otherwise determined by the Court who signed any meal period waiver in the forms attached as Exhibit 12 to the Declaration of Peter R. Dion-Kindem in Support of Motion for Class Certification and worked more than 10 hours in a day, did not receive a second 30 minute meal period, and did not receive one hour of pay at the class member's regular rate of compensation for such day. |
| Class 7 - Third Rest Period Class | All non-exempt employees employed by Amazon.com Services, Inc. or Amazon.com, Inc. at any of Defendants' facilities in California at any time during the period from July 12, 2013 and ending on the date of certification or as otherwise determined by the Court who were scheduled to work a 10-hour shift and worked more than 10 hours and who were not authorized or permitted to take a third uninterrupted, duty-free, and control-free 10-minute rest period and did not receive one hour of pay at the class member's regular rate of compensation for such day. |
| Class 8 - Direct Violation of Section 226(a)(2) Wage Statement Class | All non-exempt employees employed by Amazon.com Services, Inc. or Amazon.com, Inc. in California at any time during the period from July 12, 2016 and ending on the date of certification or as otherwise determined by the Court who did not receive an itemized statement in writing accurately showing the total hours worked by the employee where the wage statements reflect a line item for regular hours worked and at least one other line item for other types of hours worked other than regular overtime or double time, such as shift differential hours worked. |
| Class 9 - Derivative Wage Statement Class | All members of any of Classes 1 through 7 who, during the period from July 12, 2016 and ending on the date of certification or as otherwise determined by the Court, were not provided with accurate itemized wage statements with all the information required by Labor Code Section 226(a)(1), (2), (5) and (9). |
| Class 10 - Section 203 Class | All members of any of Classes 1 through 7 who, during the period from July 12, 2014 and ending on the date of certification or as otherwise determined by the Court, were either voluntarily or involuntarily separated from their employment and did not timely receive all wages owing pursuant to Labor Code Section 201 or 202. |
| Class 11 - UCL Class | All non-exempt employees employed by Amazon.com Services, Inc. or Amazon.com, Inc. at any of Defendants' facilities in California at any time during the period from July 12, 2013 and ending on the date of certification or as otherwise determined by the Court who are owed restitution as a result of Defendants' business acts and practices that are found to be unlawful, deceptive, and/or unfair. |

Econ One
5/19/2020

# EXHIBIT

# 3

**Formulas for Estimating Potential Principal Damages,
Pre-Judgment Interest, Derivative Penalties, and PAGA Penalties**

| Applicable Class(es) | Description | Statute of Limitation | Formula |
|---|---|---|---|
| (A) | (B) | (C) | (D) |
| **Unpaid Wages** | | | |
| Class 1; Class 2 | Compensable Time Off-the-Clock | 7/12/2013 | *For each additional compensable minute off-the-clock per shift*: (1/60) x Base Rate x (# of Straight Time Shifts + 1.5 x # of Overtime Shifts + 2.0 x # of Double Time Shifts) |
| Class 3 | Unpaid Meal Premium Payments | 7/12/2013 | Base Rate x (# of Shifts Over 6.0 Hours - # Meal Premium Payments Already Issued) |
| Class 4 | Unpaid Rest Premium Payments | 7/12/2013 | Base Rate x (# of Shifts of at Least 3.5 Hours - # Rest Premium Payments Already Issued) |
| **Pre-Judgment Interest** | | | |
| Class 1; Class 2; Class 3; Class 4 | Interest on Compensable Time Off-the-Clock and Unpaid Meal/Rest Premium Payments | 7/12/2013 | 7% x # of Years Between Interest Accrual Date and Pay Date x Potential Unpaid Wages Owed |
| **Liquidated Damages** | | | |
| Class 1; Class 2 | Straight Time Pay for Compensable Time Off-the-Clock | 7/12/2014 | *For each additional compensable minute off-the-clock per shift*: (1/60) x Base Rate x # of Shifts |
| **Derivative Penalties** | | | |
| Class 9 | Wage Statement Penalties | 7/12/2016 | *For each putative class member with unpaid wages*: $50 for the first pay period with unpaid wages; $100 for each subsequent pay period with unpaid wages; Maximum of $4,000 |
| Class 10 | Waiting Time Penalties | 7/12/2014 | Average Daily Wage x 30 Days |
| **PAGA*** | | | |
| Alleged Aggrieved Employees | PAGA Penalties | 7/12/2016 | Penalty per Employee Pay Period (*e.g.*, $100, $200, etc.) x # of Violative Pay Periods |

* - 25% of the penalty amounts go to Alleged Aggrieved Employees, while 75% of the penalty amounts go to the State of California.

# EXHIBIT

# 4A

# Derivation of Potential Damages and Pre-Judgment Interest for
## Each Additional Compensable Minute Per Shift,
## July 12, 2013 through Present Day

| | In Timekeeping Production, July 12, 2013 - July 1, 2018 | Projected 10x to Population of Employees, July 12, 2013 - July 1, 2018 | Projected through May 19, 2020 |
|---|---|---|---|
| | (A) | (B) | (C) |
| | | (A) x 10 | (B) x [1 + 0.379] |
| **Principal Damages** | | | |
| Estimating the number of shifts | | | |
| 1. Straight Time (under 10 hours) | 555,718 | 5,557,180 | 7,663,351 |
| 2. Overtime (at least 10 and under 12 hours) | 700,543 | 7,005,430 | 9,660,488 |
| 3. Double Time (over 12 hours) | 1,347 | 13,470 | 18,575 |
| Estimating Unpaid Wages | | | |
| 4. Straight Time (under 10 hours) [*Row 1 x $13.17 x (1/60)*] | $ 121,980 | $ 1,219,801 | $ 1,682,106 |
| 5. Overtime (at least 10 and under 12 hours) [*Row 2 x $13.17 x (1/60)*] | $ 230,654 | $ 2,306,538 | $ 3,180,716 |
| 6. Double Time (over 12 hours) [*Row 3 x $13.17 x (1/60)*] | $ 591 | $ 5,913 | $ 8,154 |
| 7. **Total** **[*Row 4 + Row 5 + Row 6*]** | $ **353,225** | $ **3,532,252** | $ **4,870,976** |

Econ One
5/19/2020

**Derivation of Potential Damages and Pre-Judgment Interest for
Each Additional Compensable Minute Per Shift,
July 12, 2013 through Present Day**

| | In Timekeeping Production, July 12, 2013 - July 1, 2018 | | Projected 10x to Population of Employees, July 12, 2013 - July 1, 2018 | | Projected through May 19, 2020 | |
|---|---|---|---|---|---|---|
| | (A) | | (B) | | (C) | |
| | | | (A) x 10 | | (B) x [1 + 0.379] | |
| **Pre-Judgment Interest** | | | | | | |
| Multiplying Principal Damages by 23.94% | | | | | | |
| 8. For Straight Time Damages [*Row 4 x 23.94%*] | $ | 29,202 | $ | 292,020 | $ | 402,696 |
| 9. For Overtime Damages [*Row 5 x 23.94%*] | $ | 55,219 | $ | 552,185 | $ | 761,463 |
| 10. For Double Time Damages [*Row 6 x 23.94%*] | $ | 142 | $ | 1,416 | $ | 1,952 |
| 11. **Total Pre-Judgment Interest** [***Row 8 + Row 9+ Row 10***] | $ | 84,562 | $ | 845,621 | $ | 1,166,112 |
| | | | | | | |
| **Potential Damages and Interest per Putative Class Member, on Average** | | | | | | |
| Dividing Totals by 179,533 | | | | | | |
| 12. **Principal Damages** [***Row 7 / 179,533***] | | | | | $ | 27.13 |
| 13. **Pre-Judgment Interest** [***Row 11/ 179,533***] | | | | | $ | 6.50 |

Econ One
5/19/2020

# EXHIBIT
# 4B

# Derivation of Potential Liquidated Damages for
# Each Additional Compensable Minute Per Shift,
# July 12, 2014 through Present Day

|  | In Timekeeping Production, July 12, 2014 - July 1, 2018 | Projected 10x to Population of Employees, July 12, 2014 - July 1, 2018 | Projected through May 19, 2020 |
|---|---|---|---|
|  | (A) | (B) | (C) |
|  |  | (A) x 10 | (B) x [1 + 0.474] |
| 1. Estimated Number of Shifts at Facilities with Metal Detectors | 1,184,388 | 11,843,880 | 17,457,879 |
| 2. **Total Liquidated Damages** **[*Row 1 x $13.17 x (1/60)*]** |  |  | $  3,832,004 |
| 3. **Liquidated Damages per Putative Class Member, on Average [Row 2 / 179,533]** |  |  | $  21.34 |

# EXHIBIT

# 4C

**Derivation of Potential Damages and Pre-Judgment Interest for
Potential Meal/Rest Premium Payments Owed,
July 12, 2013 through Present Day**

| | In Amazon's Data Production, July 12, 2013 - July 1, 2018 | Projected 10x to Population of Employees, July 12, 2013 - July 1, 2018 | Projected through May 19, 2020 |
|---|---|---|---|
| | (A) | (B) | (C) |
| | | (A) x 10 | (B) x [1 + 0.379] |

**Principal Damages**

Estimating the Number of Shifts

| | | | | |
|---|---|---|---|---|
| 1. | Over 6.0 Hours (qualifying for at least one meal period) | 1,126,031 | 11,260,310 | 15,527,967 |
| 2. | At least 3.5 Hours (qualifying for at least one rest period) | 1,230,525 | 12,305,250 | 16,968,940 |

Estimating the Number of Premium Payments Already Paid

| | | | | |
|---|---|---|---|---|
| 3. | Meal Premium Payments | 19,743 | 197,430 | 272,256 |
| 4. | Rest Premium Payments | 0 | 0 | 0 |

Estimating Meal/Rest Premium Payments Owed

| | | | | |
|---|---|---|---|---|
| 5. | **Total Meal Period Principal Damages** [*(Row 1 - Row 3) x $13.17*] | $ **14,569,813** | $ **145,698,130** | $ **200,917,727** |
| 6. | **Total Rest Period Principal Damages** [*(Row 2 - Row 4) x $13.17*] | $ **16,206,014** | $ **162,060,143** | $ **223,480,940** |

Econ One
5/19/2020

### Derivation of Potential Damages and Pre-Judgment Interest for
### Potential Meal/Rest Premium Payments Owed,
### July 12, 2013 through Present Day

| | In Amazon's Data Production, July 12, 2013 - July 1, 2018 | Projected 10x to Population of Employees, July 12, 2013 - July 1, 2018 | Projected through May 19, 2020 |
|---|---|---|---|
| | (A) | (B) | (C) |
| | | (A) x 10 | (B) x [1 + 0.379] |
| **Pre-Judgment Interest** | | | |
| Multiplying Potential Principal Damages by 23.94% | | | |
| 7. **For Meal Period Damages** [*Row 5 x 23.94%*] | $ 3,488,013 | $ 34,880,132 | $ 48,099,704 |
| 8. **For Rest Period Damages** [*Row 6 x 23.94%*] | $ 3,879,720 | $ 38,797,198 | $ 53,501,337 |
| | | | |
| **Potential Damages and Interest per Putative Class Member, on Average** | | | |
| Dividing totals by 179,533 | | | |
| 9. **Meal Period Damages** [*Row 5 / 179,533*] | | | $ 1,119.11 |
| 10. **Rest Period Damages** [*Row 6 / 179,533*] | | | $ 1,244.79 |
| 11. **Interest on Meal Period Damages** [*Row 7 / 179,533*] | | | $ 267.92 |
| 12. **Interest on Rest Period Damages** [*Row 8 / 179,533*] | | | $ 298.00 |

Econ One
5/19/2020

# EXHIBIT

# 4D

## Potential Waiting Time Penalties
## For Persons Terminated On or After July 12, 2014

| Description | Calculation |
|---|---|
| 1.  Number of Likely Putative Class Members* | 4,886 |
| 2.  Average Shift Length Among Likely Putative Class Members* | 8.96 |
| 3.  Average Base Rate Among Likely Putative Class Members* | $             12.84 |
| 4.  Estimated Daily Wage Among Likely Putative Class Members  [*Row 2 x Row 3*] | $            115.05 |
| 5.  Projected Number of Putative Class Members**  [*10 x Row 1*] | 48,860 |
| 6.  **Estimated Potential Penalties****  [*Row 4 x Row 5 x 30*]** | $     168,640,290 |
| 7.  **Potential Penalties per Class Member, on Average  [Row 4 x 30]** | $          3,451.50 |

* - In Timekeeping/Payroll Production.

** - This calculation does not account for persons terminated after July 1, 2018.

Econ One
5/19/2020

EXHIBIT
4E

**Potential Wage Statement Penalties,**
**July 12, 2016 through Present Day**

| | Calculation |
|---|---|
| Identifying Relevant Dates and Time Period | |
| 1.   First date of Class Period for Derivative Wage Statement Class | 7/12/2016 |
| 2.   Present Day | 5/19/2020 |
| 3.   Current Length of Wage Statement Class Period<br>*[(Row 2 - Row 1 + 1)/365.25]* | 3.85 years |
| | |
| Calculating Counts Based on Latest 3.85 Years of the Payroll Production* | |
| 4.   Number of Employees with Hours Worked in 41+ Pay Periods | 1,453 |
| 5.   Number of Employees with Hours Worked in 40 or Fewer Pay Periods | 5,799 |
| 6.   Number of Employees<br>*[Row 4 + Row 5]* | 7,252 |
| 7.   Number of Employee Pay Periods Among Employees with Hours Worked in 40 or Fewer Pay Periods | 66,976 |
| | |
| Calculating Projected Counts | |
| 8.   Number of Employees with Hours Worked in 41+ Pay Periods<br>*[Row 4 x 10]* | 14,530 |
| 9.   Number of Employees with Hours Worked in 40 or Fewer Pay Periods<br>*[Row 5 x 10]* | 57,990 |
| 10.  Number of Employees<br>*[Row 6 x 10]* | 72,520 |
| 11.  Number of Employee Pay Periods Among Employees with Hours Worked in 40 or Fewer Pay Periods<br>*[Row 7 x 10]* | 669,760 |
| | |
| Calculating Penalties | |
| 12.  Among Employees with Hours Worked in 41+ Pay Periods<br>*[Row 8 x $4,000]* | $   58,120,000 |
| 13.  Among Employees with Hours Worked in 40 or Fewer Pay Periods<br>*[Row 9 x $50 + (Row 11 - Row 9) x $100]* | $   64,076,500 |
| 14.  **Estimated Total Potential Wage Statement Penalties**<br>**[*Row 12 + Row 13*]** | $   **122,196,500** |
| 15.  **Estimated Potential Wage Statement Penalties per Class Member, on Average**<br>**[Row 14 / Row 10]** | $   **1,685.00** |

* - Amazon's Data Production is current through July 1, 2018.  3.85 years prior to July 1, 2018 is August 21, 2014.

# EXHIBIT
# 4F

**Potential PAGA Penalties**
**July 12, 2016 through Present Day**

| | Calculation |
|---|---|
| **Deriving Estimates for the Number of Alleged Aggrieved Employees and their Number of Employee Pay Periods** | |
| 1. First date of PAGA Period | 7/12/2016 |
| 2. Present Day | 5/19/2020 |
| 3. Current Length of Wage Statement Class Period [(Row 2 - Row 1 + 1)/365.25] | 3.85 years |
| 4. Number of Employees Appearing in Latest 3.85 Years of Data in the Payroll Production* | 7,252 |
| 5. Number of Employee Pay Periods Appearing in Latest 3.85 years of Data in the Payroll Production | 163,308 |
| 6. Projected Number of Alleged Aggrieved Employees' Pay Periods [*Row 5 x 10*] | 1,633,080 |
| 7. Average Number of Pay Periods per Alleged Aggrieved Employee [*Row 5 / Row 4*] | 22.5 |
| **Multiplying the Number of Alleged Aggrieved Employees' Pay Periods by the Dollar Amount per Alleged Violation** | |
| 8. **$100 per Violation** [*Row 6 x $100*] | $  **163,308,000** |
| 9. **$200 per Violation** [*Row 6 x $200*] | $  **326,616,000** |
| 10. **$250 per Violation** [*Row 6 x $250*] | $  **408,270,000** |
| **Calculating PAGA Penalties per Alleged Aggrieved Employee, on Average** | |
| 11. **$100 per Violation** [*Row 7 x $100 x 25%*] | $  **562.98** |
| 12. **$200 per Violation** [*Row 7 x $200 x 25%*] | $  **1,125.95** |
| 13. **$250 per Violation** [*Row 7 x $250 x 25%*] | $  **1,407.44** |

* - Amazon's Data Production is current through July 1, 2018.  3.85 years prior to July 1, 2018 is August 23, 2014.