UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| IN RE: AMAZON.COM, INC., FULFILLMENT CENTER FAIR LABOR STANDARDS ACT (FLSA) AND WAGE AND HOUR LITIGATION | Master File No. 3:14-md-2504<br>MDL Docket No. 2504 |
| THIS DOCUMENT RELATES TO:<br>*Busk v. Integrity Staffing Solutions, Inc.*, | Case No. 3:14-cv-139-DJH |

\* \* \* \* \*

### ORDER

The plaintiffs seek preliminary approval of a class-action settlement in this case. (Docket No. 127) Their motion is unopposed. (*See id.*) Following a telephonic preliminary fairness hearing (D.N. 129) and careful consideration of the plaintiffs' motion and supporting documents, the Court will grant preliminary approval and conditional class certification for the reasons explained below.

### I.

This case, like others in this MDL, involves claims that employees of Amazon and staffing agencies used by Amazon were forced to undergo security checks for which they were not compensated. The case was originally filed in the District of Nevada in 2010 (D.N. 1) and became part of the MDL in 2014 following the Ninth Circuit's decision that the plaintiffs' state and federal claims could proceed. (D.N. 66; *see* D.N. 24) Later that year, the Supreme Court held that time spent on mandatory security checks was not compensable under federal law. *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27 (2014). The plaintiffs then amended their complaint to assert only state-law claims under Arizona and Nevada law. (D.N. 91) This Court granted Defendants' subsequent motion to dismiss. (D.N. 109) The Sixth Circuit affirmed as to the claims under

1

Arizona law but reversed as to the Nevada-law claims, which are thus the only claims remaining. (D.N. 113; *see* D.N. 127-1, PageID # 1420 & n.1) Defendants' petition for a writ of certiorari was denied, and the case again returned to this Court. (D.N. 118) Following remand, the parties conducted informal discovery and held a private mediation with a mediator experienced in complex wage-and-hour disputes. (D.N. 127-1, PageID # 1420) Although the mediation was initially unsuccessful, the parties continued negotiations and ultimately reached the settlement agreement that is now before the Court. (*Id.*, PageID # 1420-21)

> Plaintiffs seek certification of the following class for settlement purposes:
>
> All persons employed directly by Defendants as hourly paid warehouse employees who worked at Amazon warehouses in the state of Nevada at any time from October 22, 2007 to April 3, 2020.

(*Id.*, PageID # 1421) The parties agree that all class members can be identified through Defendants' business records. (*Id.*)

The total maximum settlement amount is $13,500,000. (*Id.*) That sum includes payments to individual class members who submit claims; attorney fees and costs; incentive payments to the four named plaintiffs; and fees for administration of the settlement. (*Id.*) In exchange for the payments, any class member who does not timely request exclusion from the class will release claims against the defendants arising out of the allegations made in this case. (*Id.*, PageID # 1422) Upon preliminary approval and conditional certification, notice will be sent to class members informing them of the proposed settlement and explaining how to make a claim, object, or opt out. (*Id.*, PageID # 1423)

## II.

Although the motion for preliminary approval is unopposed, the Court must still examine the proposed settlement before notice of the proposal is sent to the class. *See* Fed. R. Civ. P.

23(e)(1)(B); *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565 (6th Cir. 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983)). The Court may approve a settlement only after determining that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). At the preliminary stage, the Court "must make a preliminary determination" of these factors. *Manual for Complex Litigation (Fourth)* § 21.632 (2004). The standard for preliminary approval was codified in 2018, with Rule 23 now providing for notice to the class upon "the parties' showing that the court will likely be able to" (i) approve the proposed settlement under the final-approval standard contained in Rule 23(e)(2) and (ii) certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B); *see* Newberg on Class Actions (5th ed.) § 13:10.

**A.      Approval of Settlement**

For purposes of both preliminary and final approval, Rule 23 requires the Court to consider whether

> (A)   the class representatives and class counsel have adequately represented the class;
> (B)   the proposal was negotiated at arm's length;
> (C)   the relief provided for the class is adequate, taking into account:
>    (i)   the costs, risks, and delay of trial and appeal;
>    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>    (iv)  any agreement required to be identified under Rule 23(e)(3); and
> (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see* Fed. R. Civ. P. 23(e)(1)(B).

Paragraphs (A) and (B) of Rule 23(e)(2) "identify matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while paragraphs (C) and (D) "focus on what might be called a 'substantive' review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2) advisory

3

committee's note to 2018 amendments. These factors, which are also part of the 2018 amendments to Rule 23, are not meant "to displace any factor" previously relied on by the courts, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* The rule largely encompasses the factors that have been employed by the Sixth Circuit:

> (1) the "risk of fraud or collusion," (2) the "complexity, expense and likely duration of the litigation," (3) the "amount of discovery engaged in by the parties," (4) the "likelihood of success on the merits," (5) the "opinions of class counsel and class representatives," (6) the "reaction of absent class members," and (7) the "public interest."

*Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 894-95 (6th Cir. 2019) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). In addition to the seven factors listed above, the Sixth Circuit "ha[s] also looked to whether the settlement 'gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members.'" *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 756 (6th Cir. 2013) (quoting *Williams*, 720 F.2d at 925).

The Sixth Circuit does not appear to have considered the new version of Rule 23(e)(2). Since the amendment, courts within the Sixth Circuit have been applying both sets of factors. *See, e.g.*, *Elliott v. LVNV Funding, LLC*, No. 3:16-cv-00675-RGJ, 2019 U.S. Dist. LEXIS 143692, at *18 (W.D. Ky. Aug. 23, 2019) (citing *Peck v. Air Evac EMS, Inc.*, No. CV 5:18-615-DCR, 2019 U.S. Dist. LEXIS 11826 (E.D. Ky. July 17, 2019)). In light of the substantial overlap between the two sets, they can easily be considered together.

### 1. Adequate Representation/Amount of Discovery/Counsel and Representatives' Opinions

This case has been litigated for more than ten years, with discovery throughout, and counsel on both sides have extensive experience in similar cases. In light of these factors, the opinions of

4

counsel and the class representatives, all of whom favor the settlement, support preliminary approval. *See Doe*, 925 F.3d at 899.

    **2.    Arm's-Length Negotiations/Risk of Fraud or Collusion**

The procedural posture of the litigation indicates that "the agreement arose out of arms-length, non-collusive negotiations." *Newberg on Class Actions* § 13:14. This case has been pending for more than a decade, with significant adversarial motion practice and discovery during that time. It has been to the Supreme Court and back, and more recently to the Sixth Circuit and back. *See id.* ("Where the proposed settlement was preceded by a lengthy period of adversarial litigation involving substantial discovery, a court [is] likely to conclude that settlement negotiations occurred at arms-length."). The fact that the settlement was reached following mediation likewise suggests an absence of collusion. *Id.* Thus, the second factor also weighs in favor of preliminary approval.

    **3.    Adequacy of Relief**

        **a.    Costs, Risks, and Delay of Trial and Appeal/Complexity, Expense, and Likely Duration of the Litigation/Likelihood of Success on the Merits**

The parties have already invested significant time and money in this complex litigation, at significant risk. Proceeding to trial would entail further time and expense, with the outcome uncertain—regardless of the strength of their claims, Plaintiffs could fail at the certification stage, while Defendants could face even greater exposure if the case were to proceed.

        **b.    Method of Distribution**

Any class member who submits a timely, complete claim form will be mailed a check in the amount of that class member's settlement award. (D.N. 127-2, PageID # 1463) If a claim form is deficient, the class member will be notified and given an opportunity to correct the

deficiency. (*See id.*) Thus, the method of distribution does not appear designed to prevent class members from receiving payment.

        **c.**    **Attorney Fees**

The parties' agreement provides for attorney fees of up to $4,500,000 and up to $150,000 in costs. (D.N. 127-2, PageID # 1461) The proposed fee award thus represents one third of the total settlement amount. Fee awards of 33 percent are frequently approved in complex wage-and-hour cases. *See, e.g.*, *Jones v. H&J Rests., Inc.*, No. 5:19-CV-105-TBR, 2020 U.S. Dist. LEXIS 219071, at *17 (W.D. Ky. Nov. 23, 2020) (citations omitted). In light of this precedent and the length and complexity of this litigation, the proposed fee award appears reasonable.

        **d.**    **Other Agreements**

The settlement agreement states that it "contains the entire agreement between the Parties relating to the settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein." (D.N. 127-2, PageID # 1471)

    **4.**    **Equitable Treatment of Class Members/Preferential Treatment of Named Plaintiffs**

The settlement agreement provides for "service awards" to the named plaintiffs: $20,000 to Jesse Busk, the original plaintiff; and $15,000 each to Laurie Castro, Sierra Williams, and Monica Williams, who were added to the case by amended complaint. (*Id.*, PageID # 1450, 1459; *see* D.N. 127-1, PageID # 1419) While these are significant amounts, they do not appear to be excessive per se; class representatives frequently receive incentive payments of $50,000 or more. *See, e.g.*, *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 914 (S.D. Ohio 2001) (citations omitted). Moreover, the relief to unnamed class members will not be "perfunctory," *Vassalle*, 708 F.3d at 756, but based on the number of shifts they worked during the relevant time period. Assuming the

6

named plaintiffs submit thorough documentation of their time spent on the litigation (as their motion indicates they will), the incentive payments are likely appropriate.

### 5. Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits" generally "because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Doe*, 925 F.3d at 899 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). This final factor therefore also supports preliminary approval.

### B. Certification for Settlement Purposes

The settlement class must meet the requirements of Rule 23(a) and (b). *Manual for Complex Litigation* at 272. Under Rule 23(a), a class action may be maintained if

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The Court must also find that the action satisfies subsection (b)(1), (2), or (3). Here, the plaintiffs rely on subsection (b)(3), which provides that a class action is appropriate if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Each requirement appears to be satisfied here.

### 1. Numerosity

The settlement class is estimated to consist of 35,600 members. (D.N. 127-1, PageID # 1434) Any class of 41 or more is generally considered to be sufficiently numerous for purposes of Rule 23. 5 Moore's Federal Practice § 23.22[1][b] (2020).

### 2. Commonality

There is a common question of fact among the settlement class members, namely whether the members were subjected to uncompensated security checks during the relevant time period.

### 3. Typicality

The typicality requirement is satisfied "if the class representative's claims arise from the same events, practice, or conduct, and are based on the same legal theory, as those of other class members." *Id.* § 23.24[2]. The class representatives in this case allegedly suffered the same injury as the other class members, and the same legal theories apply to all.

### 4. Adequacy of Representation

The primary concern with respect to this element is whether there is any conflict of interest between the class representative and other class members. *Id.* § 23.25[2]. Nothing in the record suggests that any of the class representatives has such a conflict, nor is there any indication that the representatives are unable to vigorously prosecute the lawsuit or lack adequate counsel.

### 5. Predominance and Superiority

Under Rule 23(b)(3), the Court must find both "[t]hat common questions of law or fact predominate over questions affecting only individual members" and "[t]hat a class action is superior to other available methods for resolving the controversy." *Id.* § 23.44[1]. The Court is unaware of any substantial individual questions that might arise in the context of this case. Moreover, given the large number of class members and the fact that each member is likely only

entitled to a relatively small amount (i.e., too small to justify bringing an individual action), a class action is the superior method for resolving these claims.

C.     **Notice to Class Members**

Rule 23 requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice to class members must convey the following information "clearly and concisely . . . in plain, easily understood language":

    (i)     the nature of the action;
    (ii)    the definition of the class certified;
    (iii)   the class claims, issues, or defenses;
    (iv)    that a class member may enter an appearance through an attorney if the member so desires;
    (v)     that the court will exclude from the class any member who requests exclusion;
    (vi)    the time and manner for requesting exclusion; and
    (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* To satisfy due process, "notice to the class [must] be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Vassalle*, 708 F.3d at 759 (quoting *UAW*, 497 F.3d at 629). The proposed notice in this case is sufficient: it contains the information required under Rule 23 and "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Id.* (quoting *UAW*, 497 F.3d at 630). (*See* D.N. 127-2, PageID # 1477-81)

**III.**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

9

**ORDERED** as follows:

(1) The unopposed motion for preliminary approval (D.N. 127) is **GRANTED**. The Court approves, as to form and content, the Notice of Pendency of Class Action, Proposed Class Action Settlement, and Hearing Date for Court Approval ("Notice of Pendency of Class Action"), in substantially the form attached to the Stipulation of Settlement as Exhibit A, and the Claim Form in substantially the form attached thereto as Exhibit B. The Court approves the procedure for Class Members to participate in, to opt out of and to object to, the Settlement as set forth in the Notice of Pendency of Class Action.

(2) The following class is conditionally certified for settlement purposes:

> All persons employed directly by Defendants as hourly paid warehouse employees who worked at Amazon warehouses in the state of Nevada at any time from October 22, 2007 to April 3, 2020.

(3) The Court directs the mailing of the Notice of Pendency of Class Action and Proposed Settlement and the Claim Forms by first-class mail to the Class Members in accordance with the Implementation Schedule set forth below. The Court finds that the dates selected for the mailing and distribution of the Notice and the Claim Form, as set forth in the Implementation Schedule, meet the requirements of due process and provide the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

(4) The Court confirms Plaintiffs Jesse Busk, Laurie Castro, Sierra Williams, and Monica Williams as Class Representatives and Thierman Buck, LLP as Class Counsel.

(5) The Court confirms Simpluris Inc. as the Claims Administrator.

(6) This matter is set for a final fairness hearing on **May 19, 2021, at 1:00 p.m. Eastern Time**. The hearing will be held by videoconference. Instructions for connecting to the videoconference will be posted on the Court's website.

(7) This matter shall proceed in accordance with the following Implementation Schedule:

| | | |
|---|---|---|
| a. | Deadline for Defendants to Submit Class Member Information to Claims Administrator | March 11, 2021 |
| b. | Deadline for Claims Administrator to Mail the Notice and the Claim Form to Class Members | March 21, 2021 |
| c. | Deadline for Class Members to Postmark Claim Forms | May 5, 2021 |
| d. | Deadline for Class Members to Postmark Requests for Exclusions | May 5, 2021 |
| e. | Deadline for Receipt by Court and Counsel of any Objections to Settlement | May 5, 2021 |
| f. | Deadline for Class Counsel to file Motion for Final Approval of Settlement, Attorneys' Fees, Costs, and Enhancement Award | May 12, 2021 |
| g. | Deadline for Class Counsel to File Declaration from Claims Administrator of Due Diligence and Proof of Mailing | May 12, 2021 |
| h. | Final Fairness Hearing | May 19, 2021 |
| i. | Deadline for Defendants to Fund Settlement Account maintained by Claims Administrator | 14 calendar days after Effective Date |
| j. | Deadline for Claims Administrator to wire transfer the Attorneys' Fees and Costs to Class Counsel (if Settlement is Effective) | 5 calendar days after Defendants Fund Settlement Account |
| k. | Deadline for Claims Administrator to mail the Settlement Awards to Class Members and the Enhancement Awards to Class Representatives (if Settlement is Effective) | 10 days after Defendants Fund Settlement Account |

11

| 1. | Claims Administrator to File Proof of Payment of Settlement Awards, Enhancement Award, Attorneys' Fees and Costs (if Settlement is Effective) | 90 calendar days after Effective Date |
|----|----|----|

February 25, 2021

David J. Hale, Judge
United States District Court